FILED

16 MAY 18 AM 10: 44

CLE... ... ... COURT
MIDD ... ... FLORIDA
FT. MYERS. FLORIDA

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

| | |
|---|---|
| LESLY METHELUS, on behalf of Y.M., a minor; ROSALBA ORTIZ, on behalf of G.O., a minor; ZOILA LORENZO, on behalf of M.D., a minor; on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE SCHOOL BOARD OF COLLIER COUNTY, FLORIDA and KAMELA PATTON, Superintendent of Collier County Public Schools, in her official capacity, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Case No. _____ <br><br> 2:16-cv-379-FtM-38MRM |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.     Plaintiffs are parents or guardians of Y.M., G.O., and M.D., children who recently arrived to the United States and have been denied equal access to educational opportunities as a result of Defendants' policy and practice of excluding them from enrollment in public high school. Rather than allow these English Language Learner ("ELL") students to enroll in Collier County public high schools, Defendants funnel them to non-credit, English language-only, adult programs that charge a fee.

1

2.      Florida law requires that public schools offer students instruction in core content and skills, including mathematics, science, and social studies ("Florida Standards").  Defendants deny Y.M., G.O., M.D., and similarly situated students, the opportunity to learn the skills and subject matter set forth in the Florida Standards, credits toward a high school diploma, access to other activities and programs available to students enrolled in high school, and their full learning and eventual earning potential.

3.      Defendants violate Florida and federal law by denying recently-arrived, foreign-born, ELL students ages sixteen and older enrollment in public schools that teach to the Florida Standards.

4.      Plaintiffs ask the Court to grant declaratory and injunctive relief, including compensatory education, to Y.M., G.O., M.D., and a class of similarly situated students.

## JURISDICTION

5.      This case arises under the United States Constitution and the laws of the United States, including the Equal Protection and Due Process clauses of the Fourteenth Amendment to the Constitution; the Equal Educational Opportunities Act of 1974 ("EEOA"), 20 U.S.C. § 1703; Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq. ("Title VI");

and 42 U.S.C. § 1983.  The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331(a), 1343, 2201, and 2202 and 20 U.S.C. §§ 1706, 1708. The Court may exercise supplemental jurisdiction over Plaintiffs' state law claims under the Florida Educational Equity Act, Fla. Stat. §§ 1000.05 et seq., and Fla. Admin. Code R. 6A-19.001 et seq.  See 28 U.S.C. § 1367(a).

**VENUE**

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim[s] occurred" in this district.

**PARTIES**

**Named Plaintiffs**

7.      Plaintiff Lesly Methelus and his seventeen year-old son, Y.M., reside within Immokalee High School's attendance zone in Collier County.  Y.M. is a student with limited English proficiency[1] who is of Haitian national origin.

8.      Plaintiff Rosalba Ortiz and her seventeen year-old nephew (over whom she has custody), G.O., reside within Immokalee High School's attendance zone in Collier County.  G.O. is a student with limited English proficiency who is of Guatemalan national origin.

---

[1] The term "Limited English proficiency" ("LEP") is interchangeable with "English Language Learner" ("ELL").

9.     Plaintiff Zoila Lorenzo and her seventeen year-old son, M.D., reside within Immokalee High School's attendance zone in Collier County. M.D. is a student with limited English proficiency who is of Guatemalan national origin.

**Defendants**

10.     Defendant School Board of Collier County, Florida ("School Board"), is responsible for directing, operating, controlling, and supervising all free public schools in Collier County. See Fla. Stat. §§ 1001.32-33 and 1001.40-42.  Defendant School Board is responsible for the establishment, organization and operation of schools within Collier County school district. Id. § 1001.42(4). The School Board is the contracting agent on behalf of the Collier County school district and is subject to suit.  Id. 1001.41(4); Fla. Stat. § 1001.30. The School Board has acted under color of state law at all times referenced in this complaint within the meaning of 42 U.S.C. § 1983.

11.  Defendant Kamela Patton, as the Superintendent of the Collier County Public Schools, is the secretary and executive officer of the Collier County School Board.  See Fla. Stat. §§ 1001.32(3), 1001.33. Superintendent Patton is responsible for the administration and management of the schools and for the supervision of instruction in the district.  Id. See also Fla. Stat. §§ 1001.49, 1001.51. She is charged with

recommending the establishment, organization, and operation of schools, classes, and services as are needed to provide adequate educational opportunities for all children in the district. Id. § 1001.51(6). She is also charged with ensuring that all laws and rules of the State Board of Education are properly observed. Id. § 1001.51(14). Superintendent Patton has acted under color of state law at all times referenced in this complaint within the meaning of 42 U.S.C. § 1983.

## LEGAL BACKGROUND

### Plaintiffs' Right to Equal Access to Educational Opportunity

12.     The education of children is a fundamental value of the people of the State of Florida. Fla. Const. art. IX, § 1(a). The state constitution mandates "a high quality system of free public schools that allows students to obtain a high quality education." Id. Such education shall be provided to "all children residing within its borders." Id.

13.     Florida has developed core skills and subjects that public schools must teach to all students. See Fla. Stat. § 1003.41 ("Florida Standards") (requiring skills instruction in critical-thinking, problem-solving, mathematics, contextual and applied-learning, technology-literacy, information and media-literacy, civic-engagement, and subject matter

5

instruction in science, mathematics, social studies, visual and performing arts, physical education and health). See also id. § 1003.42.

14.     Florida law also prioritizes enrollment of students in school through graduation.   In Florida, education is compulsory for all children between the ages of six and sixteen without exception. Fla. Stat. § 1003.21(1)(a)(1).

15.     Public school students ages sixteen and older who have not graduated are also subject to compulsory school attendance until a student "files a formal declaration of intent to terminate school enrollment with the school board."   Id. § 1003.21(1)(c).   The declaration "must acknowledge that terminating school enrollment is likely to reduce the student's earning potential" and be signed by the student and parent.   Id.

16.     Even on receipt of such a declaration, state law requires school personnel to "determine the reasons for the student's decision to terminate school enrollment" and to determine any "actions that could be taken to keep the student in school."   Id.

17.     State law establishes no maximum age for public education.

18.     In 1970, the Office of Civil Rights of the federal education agency issued a memorandum ("Memo") clarifying the responsibility of school districts to provide equal educational opportunity to national origin

minority group children deficient in English language skills. J. Stanley Pottinger, Office of Civil Rights, U.S. Department of Health, Education and Welfare, DHEW Memo Regarding Language Minority Children (May 25, 1970), http://www2.ed.gov/about/offices/list/ocr/docs/lau1970.html (last visited May 4, 2016). The Memo stated that where the "inability to speak and understand the English language excludes national origin-minority group children from effective participation in the educational program offered by a school district, the district must take affirmative steps to rectify the language deficiency in order to open its instructional program to these students." Id. Under the Memo, grouping of ELL students must not operate as an "educational dead-end or permanent track." Id.

19.   In 1974, Congress passed the Equal Educational Opportunities Act ("EEOA"). In advocating for its passage, President Richard Nixon issued a statement to Congress explaining that under the Act, "School authorities must take appropriate action to overcome whatever language barriers might exist, in order to enable all students to participate equally in educational programs." Richard M. Nixon, Special Message to the Congress on Equal Educational Opportunities and School Busing, Public Papers of the Presidents of the United States (March 17, 1972), http://www.presidency.ucsb.edu/ws/?pid=3776 (last visited May 10, 2016).

20.     The United States Department of Justice ("DOJ") and the
Office of Civil Rights of the United States Department of Education
("OCR") (collectively "the Departments"), in guidance to school districts,
have stated that ELL students should not only have access to the core
curriculum, but equal opportunities to meaningfully participate in all school
programs and activities whether curricular, co-curricular, or extracurricular.
See U.S. Dept. of Justice and U.S. Dept. of Educ., Dear Colleague Letter:
English Learner Students and Limited English Proficient Parents 17-18
(Jan. 7, 2015), http://www2.ed.gov/about/offices/list/ocr/letters/colleague-
el-201501.pdf.

21.     The Departments further state that school districts should
place ELL students in age-appropriate grade levels so that these students
can have meaningful access to their grade-appropriate curricula and an
equal opportunity to graduate.   Id. at 18.   While recognizing that some
students may have an interruption in their formal education, the
Departments state that these students should still be placed in a setting that
is age appropriate. See id. at n.50.

22.     Florida law and administrative regulations also require that
ELL students have equal access to programs as other students. See Fla.
Admin. Code R. 6A-6.0908 (ELL students "shall be entitled to equal access

to programs and services other than ESOL,[2] such as, but not limited to compensatory, exceptional, early childhood, pre-first grade, vocational, adult education, dropout prevention, extended day, and supportive services regardless of the funding source"); Fla. Stat. § 1000.05 (prohibiting discrimination in education programs and activities) and Fla. Admin. Code R. 6A-19.001 (defining discrimination to include "taking of any admission . . . action, that adversely affects a[n] . . . applicant for admission. . . based on . . . linguistic characteristics of a national origin group," or the "taking of an admission action, that adversely affects a[n] . . . applicant for admission, belonging to a national origin minority group, unnecessarily based on limited-English-language skills"); see generally Fla. Stat. § 1003.56(3)(d); Fla. Admin. Code R. 6A-6.0901 et seq.

23. Florida law requires that Defendants provide ELL students not only with English instruction, but also with instruction in the subject areas of mathematics, science, social studies, and computer literacy either with language support or in students' home language.  Fla. Stat. § 1003.56(3)(d); Fla. Admin. Code R. 6A-6.0901 et seq.

24. Under 20 U.S.C. §§ 6801 et seq., federal funds are allocated to help ELL students learn English and meet state academic content and achievement standards.  Defendant School Board, as the contracting agent

---

[2] "ESOL" stands for "English for Speakers of Other Languages."

of the Collier County School District, receives federal funding, including but not limited to English Language Acquisition funding, to provide instructional programs and services to students.

25.     In light of these legal requirements, on February 26, 2013, Defendant Patton signed and submitted to the Florida Department of Education a "District ELL Plan."  (See Ex. 1.)  The plan certifies that Collier County public schools were in compliance with section 1003.56, Florida Statutes, applicable administrative regulations, the May 25, 1970 Office of Civil Rights Memo, the Florida Educational Equity Act, and the Equal Educational Opportunities Act of 1974, all of which require equal access to educational opportunities for ELL students.  Id.

26.     In addition, the ELL plan sets forth the District's policies and procedures for providing instruction to ELL students, including identification, evaluation, and placement of ELL students in Collier County schools.  The plan requires schools to identify ELL students at the time of registration using a home language survey.  (Ex. 1 at 3-4.)  Once identified, students' English language skills and academic level are to be assessed using testing and other criteria.  (Id. at 4-7.)  The school's ELL committee then makes a placement with regard to English language instruction based on results of the assessments, among other factors.  (Id. at 6-7.)

27.    Under Defendants' ELL plan, ELL students' academic level is to be assessed using testing, previous school records, and in the absence of such records, using interviews of the student and parents along with other assessment tools.  (Id. at 7-8.)   After such assessment, the ELL contact or guidance counselor is to place the student in an appropriate grade and develop an ELL student plan for the student.  (Id. at 7-10.)  The ELL Plan requires that placements be "age appropriate." (Id. at 8.)

28.    Under the plan, ELL students are taught to the Florida Standards, and "ELL students receive equal access to the regular curriculum." (Id. at 11.)

29.    Further, the ELL plan specifies that "instruction provided to ELLs is equal in amount, sequence and scope to that provided to non-ELL students." (Id. at 12.)

### Defendants' Policy and Practice of Denying Equal Access to Educational Opportunity

30.    From about 2012 through the spring of 2013, there was a sharp increase in the number of unaccompanied minors arriving to the United States from abroad.   See Pew Charitable Trusts, Number of Undocumented Children Who Cross U.S. Border Alone has Tripled (May 9, 2013) http://www.pewtrusts.org/en/research-and-analysis/blogs/stateline /2013/05/09/number-of-undocumented-children-who-cross-us-border-alone

-has-tripled (last visited May 2, 2016). Most of these youth were 16 or 17 years old when they came to the United States. Congressional Research Service, Unaccompanied Alien Children: Demographics in Brief 4-5 (Sept. 24, 2014) https://www.fas.org/sgp/crs/homesec/R43734.pdf.

31.    On August 1, 2013, Defendant Collier County School Board enacted School Board Policy 5112.01 ("the Policy"), which states:

> Persons who are seventeen (17) years old or older and who by earning eight (8) credits per academic year, cannot meet graduation requirements including grade point average (GPA), prior to the end of the school year in which they attain the age of nineteen (19), shall not be permitted to attend the regular high school program beyond the end of the academic year in which they attain the age of seventeen (17). Such persons shall be afforded an opportunity to pursue a high school diploma through the Adult High School or General Educational Development (GED) programs of the District.

(Ex. 2.)

32.    On information and belief, Collier County school employees routinely deny high school enrollment to recently-arrived, foreign-born, ELL students age sixteen or older relying on the Policy, and then funnel them to off-site, adult, English-only instruction.

33.    By denying enrollment to recently-arrived ELL students ages sixteen and older, Defendants procedurally and substantively depart from the norms followed with regard to Defendants' ELL plan and students in general.

12

34.     Defendants' denial of enrollment to this group of students violates state and federal law.   See Fla. Stat. § 1000.05 (prohibiting discrimination) and Fla. Admin. Code R. 6A-19.001 (defining discrimination as taking an admission action, that adversely affects an applicant for admission based on "linguistic characteristics of a national origin group," or "belonging to a national origin minority group, unnecessarily based on limited-English-language skills"); 20 U.S.C. § 1703(f) (requiring educational agencies "to take appropriate steps to overcome language barriers that impede equal participation by its students in its instructional programs").

35.     By denying enrollment, Defendants also deny these ELL students the benefit of Defendants' ELL plan.  As these students are not permitted to register, they are not identified as ELL upon registration; they do not receive English and academic assessments; they are not provided placement decisions by the school ELL committee, ELL Contact or guidance counselor, or development of an ELL student plan; they are not offered classes taught to the Florida Standards, equal access to the regular curriculum, or instruction equal in amount, sequence and scope to that provided to non-ELL students; and they are not provided assessments of academic and language progress.

36. After denying enrollment, Defendants funnel these students to off-site, non-credit, adult, English language-only programs at Immokalee Technical College, also known as Immokalee Technical Center ("ITech"), or other locations.

37. By funneling these students to a non-credit English program, Defendants procedurally and substantively depart from the norms set out in the ELL plan.

38. The program offered to these students at ITech, Adult English for Speakers of Other Languages ("Adult ESOL"), does not teach the skills and subject matters required under the Florida Standards and the ELL plan. Instead, it only provides for "learning English through reading, listening, speaking and writing skills required to get a job, get promoted and communicate within the community." See Immokalee Technical College, Portfolio of Programs Offered (last visited April 1, 2016), http://www.itech.edu/portfolio/english.

39. The Adult ESOL program does not provide instruction in basic subject areas of math, science or social studies, required by section 1003.56(3)(d), Florida Statutes, the accompanying regulations and the ELL plan. The Adult ESOL program does not provide any credit toward a

regular high school diploma. See Fla. Stat. § 1004.02(2) (defining Adult ESOL as "noncredit English literacy courses").

40.    Adult ESOL costs thirty dollars per semester to participate in the program, in violation of the Florida Constitution, which mandates "free public schools." Fla. Const. art. IX, § 1(a).

41.    Students in the Adult ESOL program are segregated from their peers and denied the opportunity to participate in any of the high school's academic enrichment, sports, or extra-curricular activities. This violates Florida administrative regulations that entitle ELL Students to "equal access to programs and services other than ESOL." See Fla. Admin. Code R. 6A-6.0908. It is also contrary to federal guidance stating that under federal law, ELL students should have equal opportunities to meaningfully participate in all school programs and activities whether curricular, co-curricular, or extracurricular. See Dear Colleague Letter, supra at 17-18.

42.    Contrary to the federal guidance letter and Defendants' ELL plan that state that placement of ELL students should be age appropriate, Defendants funnel ELL students ages sixteen and older to an Adult ESOL program instead of educating them with their peers at the local high school. See Dear Colleague Letter, supra at 18, n. 50; (Ex. 1 at 8.)

43.     By denying Y.M., G.O., M.D., and similarly situated students enrollment in the high school, and failing to identify, evaluate, and provide services under Defendants' ELL plan, Defendants deny these students equal access to educational opportunities offered in high school, the opportunity to earn credits toward a high school diploma, and the opportunity to learn skills and core subject matter that they will need in the future, thereby limiting their educational opportunities, career opportunities, and earning potential.

### NAMED PLAINTIFFS' ALLEGATIONS

44.     Y.M., G.O., and M.D. are minor, high school-aged ELL students who left their countries of origin and now reside in Collier County. When they sought to enroll at the local high school, however, Defendants refused to enroll them.

45.     Y.M. arrived in Collier County from Haiti on March 27, 2015, at the age of fifteen. Prior to coming to the United States, Y.M. was enrolled in what is considered the 8th grade at the Ecole Mixte Freres-Unis de Mapou Lagon in Haiti.[3]

46.     During the week of March 30, 2015, Y.M. and his father, Mr. Methelus, went to Immokalee High School to enroll Y.M. in school. A

---

[3] Grade levels in other countries may not correspond with grade levels in the United States. That is why individual assessment of foreign-born students is essential to placement.

school staff person immediately asked Y.M.'s age.   When Mr. Methelus told her that Y.M. would be turning sixteen on April 4, 2015, the employee responded that Y.M. could not enroll at Immokalee High because it was "too close to his sixteenth birthday."  Defendants' employee did not give Y.M. and his father an enrollment packet for school.  Instead, she directed them to the adult program at ITech.  Per her instructions, Mr. Methelus enrolled Y.M. at ITech.

47.     At ITech, Y.M. did not receive instruction in the core subject areas and skills required by the Florida Standards, nor was he able to earn credits toward a high school diploma.  Mr. Methelus was not afforded any opportunity to appeal the decision to deny Y.M. enrollment in high school. The refusal to enroll Y.M. in an academic program and decision to isolate him from his non-immigrant peers has denied this child equal, non-segregated access to educational opportunity and caused him to feel frustrated and anxious about his future.

48.     G.O. arrived in Collier County from Guatemala in summer of 2014.  G.O. wants to become a police officer so that he can serve and protect his community.  In August 2014, G.O., who was sixteen at the time, and his aunt and guardian Rosalba Ortiz, went to Immokalee High School to enroll G.O. in school.

49.     Upon arrival at the school's front office, they completed school registration paperwork and provided a copy of a report card showing G.O. had most recently completed what is considered the sixth grade in Guatemala.   Defendants' employee told them they would have to send G.O.'s paperwork to district headquarters in Naples to find out if G.O. could enroll at Immokalee High School.   When Ms. Ortiz contacted Immokalee High School a few days later, she was told G.O. could not attend Immokalee High School. His only option was to attend the Adult ESOL program at ITech.   Ms. Ortiz was not afforded any mechanism for appealing Defendants' decision.

50.     Having been offered no other option, she enrolled G.O at ITech in the Adult ESOL program, where he received only basic English language instruction.   G.O. did not receive instruction in any of the core subject areas and skills required by the Florida Standards.   He feels frustrated and hopeless.

51.     M.D., who is from Guatemala, arrived in Immokalee in December of 2014 at the age of sixteen.  Shortly after his arrival, M.D. and his mother, Zoila Lorenzo, went to Immokalee High School to enroll M.D. in school.   They were met in the front office by a school employee who immediately asked about M.D.'s age and educational history.   M.D.

18

advised that he was sixteen years old and had finished what is considered the sixth grade in Guatemala. Defendants' employee then told them that M.D. could not attend high school, but could enroll at ITech. They were not given an enrollment packet or provided an opportunity to appeal the school's decision. Ms. Lorenzo then took M.D. to ITech where she paid thirty dollars to enroll him in the Adult ESOL class.

52. M.D. is a soccer enthusiast and skilled player. Shortly after his arrival in Immokalee he joined a recreational soccer league. A local coach recognized his ability and encouraged him to try out for Immokalee High School's soccer team. As M.D. has not been able to enroll in high school, however, he also has not been able to try out for the high school soccer team.

53. M.D. attended Adult ESOL class at ITech. At ITech, he did not receive instruction in any of the basic subject areas required by the Florida Standards nor was he allowed to participate in Immokalee High School's programs and activities. He feels frustrated and isolated due to the Defendants' refusal to allow him to access a high school education.

54. On September 17, 2015, Plaintiffs' counsel wrote a letter to Defendant Kamela Patton, identifying the high school's refusal to enroll ELL students aged sixteen and older; stating that enrollment of students in

Adult ESOL rather than in school violated state and federal laws; requesting rescission of the Policy; requesting that immediate steps be taken to enroll G.O. and M.D. in school; and requesting that similarly situated students be ensured equal access to educational opportunities.

55.     Defendants' general counsel responded to the letter, but did not agree either to enroll the students in high school or to revise its policy or practice.

56.     Despite Plaintiffs' requests, and federal and state laws, Defendants have not enrolled Y.M., G.O., and M.D. in high school. As a result, Y.M., G.O., and M.D. are not earning credit toward a high school diploma, are not receiving free education in all of the subjects and skills required by the Florida Standards, are not afforded the services provided in Defendants' own ELL plan, are denied the opportunity to participate in other school program and activities, and are segregated from their peers.

57.     Named Plaintiffs, on behalf of Y.M., G.O., M.D., and those similarly situated, seek a declaration that Defendants' discriminatory policy and practices are unlawful and an injunction to end those practices.  They also seek compensatory education to receive the education that they were denied due to Defendants' policy and practice.

## CLASS ACTION ALLEGATIONS

58.     Plaintiffs bring this action on behalf of Y.M., G.O., M.D., and a class of similarly situated students pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

59.     The class is defined as:

All recently-arrived, foreign-born, English Language Learner (ELL) students ages sixteen and older who after August 1, 2013, resided or will reside in Collier County, sought or will seek to enroll in a Collier County public high school, and were or will be denied enrollment by the Defendants.

### Rule 23(a)(1) – Numerosity

60.     According to federal government data, more than 200 unaccompanied minors have been released to family or sponsors in Collier County each fiscal year since 2013.[4]   From October 2013 to September 2014, that number was 241.   From October 2014 to September 2015, the number was 219.   And from October 2015 to March 2016 (the most recent data available), the number is already 201.

61.     A report by the Congressional Research Service shows that nationally, children 16-17 years old made up 55% of the unaccompanied

---

[4] See Office of Refugee Resettlement, Unaccompanied Children Released to Sponsors by County FY 15, http://www.acf.hhs.gov/programs/orr/resource/unaccompanied-children-released-to-sponsors-by-county-fy15 (last visited Apr. 25, 2016).

minors population in fiscal year 2013 and 46% of the population in fiscal year 2014.  On average then, children 16-17 years old have accounted for about half of the unaccompanied minors entering the United States. Congressional Research Service, Unaccompanied Alien Children: Demographics in Brief 4-5, (Sept. 24, 2014), https://www.fas.org/sgp/crs/homesec/R43734.pdf.

62.    Assuming the age breakdown nationally is comparable to the age breakdown of the children who have resettled to Collier County, this would mean that approximately 50% of the unaccompanied minors who have come to Collier County are 16-17 years old.

63.    Taken together, this data shows that the proposed class consists of approximately 100 to 120 children a year (50% of 241, 219, 201).  These reasonable estimations are sufficient to find numerosity.

64.    Joinder of the members of the class would be impracticable. The proposed class members are foreign-born students who are not literate in English or familiar with the U.S. legal system.

65.    Many parents or guardians of children in this situation will themselves have limited English proficiency, lack familiarity with the U.S. legal system, and lack the resources necessary to advocate on behalf of these children.

22

66.    In addition, the proposed class includes future members whose identities cannot yet be known.

### Rule 23(a)(2) – Commonality

67.    Members of the proposed class have been or will be adversely affected by Defendants' refusal to enroll recently-arrived ELL students aged 16 and older into high school with their peers.

68.    Common questions for all class members include: (1) whether Defendants' refusal to enroll class members in high school violates the U.S. Constitution and the Equal Educational Opportunities Act; and (2) whether Defendants' actions unlawfully segregate class members from their peers and deny them access to programs and activities in violation of the EEOA, Title VI of the Civil Rights Act of 1964 and the Florida Educational Equity Act.

69.    Determination of these common questions will turn on an evaluation of the same legal standards, requirements, and policy and practice by Defendants.

### Rule 23(a)(3) – Typicality

70.    The named Plaintiffs' claims are typical of those of the proposed class.    They arise from Defendants' enrollment policy and practice that deny class members the opportunity to enroll in the public

high school, deny them equal access to educational opportunities, and segregate them from their peers. These claims are based on the same injuries and application of the same legal theories to all class members' claims.

71.    All class members will benefit from an end to Defendants' discriminatory policy and practice.

### Rule 23(a)(4) – Adequacy of Representation

72.    The named Plaintiffs will fairly and adequately represent the class. They have no interests antagonistic to those of the class. They are seeking declaratory and injunctive relief that will provide relief to all class members.

73.    Plaintiffs' counsel is also fully qualified and prepared to pursue this litigation on behalf of the class. Plaintiffs are represented by the Southern Poverty Law Center, a non-profit organization with significant experience litigating class actions and with sufficient financial and human resources to litigate this matter.

74.    Plaintiffs and their counsel will vigorously and competently prosecute this action on behalf of the class.

**Rule 23(b)(2) – Defendants' Refusal to Act on Grounds Applicable Generally to the Class**

75.    The named Plaintiffs challenge a policy and practice by the Defendants that is generally applicable to the class as a whole.  That policy and practice operates to exclude class members from enrollment in their local high school and instead funnels them to an adult, off-site, non-credit, English-only program.

76.    Defendants have acted or refused to act on grounds that apply generally to the class, making final injunctive and corresponding declaratory relief appropriate with regard to the class as a whole.

### CLAIMS FOR RELIEF

### First Cause of Action

Declaratory and Injunctive Relief for Violation of the Equal Educational Opportunities Act of 1974 ("EEOA")

77.    The named Plaintiffs, on behalf of Y.M., G.O., M.D., and all others similarly situated, re-allege and incorporate by reference the allegations set forth in the foregoing paragraphs of this complaint as if fully restated herein.

78.    Defendants Collier County School Board and Superintendent Patton are bound by the provisions of the EEOA, 20 U.S.C. § 1703.

79.    Section 1703 of the EEOA states in  part:

> No State shall deny equal educational opportunity to an individual on account of his or her race, color, sex or national origin by:
>
> (a) the deliberate segregation by an educational agency of students on the basis of race, color, sex or national origin among or within schools; [or]
>
> . . .
>
> (f) the failure of an educational agency to take appropriate action to overcome language barriers that impede equal participation by its students in its instructional programs.

20 U.S.C. § 1703(a), (f).

80.    Through their actions and inactions, including denying these students enrollment in high school and funneling them instead to Adult ESOL, Defendants have denied Y.M., G.O., M.D., and similarly situated students equal educational opportunity on account of their national origin by deliberately segregating them from their peers.

81.    Through their actions and inactions, including denying these students enrollment, Defendants have denied Y.M., G.O., M.D., and similarly situated students equal educational opportunity on account of their national origin by failing to take appropriate action to overcome language barriers that impede these students' equal participation in Defendants' high school program.

82.     As a result, Defendants deny Y.M., G.O., M.D., and similarly situated students a public school education, the opportunity to learn the skills and subject matter set forth in the Florida Standards, credits toward a high school diploma, access to other activities and programs available to students enrolled in high school, and their full learning and earning potential.

83.     Defendants' conduct violates the rights of the Y.M., G.O., M.D., and all others similarly situated under the EEOA.

84.     The named Plaintiffs, on behalf of Y.M., G.O., M.D., and all others similarly situated students, request declaratory and injunctive relief to remedy Defendants' ongoing violation of these rights.

### Second Cause of Action

Declaratory and Injunctive Relief for Violation of Title VI
of the Civil Rights Act of 1964

85.     The named Plaintiffs, on behalf of Y.M., G.O., M.D., and all others similarly situated, re-allege and incorporate by reference the allegations set forth in the foregoing paragraphs of this complaint as if fully restated herein.

86.     Title VI provides that no person in the United States shall, on the ground of race, color or national origin, be excluded from participation

in, be denied the benefits of, or be subject to discrimination under, any program receiving federal funding. 42 U.S.C. § 2000d.

87.     As recipients of federal funding, Defendants are prohibited from discriminating against Plaintiffs by excluding them from instructional services, failing to provide them with instructional services, or providing them with inferior services on the basis of their national origin.

88.     Defendants acted under color of state law to deprive Y.M., G.O., M.D., and all others similarly situated of a federal right under Title VI.

89.     Defendants acted pursuant to a policy and practice in depriving Y.M., G.O., M.D., and all others similarly situated of a federal right under Title VI.

90.     Through their actions and inactions on the basis of national origin, Defendants have excluded Y.M., G.O., M.D., and similarly situated students from participation in a public school education and Defendants' ELL program, denied them the benefits of these programs, and subjected them to discrimination as set forth above.

91.     As a result, Defendants deny Y.M., G.O., M.D., and similarly situated students a public school education, the opportunity to learn the skills and subject matter set forth in the Florida Standards, credits toward a

high school diploma, access to other activities and programs available to students enrolled in high school, and their full learning and earning potential.

92.     The named Plaintiffs, on behalf of Y.M., G.O., M.D., and all others similarly situated, seek declaratory and injunctive relief to remedy these ongoing violations.

### Third Cause of Action

#### Declaratory and Injunctive Relief for Violations of the Fourteenth Amendment Equal Protection Clause

93.     The named Plaintiffs, on behalf of Y.M., G.O., M.D., and all others similarly situated, re-allege and incorporate by reference the allegations set forth in the foregoing paragraphs of this complaint as if fully restated herein.

94.     The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

95.     Defendants acted under color of state law to deprive Y.M., G.O., M.D., and all others similarly situated of a federal right under the Equal Protection Clause of the Fourteenth Amendment.

96.     Defendants acted pursuant to a policy and practice to deprive Y.M., G.O., M.D., and all others similarly situated of a federal right under the Equal Protection Clause of the Fourteenth Amendment.

97.     Defendants have failed to enroll Y.M., G.O., M.D., and all others similarly situated and have instead funneled them to off-site, non-credit Adult ESOL, denying them equal protection of the laws.

98.     As a result, Defendants deny Y.M., G.O., M.D., and similarly situated students a public school education, the opportunity to learn the skills and subject matter set forth in the Florida Standards, credits toward a high school diploma, access to other activities and programs available to students enrolled in high school, and their full learning and earning potential.

99.     The named Plaintiffs, on behalf of Y.M., G.O., M.D., and all others similarly situated, seek declaratory and injunctive relief to remedy these ongoing, constitutional violations.

### Fourth Cause of Action

Declaratory and Injunctive Relief for Violation of the
Fourteenth Amendment Due Process Clause

100.    The named Plaintiffs, on behalf of Y.M., G.O., M.D., and all others similarly situated, re-allege and incorporate by reference the

allegations set forth in the foregoing paragraphs of this complaint as if fully restated herein.

101.   Through their actions and inactions, Defendants have deprived Y.M., G.O. and M.D., and all others similarly situated of their constitutionally protected property interest to an education by denying them the right to attend high school.

102.   Defendants' lack of any procedures following denial of enrollment is constitutionally inadequate.  Defendants denied Y.M., G.O. and M.D., and all others similarly situated the right to attend high school without any procedures, including notice, an opportunity to be heard, or an avenue to challenge an adverse determination.

103.   As a result, Defendants deny Y.M., G.O., M.D., and similarly situated students notice and an opportunity to be heard regarding their denial of high school enrollment and related educational opportunities.

104.   Defendants acted pursuant to a policy and practice in depriving Y.M., G.O., M.D., and all others similarly situated of an education without notice or opportunity to be heard.

105.   The named Plaintiffs, on behalf of Y.M., G.O., M.D., and others similarly situated, seek declaratory and injunctive relief to remedy these ongoing, constitutional violations.

**Fifth Cause of Action**

Declaratory and Injunctive Relief for Violation of the
Florida Educational Equity Act, Fla. Stat. §§ 1000.05 et seq. and
Fla. Admin. Code R. 6A-19.001 et seq.

106.    The named Plaintiffs, on behalf of Y.M., G.O., M.D., and all others similarly situated, re-allege and incorporate by reference the allegations set forth in the foregoing paragraphs of this complaint as if fully restated herein.

107.    The Florida Educational Equity Act prohibits the exclusion of or discrimination against students on the basis of national origin.  See Fla. Stat. § 1000.05(2)(a).

108.    Under the Act, "discrimination" includes taking admission actions that adversely affects an applicant for admission based on "linguistic characteristics of a national origin group," or "belonging to a national origin minority group, unnecessarily based on limited-English-language skills." Fla. Admin. Code R. 6A-19.001.

109.    The Florida Educational Equity Act also bans admissions criteria that result in a disparate impact.  Fla. Stat. § 1000.05(2)(b) ("[T]he criteria for admission to a program or course shall not have the effect of restricting access by persons of a particular race, ethnicity, national origin, gender, disability or marital status").

32

110.   Defendants' actions and inactions to exclude Y.M., G.O., M.D., and all others similarly situated from enrollment in public high school and to funnel them to non-credit, off-site, Adult ESOL violate the Florida Educational Equity Act.

111.   Defendants' policy and practice violate the rights of Y.M., G.O., M.D., and all similarly situated students under the Florida Educational Equity Act.

112.   Defendants deny Y.M., G.O., M.D., and similarly situated students a public school education, the opportunity to learn the skills and subject matter set forth in the Florida Standards, credits toward a high school diploma, access to other activities and programs available to students enrolled in high school, and their full learning and earning potential.

113.   The named Plaintiffs, on behalf of Y.M., G.O., M.D., and others similarly situated, seek declaratory and injunctive relief to remedy these ongoing violations of the Florida Educational Equity Act.

### REQUESTS FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a.   Assume jurisdiction over this matter;

b.  Certify Plaintiffs' claims as class claims pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure;

c.  Designate named Plaintiffs as class representatives for the class and designate the named Plaintiffs' counsel as counsel for the class pursuant to Federal Rule of Civil Procedure 23;

d.  Declare that Defendants' acts and omissions violate the rights of Y.M., G.O., M.D., and class members under the Equal Educational Opportunities Act;

e.  Declare that Defendants' acts and omissions violate the rights of Y.M., G.O., M.D., and class members under Title VI of the Civil Rights Act of 1964;

f.  Declare that Defendants' actions and omissions violate the rights of Y.M., G.O., M.D., and class members under the Fourteenth Amendment Equal Protection Clause;

g.  Declare that Defendants' acts and omissions violate the rights of Y.M., G.O., M.D., and class members under the Fourteenth Amendment Due Process Clause;

h.  Declare that Defendants' acts and omissions violate the rights of Y.M., G.O., M.D., and class members to be free from discrimination under Florida Educational Equity Act;

i.  Declare Defendants to be liable for the days of school class members missed due to Defendants' unlawful policy and practice of denying them enrollment.

j.  Enter injunctive relief in the form of:

1. Requiring Defendants to take affirmative steps to enroll Y.M., G.O., M.D., and similarly situated students in high school.

2. Requiring Defendants to adopt policies, procedures, and training to end Defendants' ongoing violations of the EEOA, Title VI, the U.S. Constitution and state law, and to publicize to the community at large and to class members, in a language and form of communication that they understand, those new policies and procedures.

3. Requiring Defendants to communicate to all class members, in a language and form of communication that they understand, that they can enroll in school and can make up any days of school that they missed as a result of Defendants'

unlawful policy and practice of denying them enrollment.

4. Requiring Defendants to adopt policies and procedures to provide prospective students with notice and opportunities to be heard regarding decisions about eligibility for enrollment in Defendants' public schools.

5. Requiring Defendants to provide compensatory education to Y.M., G.O., M.D. to remedy the harms caused by Defendants' unlawful policy and practice of denying them enrollment.

k.  Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and Fla. Stat. § 1000.05(7); and

l.  Grant any other relief the Court deems just and reasonable.

Respectfully submitted this 17th day of May, 2016,

SOUTHERN POVERTY LAW CENTER

By: _____

Tania Galloni (Lead counsel)
Fla. Bar No. 619221
Jessica Zagier Wallace
Fla. Bar No. 956171
SOUTHERN POVERTY LAW CENTER
4770 Biscayne Blvd.
Miami, Florida 33137
T: 786.347.2056
F: 786.237.2949
Tania.Galloni@splcenter.org
Jessica.Wallace@splcenter.org

*Attorneys for Plaintiffs*