UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LESLY METHELUS, on behalf of Y.M., a minor; ROSALBA ORTIZ, on behalf of G.O., a minor; ZOILA LORENZO, on behalf of M.D., a minor; on behalf of themselves and all other similarly situated,

Plaintiffs,

vs.

THE SCHOOL BOARD OF COLLIER COUNTY, FLORIDA and KAMELA PATTON, Superintendent of Collier County Public Schools, in her official capacity,

Defendants.
_____________________________________/

**DISPOSITIVE MOTION**

CASE NO. 2:16-cv-00379-SPC-MRM

**MOTION TO DISMISS**

Defendants, THE SCHOOL BOARD OF COLLIER COUNTY, FLORIDA (the "School Board") and KAMELA PATTON ("Patton"), pursuant to Rule 12(b)(6), respectfully move this Court to Dismiss the Amended Complaint (Doc. #30) against them, file this combined memorandum of law pursuant to Local Rule 3.10, and say as follows:

**The Allegations**

Plaintiffs are six immigrants who allegedly sought admission to a Collier County public high school shortly after arrival in the United States but were allegedly sent to English language and adult education programs. Y.M. is a 17 year-old Haitian with limited English proficiency who had not completed the eighth grade in Haiti. G.O. is an 18 year-old Guatemalan with limited English proficiency who had only completed sixth grade. M.D. is a 17 year-old Guatemalan with limited English proficiency who had only completed the sixth grade. KV is an 18 year old Haitian with limited English proficiency who allegedly had not completed his junior

year of high school. N.A. is an 17 year old Haitian who had not completed ninth grade. T.J.H. is a 17 year old Haitian with limited English proficiency who had not completed his junior year of high school. Three of the plaintiffs did not even allege that they have completed Florida's statutory requirements for advancement to high school. All six were allegedly denied admission to high school on the basis that they had aged out under School Board Policy 5112.01 – because they could not complete high school by age 19.

Plaintiffs allege that Policy 5112.01 discriminates against them based on their national origin and limited English proficiency, in violation of the Equal Educational Opportunity Act (EEOA),[1] Title VI of the Civil Rights Act of 1964 (Title IV),[2] the Fourteenth Amendment's Procedural Du Process Clause, and Florida's Educational Equity Act (FEEA).[3]

However, federal law[4] does not pre-empt the age and academic prerequisites of a State's free public education system as administered by the School Board. See, § 1001.32, Fla. Stat. Neither the EEOA, Title VI, the U.S. Constitution, nor Florida law proscribes the matriculation policies alleged.[5] Under our system of federalism, such policies are left to the States and their local school districts. *Horne v. Flores*, 557 U.S. 433, 440-41 (2009). The State of Florida has left to local school boards, under their home-rule powers, the determination of the cut-off age for attendance in free public schools. § 1001.32, Fla. Stat. Strikingly, the English language instruction and adult education programs they say they were offered would enable them to work towards a GED or a diploma.[6]

---

[1] 20 USC § 1703.
[2] 42 USC § 2000d et seq.
[3] § 1005.05 et seq., Florida Statutes.
[4] There are exceptions to this rule that are not relevant in this case.
[5] Compare the IDEA and its 21 year old mandatory education requirement. 20 U.S.C. § 1400 (a)(1)(A).
[6] § § 1003.435(6), Fla. Stat. (2015); 1004.93(1)(a)(2) and (2)(c).

The Amended Complaint is due to be dismissed for a number of reasons. The School Board's "age out" policy, Policy 5112.01,[7] is a facially neutral age out limitation on attendance at public schools. Its stated purpose is to provide "reasonable consistency of maturity levels among students in the regular high school program."[8] Additionally, the State's academic prerequisites for high school matriculation and adult education provide the kind of ability grouping that has been repeatedly upheld. *Holton v. City of Thomasville School Dist.*, 490 F.3d 1257 (11th Cir. 2007). Further, Plaintiffs lack standing, as they have no right to attend regular high school and have aged out of the public school system. *See*, *Mumid v. Abraham Lincoln High Sch.*, 618 F.3d 789, 794 (8th Cir. 2010). Finally, Defendants raise certain other defenses, including but not limited to sovereign immunity, and certain other pleading problems[9] as described more fully below.

**Standard of Review**

The United States Supreme Court has tightened the pleading requirements of Rule 8, Federal Rule of Civil Procedure. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007), the Court "retired" the oft-quoted rule that " 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 562-63 (quoting *Conley v. Gibson*, 355 U.S. 41, a45–46 (1957)). In its place, the Court adopted a plausibility standard that requires

7 Doc. 30 at its Ex. 2.

8 Id.

9 Additionally, Plaintiffs' 120 paragraphs of general allegations and five counts incorporate the allegations in the "foregoing paragraphs," a classic shotgun pleading, making the Amended Complaint even more difficult to understand. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1324 (11th Cir. 2015): *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295–96 (11th Cir. 2002).

pleaders to allege sufficient facts of each element to move beyond mere speculation, thereby "nudg[ing] their claims across the line from conceivable to plausible . . . ." *Id.* at 570.

This plausibility standard requires more than labels and conclusions or formulaic recitation of the elements that amount to "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Indeed, allegations that only show the mere possibility of misconduct will not survive a motion to dismiss. *Id.* at 1950. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. Then after determining whether the factual allegations in the complaint state a plausible claim, the Court must also "draw on its judicial experience and common sense" to consider whether Plaintiffs' explanation for the defendant's conduct is plausible. *Id.* at 1950-51. These same pleading standards now apply in cases involving qualified immunity and are essentially the old "heightened pleading" standard under a new name. *Randall v. Scott*, 610 F.3d 701, 716 (11th Cir. 2010).

## **Argument**

*General Legal Principals Applicable to All Counts*

Plaintiffs have not stated a claim upon which relief may be granted under any count, because they were not qualified to attend high school in Florida.

The State of Florida provides free public schools by its Constitution and an extensive statutory scheme,[10] supplemented by school districts' home rule powers.[11] Those statutes include requirements graduation from middle school and advancement to high school. Neither Florida's Constitution, nor its general law, grants or requires free public education to persons

[10] See, Title XLVIII, Florida Statutes.
[11] Florida Constitution, section 4(b), Art. IX (1968).

over the age of 16.[12] Under their home rule powers, local school boards may regulate anything not pre-empted by general law, *Sch. Bd. of Collier County v. Florida Teaching Profession Nat. Educ. Ass'n*, 559 So. 2d 1197, 1198 (Fla. 2d DCA 1990), including when a person has "aged out" of the system of free public schools.

A) Constitutional Grant of Home Rule

School boards in Florida have home-rule powers under the Florida Constitution section 4(b), Art. IX (1968). It says:

> The school board shall operate, control and supervise all free public schools within the school district and determine the rate of school district taxes within the limits prescribed herein. Two or more school districts may operate and finance joint educational programs.

B) Statutory Enshrinement of Home Rule

These broad home-rule powers are also reiterated in section 1001.32, Florida Statute (2015). It says:

> In accordance with the provisions of s. 4(b) of Art. IX of the State Constitution, district school boards shall operate, control, and supervise all free public schools in their respective districts and may exercise any power *except as expressly prohibited* by the State Constitution or general law. (Emphasis added.)

School boards enjoy a broad grant of home-rule powers subject only to express prohibitions in general law. *McCalister v. Sch. Bd. of Bay County*, 971 So. 2d 1020, 1023 n.1 (Fla. 1st DCA 2008). As succinctly stated by the Florida Attorney General "section 1001.32(2), Florida Statutes conferred on school boards a variant of 'home-rule power,' and that a district school board may exercise any power for school purposes in the operation, control, and

---

[12] With certain exceptions not relevant here, such as ESE students, which is not at issue here.

supervision of the free public schools in its district except as expressly prohibited by the State Constitution or general law."[13]

Therefore, in the absence of expressed prohibitions in the Florida Constitution or general Florida law preventing a school board may set age out requirements, pursuant to section 4(b), Art. IX, Constitution of Florida, and section 1001.32, Florida Statutes. "Express pre-emption requires a specific statement; the pre-emption cannot be made by implication nor by inference." *City of Hollywood v. Mulligan*, 934 So. 2d 1238, 1243 (Fla. 2006); see also, *Fla. League of Cities, Inc. v. Dep't of Ins. & Treasurer*, 540 So.2d 850, 856 (Fla. 1st DCA 1989) (quoting *Bd. of Trs. v. Dulje*, 453 So.2d 177, 178 (Fla. 2d DCA 1984)); see also *Phantom of Clearwater, Inc.*, 894 So.2d at 1018 ("Express preemption ... must be accomplished by clear language stating that intent."); *Edwards v. State*, 422 So.2d 84, 85 (Fla. 2d DCA 1982) ("An 'express' reference is one which is distinctly stated and not left to inference."). Indeed, even "[t]he specific grant of authority does not prevent a school board from delegating authority which is not expressly prohibited." *Sch. Bd. of Collier County v. Florida Teaching Profession Nat. Educ. Ass'n*, 559 So. 2d 1197, 1198 (Fla. 2d DCA 1990).

There are no specific constitutional or legislative statewide restrictions, prohibitions, or mandates regarding the age out requirements free public schools in Florida, beyond the statutorily required compulsory education requirements.[14] Florida's compulsory education law applies to "children" who have not reached the age of 16, and to "students" aged 16 who have not yet finished the school term in which they turned 16. § 1003.21, Fla. Stat. Those who have reached the age of 16 and have left elementary or secondary school are defined as "adult students." § 1004.02(5), Fla. Stat.

---

13 Opinion 86-45; *See also*, Fla. Att'y Gen. Op. 2003-40 (2003).

14 *See*, § § 1002.20(2)(a) and 1003.21(1), Fla. Stats. (2016).

However, Florida law is silent with respect to whether persons who have reached the aged of 16 who are not already "students" are entitled to a free public education. Rather, Florida laws charges local school boards with decisions regarding "admitting, classifying, promoting, and graduation of students to or from various schools of the district." § 1003.02(1)(a), Fla. Stat.; *see, also*, § 1001.41, Fla. Stat. (regarding adopting standards and policies and assigning persons to schools).

Pursuant to its home rule powers, the School Board of Collier County adopted Policy 5112.01, pertaining to the admission to high school of persons over the age of 17. It says, in relevant part:

> In order to provide reasonable consistency of maturity levels among students in the regular high school program, no person shall be permitted to attend the regular high school program after attaining the age of nineteen (19). Those who attain the age of nineteen (19) during a school year may complete that school year. Persons who are seventeen (17) years old or older and who, by earning eight (8) credits per academic year, cannot meet graduation requirements, including grade point average (GPA), prior to the end of the school year during which they attain the age of nineteen (19), shall not be permitted to attend the regular high school program beyond the end of the academic year in which they attain the age of seventeen (17). Such persons shall be afforded an opportunity to pursue a high school diploma through the Adult High School or General Educational Development (GED) programs of the District.
>
> ***

The Amended Complaint alleges that the School Board as a matter of practice, pursuant to this policy, offers prospective enrollees who are unable to complete high school by age 19 entrance in English language and adult education programs. [15]

[15] In Florida by law, "[a]ll high school equivalency diplomas issued under the provisions of this section shall have equal status with other high school diplomas for all state purposes,

In addition, Florida has detailed statutory requirements for graduation from middle school and entrance to high school. § 1003.4156, Fla. Stat. (2016). These requirements include, but are not limited to, demonstrated proficiency in English, Mathematics, Social Studies, and Science. Id. These requirements must be met, "in order for a student to be promoted to high school." Id. Plaintiffs have not alleged that they met any of these requirements.

As alleged, all of the Plaintiffs had either aged out or had not completed the requirements for admission to high school, or both. G.O. is at least 18. M.D. is at least 17. Both had allegedly only completed 6th and 7th grade and were already 16 years old *and not enrolled in school* in 2014.[16] Y.M. is 17 and had turned 16 on April 4, 2015 before the beginning of the Fall 2015 school term, had not completed the 8th grade. K.V. is at least 17 and will be 18 by January 2017, and has only completed the 10th grade.[17] N.A. is at least 17, will be at least 18 by February 2017, and has not completed the 9th grade.[18] T.J.H. is at least 17, and will be 18 by at least April 2017, and has not completed the 10th grade.[19]

Based on the allegations, none of the Plaintiffs were or are qualified to be admitted to high school, given their ages and lack of academic achievement. As will be discussed more fully below, nothing in federal law requires a school board to admit such unqualified students to rhigh school, nor requires that the School Board disregard its policies and state statutes just because Plaintiffs desire to be in high school and not a GED or an adult education program.[20]

---

including admission to any state university or Florida College System institution." § 1003.435(6), Fla. Stat. (2016).

16 Plaintiffs' discussion of the application of Florida's "age out" statutes to currently enrolled "students" is therefore irrelevant. (Doc. 30 at ¶¶ 20-22.)

17 Doc. 30, at ¶¶ 12 and 77.

18 Doc. 30, at ¶¶ 13 and 78.

19 Doc. 30, at ¶¶ 14 and 93.

20 Common sense would at least question the wisdom of placing every 16-21 year old who has been out of school for a number of years into high school. Plaintiffs' insistence on

Of considerable concern are Plaintiffs' representations that are false as a matter of law. Plaintiffs alleged that sending adult students to English language programs and adult education programs "deprive[s]" them of "the opportunity to earn credits towards a high school diploma and to learn skills in core subject matter … limiting their educational and career opportunities." Nothing could be further from the truth. English language education is the very avenue opening educational and career opportunities. In fact, the expressed statutory "intent" of adult education in Florida is "to encourage the provision of educational services that will enable adults to acquire:"

> 1. The basic skills necessary to attain basic and functional literacy.
>
> 2. A high school diploma or successfully complete the high school equivalency examination.
>
> 3. An educational foundation that will enable them to become more employable, productive, and self-sufficient citizens.

§ 1004.93(1)(a), Fla. Stat. (2016).

Thus, rather than depriving Plaintiffs of educational and career opportunities, these programs provide them those very opportunities. The School Board's adult education programs allow students to obtain a high school diploma or equivalent. *See*, § 1004.93. (1)(a)(2) and (2)(c). And, "[a]ll high school equivalency diplomas issued … shall have equal status with other high school diplomas for all state purposes, including admission to any state university or Florida College System institution." § 1003.435(6), Fla. Stat. (2015). It also provides them the

---

individualistic self-determination both assumes too much about their knowledge and wisdom, and assumes too little about the impact of such decisions on teachers, students, and parents, which perhaps is why that determination is left to States and local school boards. *See, Holton v. City of Thomasville School Dist*., 425 F.3d. 1325, 1347 (11th Cir. 2005).

necessary English language skills to succeed in American schools and colleges. Thus, by affording Plaintiffs the opportunity to learn English and obtain a diploma or equivalent and beyond, the School Board is giving them the opportunity to become "more employable, productive, and self-sufficient citizens." § 1004.93(1)(a)(3); *see also*, §§ 1003.433(3) and 1003.435, Fla. Stats. (2016).

Despite Plaintiffs' allegations, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. at 678, (2009); *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011). Moreover, other than saying that they were foreign born, Plaintiffs have not plausibly alleged any fact suggesting that anyone made any decision about them based on anything other than their age and educational qualifications. To survive a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [of national origin discrimination], do not suffice." *Id.*

Therefore, for these reasons alone, Plaintiffs have failed to state a claim upon which relief may be granted.

*COUNT I: EEOA*

Specifically with respect to the EEOA there are additional reasons Plaintiffs have not stated a claim. Plaintiffs' have not alleged the School Board or Patton "failed to take appropriate action to overcome language barriers." In fact, the Plaintiffs repeatedly alleged that they were sent to adult education English language instruction programs.[21] Plaintiffs make no factual allegation whatsoever that these programs are inappropriate academically. Rather, Plaintiffs

---

[21] Doc. 30, at ¶ ¶ 68, 72, 74, 76, 83, 90, and 98.

allege something the EEOA does not require: that because of their English language deficiencies, they must be admitted to high school. The EEOA does not require the School Board to admit to high school persons unqualified by age and academic achievement. *See*, *Holton v. City of Thomasville Sch. Dist*., 425 F.3d 1325, 1347 (11th Cir. 2005).

The EEOA prohibits discrimination educational opportunities "based on race, color, sex, or national origin." Section 1703 says in relevant part:

> No State shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by—
>
> (a) the deliberate segregation by an educational agency of students on the basis of race, color, or national origin among or within schools;
>
> ***
>
> (f) the failure by an educational agency to take appropriate action to overcome language barriers that impede equal participation by its students in its instructional programs.

20 U.S.C. § 1703.

"Congress intended to leave state and local educational authorities a substantial amount of latitude in choosing the programs and techniques they would use to meet their obligations under the EEOA." *Horn v. Flores*, 5576 U.S. 433, 440-441 (2009). The EEOA does not require the "equalization of results between native and non-native speakers." *Id*. at 2605. Rather, it "grants States broad latitude to design, fund, and implement ELL programs that suit local needs and account for local conditions." *Id*. Crucially, "the EEOA plainly does not give the federal courts the authority to judge whether a State or a school district is providing 'appropriate' instructions in other subjects." *Id*. at 2606. Finally, whether or not such persons suffer any

English language deficiencies – under the EEOA the School Board may legally send them to English Language and adult education programs. [22]

Plaintiffs also have not alleged that any similarly situated person of another national origin was treated differently. On the contrary they allege an age out policy that applies to all such persons *regardless of national origin or language deficiencies.* Plaintiffs therefore are apparently arguing for preferential treatment *on the basis of* their national origin or English language deficiencies. Plaintiffs do not say why such persons unqualified by age and academic achievement should receive preferential treatment not enjoyed by those who speak English or are American born.

The EEOA ensures appropriate treatment; it does not provide preferential treatment based on national origin or English language deficiencies. Plaintiff cannot read such preferential treatment into the EEOA nor have this Court eviscerate State and local prerequisites of age and educational achievement. "By simply requiring a State 'to take appropriate action to overcome language barriers' without specifying particular actions that a State must take, 'Congress intended to leave state and local educational authorities a substantial amount of latitude in choosing the programs and techniques they would use to meet their obligations under the EEOA." *Horne v. Flores*, 557 U.S. 433, 440-41 (2009). When persons such as Plaintiffs have been out of school or are years behind linguistically and educationally, placing them in high school would only cause them to fall further behind and set them up for failure. Therefore, the School Board may legally refer them English language and adult education programs where instead of falling behind they can succeed.

---

[22] Even the Dear Colleague Letter recognizes the importance of "age appropriate" placement decisions, and of beginning with an English acquisition program of reasonable duration to prepare to succeed. *See*, U.S. Dep't of Justice and U.S. Dep't of Educ., English Learner Students and Limited English Proficient Parents, January 7, 2015, p. 19.

Plaintiffs also seem to be alleging that the EEOA requires that Plaintiffs to be given the opportunity to make up for academic content they allegedly are missing because they are receiving adult English language instruction. Plaintiffs apparently rely on the previously noted Dear Colleague Letter.[23] But, the idea advocated in that letter is not the law, as it has been explicitly rejected by a subsequent federal court of appeal, and the U.S. Supreme Court.

| | |
|---|---|
| To ensure the EL students can catch up in those core areas within a reasonable period of time, such districts must provide compensatory and supplemental services to remedy academic deficits that the student may have developed while focusing on English language acquisition.<br><br>Dear Colleague Letter, p. 19. | …Plaintiffs' chief complaint is that the four year model is defective (i.e. does not constitute "appropriate action" under the EEOA because, "[t]he state does not provide ELL students with an opportunity to recover academic content that they missed … as a result of ELD." But the EEOA imposes no such requirement on the school district; it requires only that a State " 'take appropriate action to overcome language barriers without specifying particular actions a State may take…"<br><br>*Flores v. Huppenthal*, 789 F3d 994 (9th Cir. 2015) (quoting *Horne v, Flores*, 557 U.S. 433, 440-41 (2009)). |

Plaintiffs' claims about the appropriateness of the School Board's adult education curriculum in subjects other than English are without merit. The Supreme Court of the United States has made this perfectly clear. "[T]he EEOA plainly does not give the federal courts the authority to judge whether a State or school district is providing 'appropriate' instruction in other subjects. That remains the province of the States and the local schools." *Horne v. Flores*, 557 U.S. 433, 470 (2009); *see also, U.S. v. Texas*, 601 F.3d 354 (5th Cir. 2010) (holding that it was an

23 *See*, U.S. Dep't of Justice and U.S. Dep't of Educ., Dear Colleague Letter, English Learner Students and Limited English Proficient Parents (Jan. 7, 2015). Curiously, Plaintiffs ignore other provisions of the letter, such as a reasonable time period to study English.

abuse of discretion for a district court to supplant a school's educational policy decisions with its judgment.).

Therefore, Plaintiffs' EEOA claim should be dismissed.

*COUNT II: Title VI*

Plaintiffs Title VI claim should be dismissed for reasons similar to those for dismissing their EEOA claim. As noted above, the crux of the Amended Complaint is that certain persons unqualified for high school by age and academic achievement should have been admitted to regular high school and should not have been sent to English language adult education programs. However, such ability grouping based on educational achievement has been repeatedly upheld in the Eleventh Circuit. *Holton v. City of Thomasville School Dist*., 490 F.3d 1257.

Plaintiffs appear to be attempting to plead a discriminatory *impact* claim, based on the effects of Policy 5112.01. However, they may not bring such a claim. Under Title VI, a plaintiff must plead facts of national origin intentional discriminatory *treatment*, as there is no private right of action for unintentional disparate impact. *Alexander v. Sandoval,* 532 U.S. 275 (2001).

Intentional discrimination treatment based on national origin can be shown in only two ways: (1) either with direct evidence, or (2) by circumstantial evidence.[24] However, Plaintiffs have allege no facts at all of direct national origin discrimination treatment. Nor have Plaintiffs plausibly plead the elements for a prima-facie case of discrimination based on circumstantial evidence.

---

[24] The Eleventh Circuit does not appear to have explicitly adopted the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), framework in Title VI cases. Lower courts are split on whether to apply it. Given the similarities between Title VI and Title VII, Defendants, would submit that the now well established *McDonnell Douglas* analysis is appropriate.

Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of establishing a prima-facie case of unlawful discriminatory motive by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802; *Rioux v. City of Atlanta*, 520 F.3d 1269, 1275 (11th Cir. 2008); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent. *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir. 2001).

If the plaintiff establishes a prima-facie case, the burden then shifts to the defendant to rebut the presumption by articulating legitimate, nondiscriminatory reasons for its action. *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000). The defendant has the burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reasons advanced. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)); *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253-55, 258; *McDonnell Douglas*, 411 U.S. at 802. Once the defendant satisfies this burden of production, the presumption of discrimination falls away and the plaintiff has the opportunity to come forward with evidence sufficient to permit a reasonable fact finder to conclude that the reasons given by the defendant were not the real reasons for the adverse decision. *Id*. at 1275 (saying, "then the inquiry shifts to a new level of specificity in which the plaintiff must show that the proffered reason really is a pre-text for unlawful discrimination."); *Chapman*, 229 F.3d at 1024. The plaintiff must show, "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could find them unworthy of ordinary credence." *Id.*; *Burdine*, 450 U.S. at 256.

Plaintiffs may establish a prima-facie case of discrimination in assignment to the adult education programs by alleging: (1) they are within the protected class; (2) they were qualified for the regular high school program; (3) they were rejected; and (4) the School Board granted admission to non-members of the class with similar qualifications.

With the exception of being members of a protected class, Plaintiffs have not alleged any of the other relevant elements of national origin discrimination. As noted above, Plaintiffs have not alleged that they were qualified by age or academic achievement to attend regular high school. Nor have Plaintiffs even generally alleged that any similarly unqualified person was admitted to high school. *C.f.*, *Strickland v. Alderman*, 74 F.3d 260, 265 (11th Cir. 1996) (saying different treatment of dissimilarly situated persons does not establish impermissible discrimination.); *Mumid v. Abraham Lincoln High Sch.*, 618 F.3d 789, 794 (8th Cir. 2010) (saying "the students were unable to identify any 'comparator'—a person not a member of the same allegedly protected class—who was treated more favorably than the plaintiffs").

Again, the Eleventh Circuit has repeatedly upheld the kind of ability grouping or achievement grouping of which Plaintiffs' complain. *See e.g.*, *Georgia State Conf. of Branches of NAAC v. State of Georgia*, 775 F.2d 1403 (11th Cir. 1985) abrogated on other grounds *by Lee v. Etowah Cnty. Bd. of Educ.*, 963 F.2d 1416, 1419 n. 3 (11th Cir. 1992). In fact, under *Holton*, a school district may "implement ability grouping programs 'in spite of any segregative effect they may have.'" 490 F.3d at 1260.

Finally, to the extent the Plaintiffs are alleging that they were discriminated against under Title VI due to their language deficiencies,[25] language and national origin are not interchangeable. *Mumid v. Abraham Lincoln High School*, 618 F.3d 789 (8th Cir. 2010).

[25] Plaintiffs have incorporated all of the general allegations into each Count.

Language is not an immutable characteristic and, by itself, does not identify members of a suspect class. See, *Soberal–Perez v. Heckler*, 717 F.2d 36, 41 (2d Cir.1983); *Olagues v. Russoniello*, 770 F.2d 791 (9th Cir.1985) (same); see also *Mumid*, 618 F.3d at 789 (policy that treats students with limited English proficiency differently than other students does not facially discriminate based on national origin in Civil Rights action); *see, e.g.*, *Santiago-Lebron v. Florida Parole Com'm*, 767 F. Supp. 2d 1340, 1349 (S.D. Fla. 2011). Strikingly, rather than discriminating against Plaintiffs of the basis of immutable characteristics, by offering them English language training and a high school diploma, the School Board is opening up for them America's vast social, educational, and economic opportunities.

Therefore, Plaintiff's Title VI claim should be dismissed.

*COUNT III: Fourteenth Amendment (Equal Protection)*

Plaintiffs have not stated a claim under the Equal Protection Clause for the same reasons that they have not stated a claim under Title VI. They have not alleged facts of either direct or circumstantial discrimination based on national origin. At best, Plaintiffs have alleged facts that the School Board groups students into schools based on their age and academic achievement.

When suing an individual, section 1983 has two elements: First, a deprivation of a federal right. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Second, the right was deprived under color of state law. *Id.* When suing a municipal entity, such as a school board, the Supreme Court has fashioned a third element. A plaintiff must allege and prove that a policy or custom was the

moving force of the deprivation. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978).[26]

The first inquiry in any section 1983 suit is whether the plaintiff has been deprived of a right "secured by the Constitution and laws." *Baker v. McCollan*, 443 U.S. 137, 140 (1979). Here Plaintiffs are claiming of violation of the equal protection clause of the Fourteenth Amendment, which says in relevant part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny any person within its protection of the equal protection of the laws.

The Supreme Court has extended the protections against violations by a "State" to violations by local governments and their employees, saying; "Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies." *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 690 (1978).

For the reasons stated in the analyses above, Plaintiffs have failed to allege facts of national origin discrimination. Further, even assuming that they had alleged such facts, of discrimination, they have only alleged that some unnamed school official did the discriminating, and that is insufficient with respect to the claims against either Patton or the School Board.

Policy 5112.01's age out provisions are facially and do not implicate any protected classification.

Moreover, the School Board has explicitly articulated legitimate, nondiscriminatory reasons for adopiting its policy. The policy itself says: "In order to provide reasonable

---

[26] Ie., claims against governmental entities may not be brought under a theory of *respondeat superior*. *Id*.

consistency of maturity levels among students in the regular high school program, no person shall be permitted to attend the regular high school program after attaining the age of nineteen (19)." Plaintiffs have not alleged why this policy reason is pre-textual, nor have they even alleged generally that is pre-textual.

Therefore, Plaintiffs have not stated a policy or custom of discriminatory treatment against them based on national origin. Both the policy and the custom ascribed by the Plaintiffs to the School Board neutrally prevents persons unqualified by age and academic achievement from enrolling the regular high school program, but rather sends them to English language and adult education programs. This kind of ability grouping has been held in the Eleventh Circuit not to violate the Equal Protection Clause, *Holton*, 490 F.3d 1257, and provides these persons with a path to success.

Therefore, Plaintiffs' Equal Protection claim should be dismissed.

*COUNT IV: Fourteenth Amendment (Procedural Due Process)*

Again, "[t]he first step in [a § 1983] claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "[E]ducation is not a right protected by the Constitution." *Goss v. Lopez*, 419 U.S. 565, 586 (1975). Rather, "the right or entitlement" to education and the "dimensions" of that right are determined by State law. *Id.* The Due Process clause protects the grant of this property right by the state only in so far as the State has granted a property right. *Id.* As noted above, Plaintiffs had no right to attend regularly high school under Florida Law, as they were not qualified by age and academic achievement, Because Plaintiffs have not stated any recognize right at all. They cannot state a claim for a

violation of a non-existent right. Therefore, they cannot say that lack of procedural due process deprived them of a right.

Therefore, Plaintiffs' procedural due process claim should be dismissed.

*COUNT V: The Florida Educational Equity Act, Section 1005.05 et seq. (FEEA)*

For the reasons above, Plaintiffs' FEEA claim may likewise be dismissed, as the FEEA is construed under the same analysis as Title VI. *C.f.*, *Byrd v. Richardson–Greenshields Sec., Inc.*, 552 So.2d 1099, 1103 (Fla. 1989).

Additionally, with respect to the State law claims, Plaintiffs have failed to allege the pre-suit notice requirements of section 768.28(6)(a), Florida Statutes (2016). Section 768.28, Florida Statutes (2010), sets forth the state's waiver of sovereign immunity for suits against government entities. It provides, in pertinent part, that "[a]n action may not be instituted ... unless the claimant presents the claim in writing to the appropriate agency, and also ... presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues." § 768.28(6)(a). "This requirement is a condition precedent, § 768.28(6)(b); a claimant must perform it *in order to bring suit, and this compliance must be alleged in the complaint*." *Scullock v. Gee*, 161 So. 3d 421, 423 (Fla. 2d DCA 2014) (citing Fla. R. Civ. P. 1.120(c))(emphasis added).

Therefore, Plaintiffs' State law claim should be dismissed.

*Additional Reasons for Dismissal of Patton*

In addition to the foregoing, the claims against Defendant Patton should be dismissed several reasons.

First, there are no factual allegations meeting the pleading standards under any count against Patton.

Second, a School Superintendent as a matter of law, is not a recipient of federal funds. In *Shotz v. City of Plantation, Florida*, 344 F.3d 1161, 1170 (11th Cir. 2003), the Eleventh Circuit said that "the text of Title VI also precludes liability against those who do not receive federal funding, including individuals." The court said that given the contractual nature of the liability under Title VI, such liability was limited to recipients of federal funding and "those who are in a position to accept or reject" the federally imposed conditions attendant to receipt of the funds, "as part of the decision whether or not to 'receive' federal funds." *Id*. The court further said that "[t]o conclude otherwise, and license individual liability for violations of Title VI, would exceed the allowed scope of government enforcement action under the statute. That 'power may only be exercised against the funding recipient, and we have not extended damages liability ... outside the scope of this power.' " *Id*.; see also *Godby v. Montgomery Cnty. Bd. of Educ*., 996 F.Supp. 1390, 1413 (M.D.Ala.1998) ("only the local school district which actually receives the federal money may be held liable—not an employee of the entity."); *Karlen v. Westport Bd. of Educ*., 2010 WL 3925961, *10 (D.Conn. Sept. 30, 2010) ("Because the Board is the only defendant who receives federal funding, only the Board may be held liable for a Title VI violation."); *Barnett v. Baldwin Cty. Bd. of Educ.*, 60 F. Supp. 3d 1216, 1234–35 (S.D. Ala. 2014)(accord). The School Board is expressly given authority by statute over "non-state revenue sources," § 1001.43(2), whereas the superintendent is only given the power to "recommend" plans for cooperating with the federal government, § 1001.51(13)(a). Therefore, as a matter of law the superintendent cannot accept or reject federal funds.

Third, as to the section 1983 claim, she is entitled to qualified immunity to the extent that a claim is being made against her in her individual capacity.[27] Qualified immunity insulates a defendant from personal liability for actions taken in good faith pursuant to his discretionary authority. *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). It is not merely protection from liability, but protection from suit. *Ashcroft,* 129 S.Ct. at 1946. As such, qualified-immunity defenses must be adjudicated at the earliest opportunity. *Id.*; *Crawford*, 529 F.3d at 977-78.

> "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U. S. ___, ___; 132 S.Ct. 2088 (2012) (slip op., at 5). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ibid*. "When properly applied, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id*. citing *Ashcroft v. al-Kidd*, 563 U. S. ___, ___; 131 S.Ct. 204 (2011) (slip op., at 12) (internal quotation marks omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id*., at ___.

*Stanley Taylor, et al. v. Karen Barkes*, 135 S.Ct. 2042, 2044 (2015)(brackets and internal quotation marks omitted).

To receive qualified immunity, a defendant must first establish that she "acted within the scope of discretionary authority when the allegedly wrongful acts occurred." *Dalrymple v. Reno*, 334 F.3d 991, 995 (11th Cir. 2003). "Discretionary authority" includes "all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2)

---

[27] This argument is being made out of an abundance of caution, as an allegation in (Doc. 30, at ¶ 17) appears to say she is being sued in her official capacity on all counts. However, to the extent that she, in her official capacity, and the School Board are both being sued under section 1983, those claims are duplicative. In *Kentucky v. Graham*, 473 U.S. 159 (1985), "the Supreme Court held that a plaintiff need no longer bring official-capacity actions against local government officials since the local government could now be sued directly." *DeSisto Coll., Inc. v. Line*, 888 F.2d 755, 764 (11th Cir. 1989).

were within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (quotations and citations omitted).

Here there is no clearly established constitutional law that required Patton to violate School Board policies and admit to regular high school persons who have "aged out" and are not qualified by educational achievement.

Fourth, as to the State Law claim, the exclusive remedy for a person aggrieved by an officer or agent of the state, such as a school superintendent, is by an action against the entity. § 768.28(9)(a), Fla. Stat. (2016).

Therefore, the claims against Patton should be dismissed.

*Plaintiffs Lack Standing*

Additionally, Plaintiffs lack standing because they have "aged out" of the regular public school system. An order that the school must … conform to certain legal requirements will not redress the injuries alleged by these students." *Mumid v. Abraham Lincoln High Sch.*, 618 F.3d 789, 797 (8th Cir. 2010) citing *City of Los Angles* v. *Lyons*, 461 U.S. 95, 106 n.7. (1983). The party invoking federal jurisdiction bears the burden of establishing elements of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992). The general rules of Article III Standing require an injury in fact, causation, and redressability.

> a. Injury in fact: There must be an injury in fact and the injury or interest must be special; i.e., greater than that of the population as a whole,
>
> b. Causation: The injury must have been caused by the action or inaction of the defendant, and
>
> c. Redressability: The injury must be of a nature that it can be remedied through an action in Court.

*Lujan*, 504 U.S. 560-561.

Stated another way by the Eleventh Circuit:

> Constitutional requirements for standing are: (1) injury in fact, meaning injury that is concrete and particularized, and actual or imminent; (2) causal connection between injury and conduct; and (3) likelihood that injury will be redressed by favorable decision. Const. Art. 3, § 2, cl. 1.

*Alabama v. US Army Corps of Engineers*, 424 F.3d 1117 (11th Cir. 2005).

Even in the light most favorable to Plaintiffs, their alleged injuries arise from "aging out" and being academically unqualified for high school. The federal court cannot rewrite state laws providing for a different age and academic standards, and thus cannot redress Plaintiffs' claims. *Mumid v. Abraham Lincoln High Sch*., 618 F.3d 789, 797 (8th Cir. 2010) (saying, "[t]he students lack standing to seek this injunctive relief. None of the plaintiffs currently attends [high school] and none will ever return, because all have graduated high school or aged out of the public school system. An order that the school must close or conform to certain legal requirements will not redress the injuries alleged by these students.").

Therefore, as Plaintiffs lack standing their case should be dismissed.

*Conclusion:*

"The merits of a program which places students in classrooms with others perceived to have similar abilities are hotly debated by educators; nevertheless, it is educators, rather than courts, who are in a better position ultimately to resolve the question of whether the practice is, on the whole, more beneficial than detrimental to the students involved." *Holton v. City of Thomasville School Dist*., 425 F.3d. 1325, 1347 (11th Cir. 2005)(quoting *Castaneda v. Pickard*, 648 F.2d 989, 996 (5th Cir. 1981).

WHEREFORE, Defendants THE SCHOOL BOARD OF COLLIER COUNTY, FLORIDA and KAMELA PATTON, respectfully move this Court dismiss the Amended Complaint and all its claims against them with prejudice, and grant such other relief as is just and proper.

Respectfully submitted,

ROETZEL & ANDRESS, LPA

*/s/ James D. Fox*

JAMES D. FOX
Florida Bar No. 689289
850 Park Shore Drive
Trianon Centre - Third Floor
Naples, FL 34103
Telephone: (239) 649-2705
Facsimile: (239) 261-3659
jfox@ralaw.com
serve.jfox@ralaw.com

JON D. FISHBANE
Florida Bar #54909
District School Board of Collier
5775 Osceola Trail
Naples, FL 34109
Telephone: (239) 377-0499
Facsimile: (239) 377-0501
E-Mail: fishbj@collierschools.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of September 2016 this document was electronically filed with the Clerk of Court by using the CM/ECF system.

By: */s/ James D. Fox*
James D. Fox

10829961 _1 017748.0522