UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LESLY METHELUS, on behalf of Y.M., a
minor; ROSALBA ORTIZ, on behalf of G.O.,
a minor; ZOILA LORENZO, on behalf of
M.D., a minor; on behalf of themselves and all
other similarly situated,

        Plaintiffs,

vs.                                      CASE NO.  2:16-cv-00379-SPC-MRM

THE SCHOOL BOARD OF COLLIER
COUNTY, FLORIDA and KAMELA
PATTON, Superintendent of Collier County
Public Schools, in her official capacity,

        Defendants.
_____/

**RESPONSE TO
INTEREST OF THE UNITED STATES**

COMES NOW, The School Board of Collier County, Florida, and Kamela Patton, pursuant to the Order of this Court (Doc. 47), hereby file this Response to the Interest of the United States (Doc. 38)(hereinafter, the "Administration"), and say as follows:

The Administration invites this Court to bless executive overreach of federal authority. It offers inapposite case law and unwarranted executive branch deference, proposing that persons unqualified for high school by academic achievement and age should nevertheless be admitted solely because they are immigrants, a right not enjoyed by persons born in the U.S.A.

The Constitution guarantees states authority over educational attendance, curriculum, and graduations standards. The Executive branch cannot abrogate by a "guideline" or a "Dear Colleague Letter," the rights of the states. Nor can the Executive branch reinstate court

Exhibit A

repudiated discriminatory impact theories through transmogrified evidentiary standards. Since Plaintiffs are not academically qualified to attend high school, have aged out, or both under state law and local policy,[1] they have failed to state a claim and lack standing.

Therefore, this Court should ignore the Administration's "interest" in expanding control over state educational authority, exercise it Article III responsibilities, check executive branch arrogation of power, and dismiss this case with prejudice.[2]

1. <u>The EEOA: Administration Ignores the Traditional rights of States</u>

    a)    *Education is a Core Responsibility of the States*

Public education is a "core state responsibility." *Horne v. Flores*, 557 U.S. 433, 448 (2009). Further, "local autonomy of school districts is a vital national tradition, and [] a district court must strive to restore state and local authorities to the control of a school system operating in compliance with the Constitution." *Id*. The Administration seeks not to honor local control, but to usurp it.

The crux of the Administration's putative "interest" is to deny the Board "latitude" (or "liberty") to exclude from high school persons unqualified by age and educational achievement.[3] Encroachment by the federal governments on state and local authority are nothing new and were a source of considerable concern to the Founding Fathers in drafting the Constitution. Indeed, "it was a favorite object in the Convention' to provide for the security of the States against federal

---

[1] The Administration curiously cites to *New York by Schneiderman v. Utica City Sch. Dist.*, 2016 WL 1555399 (N.D.N.Y 2016), which reaches a different conclusion based on the law of New York and has therefore no applicability here. Similarly, it relies on *Issa v. School District of Lancaster, PA*, 2006 WL 4493202 (ED. Pa. 2006) which turns on Pennsylvania law.

[2] For clarity, Defendant has separately discussed the EEOA, and Title VI and the Fourteenth Amendment Equal Protection Clause. However, many of the arguments are applicable to all three. *See, e.g., Castenada v. Pickard*, 648 F.2d 989 (5th Cir. 1985)(noting the elements "are the same" for claim under all three).

[3] No principal the Statement of Interest is attacked more than the liberty of state officials.

2

encroachment and … the structure of the Federal Government itself served that end." *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 551 (1985) (quoting 2 Debates in the Several State Conventions on the Adoption of the Federal Constitution 438–39 (J. Elliot 2d. ed. 1836)).

> The States thus retain substantial sovereign authority under our constitutional system. As James Madison put it:
>
> The powers delegated by the proposed Constitution to the federal government are few and defined. Those which are to remain in the State governments are numerous and indefinite.... The powers reserved to the several States will extend to all the objects which, in the ordinary course of affairs, concern the lives, liberties, and properties of the people, and the internal order, improvement, and prosperity of the State.' The Federalist No. 45, pp. 292-293 (C. Rossiter ed. 1961).

*Gregory v. Ashcroft*, 501 U.S. 452, 457–58 (1991). Thus, protection against federal encroachment on state and local rights was enshrined by the Constitution, which protects the liberties of the people. *Id*. (saying, that "the 'constitutionally mandated balance of power' between the States and the Federal Government was adopted by the Framers to ensure the protection of 'our fundamental liberties.'"). In 1791, the 10th Amendment stated:

> The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

Public education was not mentioned as one of those federal powers. Rather the liberty to make educational decisions was left to the states and to the people.

> The Supreme Court has repeatedly instructed us: By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values.

*Am. Civil Liberties Union of Florida, Inc. v. Miami-Dade County Sch. Bd*., 557 F.3d 1177, 1226 (11th Cir. 2009). Among those liberties is the power of the people thorough their state legislatures and school boards to determine qualifications for advancement to high schools

3

Exhibit A

funded by state tax dollars. *Flores v. Huppenthal*, 789 F.3d 994, 1002 (9th Cir. 2015)(ruling that federalism concerns are "heightened" in matters effecting state or local budget priorities.).

The people of the State of Florida in their Constitution and education statutes have enacted academic qualifications for high school and delegated age out qualification to school boards. No compelling interest of the United States is served by forcing local schools to admit persons to high school who are unqualified by age and educational achievement.[4] Further, the Administration does not even attempt to explain why foreign-born persons should enjoy a right to admission to high school not enjoyed by persons born in the U.S.A.

      b)     *Congress has not Abrogated the States' Educational Qualifications*

Exercising its general welfare power, Congress has not abrogated Florida's authority to set educational qualifications. Nevertheless, the Administration attempts to impose by executive fiat what the American people through their elected representatives in Congress and in state legislatures have not done. The Administration simply cannot regulate whatever it wants in "areas of traditional state responsibility." *Bond*, 134 S. Ct. at 2089; see also, *Sheriff v. Gillie*, 136 S. Ct. 1594, 1602 (2016) (finding "no cause" for construing federal law "in a manner that interferes with States' arrangements for conducting their own governments") (internal quotations omitted). Rather, the power to regulate comes from Congress. When Congress intends to displace traditional spheres of state authority or preempt state law, it "must make its intention to do so 'unmistakably clear in the language of the statute.'" *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991) (upholding power of the states to determine judicial qualifications). "Without a 'clear and manifest' statement, this Court will not read a statute to preempt 'the historic police

---

[4]     See also, U.S. Dept. of Educ. http://www2.ed.gov/about/overview/fed/role.html last accessed 12/1/16 (Homepage) (saying, "Education is primarily a State and local responsibility in the United States.").

powers of the States,'" *Rice v. Santa Fe Elevator, Corp.*, 331 U.S. 218, 230 (1947). Further, when the federal Government seeks to "'radically readjust[ ] the balance of state and national authority, those charged with the duty of legislating [must be] reasonably explicit' " about it, *Bond v. United States*, 134 S. Ct. 2077, 2089 (2014) (quoting J. Frankfuter), and must do so "unequivocally [] in the text of the relevant statute." *Sossamon v. Texas*, 563 U.S. 277, 290–91 (2011).

Here the language of the NEAA does not even imply Congressional intent to set age and academic qualifications for high school,[5] let alone explicitly abrogate state authority. In nearly twenty pages advancing federal control, the Administration has pointed to no explicit and unequivocal language in the NEAA, nor even any legislative history, that eviscerates a state's authority over qualifications for high school. In areas such as education, courts may not "seek[ ] out conflicts between state and federal regulation where none clearly exists." *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 130 (1978).

c)  *The Rights of States in Education*

The wisdom of age and academic qualifications for high school as set by Florida and the Board seems self-evident.[6] But, even if they are not, or they could somehow be made wiser, the interests of federalism override the Administration's interest.

> This federalist structure of joint sovereigns preserves to the people numerous advantages. It assures a decentralized government that will be more sensitive to the diverse needs of a heterogenous society; it increases opportunity for citizen involvement in democratic processes; it allows for more innovation and experimentation in government; and it makes government more responsive by putting the States in competition for a mobile citizenry.

---

[5]  For a full discussion, see Motion to Dismiss Amended Complaint (Doc. 37).

[6]  For example, what good is likely to come from putting 19 year old boys in a classroom with 14 year old girls? Or, how would a person with less than an eighth grade education be academically ready for chemistry and pre-calculous classes?

*Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991); *Schuette v. Coalition to Defend Affirmative Action,* 134 S.Ct. 1623, 1630 (2014).

In conclusion, the Administrations' putative interest in state and local educational decisions is not as great as the Constitution's interest in the liberties of the people.

2. <u>The EEOA and *Casteneda* not Administration "Guidance" Govern this Case</u>

Lacking statutory language to support its "interest," the Administration claims that the Board is bound to follow its "guidance" requiring admission to high school of unqualified persons. This "guidance," however, conflicts with principles reiterated by the Supreme Court. Congress left "state and local authorities a substantial amount of latitude in choosing the program and techniques to meet their obligations." *U.S. v. Texas*, 601 F.3d 354, 365 (2010) (internal quotation and citations omitted); *Horne v. Flores*, 557 U.S. 433, 468 (2009).

Further, the Administrations' "guidance" requiring the Board to make up for the Plaintiffs' educational deficits also conflicts with *Castaneda v. Pickard*, 648 F.2d 989, 992 (5th Cir. 1981), upon which it relies so heavily. The Administrations says its guidance merely "summarizes" *Castanda*. But, the application of that "guidance" here imposes heavy burdens not found in *Castanda*. The Administration argues:

> To ensure that EL students can catch up in those core areas within a reasonable period of time, such districts must provide compensatory and supplemental services to remedy academic deficits that the student may have developed while focusing on English language acquisition.

(Doc. 38, p. 22.)

It is unclear how this "guidance" requires a school to admit persons to high school who are academically far behind Florida high school standards, or how it requires the Board to remediate educational deficits not caused by English language instruction.[7] Under the EEOA

---

[7] As noted by the Ninth Circuit, "the EEOA imposes no such requirement on the school districts; it requires only that a state "take appropriate action to overcome language barriers' without specifying particular actions that a

6

and *Castenada*, a school must only remedy deficits *caused* by focusing on English language instruction at the expense of other subjects. Plaintiffs came to the District with less than eighth grade educations. Their lack of educational preparation was not caused by the Board's instruction in English -- as they have yet to receive any such instruction. Neither the EEOA nor *Castenda* require the Board to foolishly attempt to remedy educational deficits by subjecting them to the rigors of a high school curriculum in other subjects for which they are wholly unprepared: nor is Board required to create separate high school remedial education program unrelated to deficits in English. "[T]he EEOA plainly does not give the federal courts the authority to judge whether a State or a school district is providing 'appropriate' instruction in other subjects." *Horne v. Flores*, 557 U.S. 433, 469 (2009).

Nevertheless, the Administration argues that this Court must give great deference to its it "guidance," pursuant to *Auer v. Robbins,* 519 U.S. 452 (1997). However, the Eleventh Circuit has applied *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944), respect, not *Auer* deference to executive branch opinion letters. *See, Arriaga v. Florida Pacific Farms, L.L.C.*, 305 F.3d 1228, 1238 (11th Cir. 2002).[8] In any event, *Auer* deference is only permitted when a law is ambiguous. *Christensen v. Harris County*, 529 U.S. 576, 588 (2000). As noted above, there no language in the Act requiring admittance to high school of those who have aged out or have less than an eighth grade education. "To defer to the agency's position would be to permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation. Because the regulation

---

State must take...." *Flores v. Huppenthal*, 789 F.3d 994, 1007 (9th Cir. 2015)(internal quotation and citations omitted).

[8]   The Supreme Court is currently reviewing *Auer's* applicability to opinion letters. *Gloucester County Sch. Bd. v. G.G. ex rel. Grimm*, 16-273, 2016 WL 4565643, at *1 (U.S. Oct. 28, 2016).

7

is not [ambiguous],… *Auer* deference is unwarranted." *Id*. [9] This Court should not allow the Administration to use a Dear Colleague Letter as a *de facto* regulation imposed on the states by unexamined fiat.[10]

This Court should reject the Administration's "guidance." Neither the NEAA nor *Castenada* require preferential in high school admission be given to persons (in this case unqualified by age and academic achievement) based on their national origin.

3.   Title VI and Equal Protection

State and local age and academic qualifications were not plausibly pled as discriminatory either facially or as applied against Plaintiffs. Strikingly, the Administration does not even attempt to argue that all of the Plaintiffs were academically qualified to attend high school. Nor did Plaintiffs challenge Florida's academic qualifications for high school. Rather, they attempt to focus the Court on the Board's age out policy. But, whether the age policy existed or not, Plaintiffs would still not be entitled to attend high school. Compulsory education under Florida law is only to age 16, and Plaintiffs are not academically qualified to attend high school.

Because Plaintiffs did not directly challenge Florida's statute regarding academic qualifications for high school, the Amended Compliant seemed to advance a disparate treatment

---

[9]   *Auer* also conflicts with procedural due process. Courts defer under *Chevron* to formal rules when Congress delegated authority and notice and opportunity were afforded, regarding rules that will "have the 'force and effect of law.'" *See United States v. Mead Corp.*, 533 U.S. 218, 229 – 34 (2001)); *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1203 (2015) (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 303 (1979)).

[10]  When Congress has not acted, executive fiat has become a chronic problem, on immigration, *see Texas v. United States*, 809 F.3d 134, 171-78 (5th Cir. 2015), aff'd by an equally divided Court, 135 S. Ct. 2271 (2016), and on a host of other issues. *See, e.g., United Steel v. Fed. Highway Admin.*, 151 F. Supp. 3d 76, 89 (D.D.C. 2015) (DOT waiver of "Buy America" rule); *Mendoza v. Perez*, 754 F.3d 1002, 1025 (D.C. Cir. 2014) (DOL wage and working conditions rule); *Sorenson Commc'ns Inc. v. FCC*, 755 F.3d 702, 707 (D.C. Cir. 2014) (FCC telecommunications reimbursement rule); *Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 95 (D.C. Cir. 2012) (EPA diesel engine rule); *EPIC v. DHS*, 653 F.3d 1, 8 (D.C. Cir. 2011)(TSA airport screening rule); *Renee v. Duncan*, 686 F.3d 1002, 1012 (9th Cir. 2012) (teacher qualifications not passed by Congress.); and, *Nevada v. United States Dep't of Labor*, 4:16-CV-00731, 2016 WL 6879615, at *9 (E.D. Tex. Nov. 22, 2016)(DOL non-exempt employee standards).

claim for which *McDonnell Douglas* provides a well-settled framework. Apparently recognizing that no factual basis was pled for disparate treatment under *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Administration urges the application of an alternative, *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Curiously, the Administration nevertheless acknowledges that *McDonnell-Douglas* is more appropriate for individual claims. Because Plaintiffs have not challenged Florida's academic perquisites for admission to High School, it is difficult to understand why *Arlington Heights* is the appropriate standard to apply to what appears to be a disparate treatment claim. The Administration also ignores the fact that no plaintiff has even pled that he or she was academically ready and qualified to attend high school. The age out policy is only relevant to persons academically qualified for high school.[11]

What the Administration really appears to be trying to do is reinstate court repudiated discriminatory impact claims. *See, Alexander v. Sandoval*, 532 U.S. 275, 292 (2001) (holding there are no discriminatory impact claims under Title VI, section 601). The Administration does this by asserting discriminatory impact, a non-dispositive factor with limited probative value under *Arlington-Heights*, be given far more weight in intentional discrimination cases than has heretofore been recognized by the courts.[12]

Under the *Arlington Heights,* "[o]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact." *Vill. of Arlington Heights v. Metro.*

---

[11] Moreover, the age out policy is the reason Plaintiffs lack of standing.

[12] The Administrations cites two impact cases for this proposition. *Elston v. Talladega Cty. Bd. of Educ.*, 997 F.2d 1394 (11th Cir. 1993) and *Burton v. City of Belle Glade*, 178 F.3d 1175 (11th Cir. 1999). Yet it ignores the clear import of the Supreme Court's requirement of discriminatory intent under section 601. *Sandoval*, 532 U.S. at 279-282.

*Hous. Dev. Corp.*, 429 U.S. at 266. The mere possibility[13] of some discriminatory impact is insufficient to state a plausible claim. Further, even if some significant discriminatory impact had been plausibly plead, that alone would be insufficient, as "[a] facially neutral state law will not be struck down as unconstitutional 'because it results in a racially disproportionate impact.... Proof of racially discriminatory intent or purpose is required.'" *I.L. v. Alabama*, 739 F.3d 1273, 1277 (11th Cir. 2014), *cert. denied sub nom. Lynch v. Alabama*, 135 S. Ct. 53 (2014) quoting *Hunter,* 471 U.S. at 227–28, 105 S.Ct. 1916 (internal quotation marks omitted). In any event, none of this overcomes Plaintiffs' lack of academic achievement.

Finally, if not most importantly, the Administration completely ignores Florida law. allowing participants in adult education programs to obtain a regular high school diploma, an approach that is far wiser than setting them up for failure in a regular high school program.[14]

4.   *Conclusion:*

Plaintiffs' have failed to state a claim and lack standing. Nevertheless, the Administration seeks to abrogate Florida's and the District's right to manage its educational system. Sadly, the Administration asserts that it know what is best for persons in the District's school system. However, the federal government has no legitimate interest in the admission to

---

[13] For example, alleging that the number of unaccompanied minors increased in the country years before the policy was passed, as a matter of logic, says nothing about what was happening in the intervening years before the Board's policy was passed. It also says nothing about whether the number of immigrants overall was going up or down, it says nothing about the immigration of young people overall, and it says nothing about what was happening in Collier County.  As a matter of logic, it is merely possible at best that immigration of 16-19 year olds was increasing in Collier County before the policy was passed, but that is not enough to nudge it into the plausible.

[14] Given the educational opportunities afforded to Plaintiffs by the Board under Florida law, the Administration's claim that this case is "similar" to *Plyer v. Doe*, 457 U.S. 202, 222 (1982), is inapposite. Its reliance on *Lau v. Nicholas*, 414 U.S. 563 (1974), is also misplaced. As reiterated in *Sandoval, Lau* has been overturned. Moreover, *Lau* does not even suggest that exclusion from an American high school due to failure to pass middle school abroad was evidence of intentional discrimination based on national origin.

Exhibit A

high school of persons unqualified by age and educational achievement because they are immigrants, when such rights are not enjoyed by persons born in the U.S.A.

WHEREFORE, this case may be dismissed with prejudice, and Defendant should be granted such other relief as is just and proper.

ROETZEL & ANDRESS, LPA
Attorneys for the Defendants

 /s/ *James D. Fox*
JAMES D. FOX
Florida Bar No. 689289
850 Park Shore Drive
Trianon Centre - Third Floor
Naples, FL 34103
Telephone:  (239) 649-2705
Facsimile:  (239) 261-3659
E-Mail:     jfox@ralaw.com
Secondary: serve.jfox@ralaw.com

JON D. FISHBANE
Florida Bar No. 54909
District School Board of Collier
5775 Osceola Trail
Naples, FL 34109
Telephone: (239) 377-0499
Facsimile: (239) 377-0501
E-Mail: fishbj@collierschools.com

Attorney for Defendants

### CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.

By:   /s/ *James D. Fox*
      James D. Fox

11026722 _1