# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FT. MYERS DIVISION

| | |
|---|---|
| LESLY METHELUS, on behalf of Y.M., a minor; ROSALBA ORTIZ, on behalf of G.O., a minor; ZOILA LORENZO, on behalf of M.D., a minor; MARIE ANGE JOSEPH, on behalf of K.V., a minor; EMILE ANTOINE, on behalf of N.A., a minor; LUCENIE HILAIRE DUROSIER, on behalf of T.J.H., a minor; on behalf of themselves and all others similarly situated, ) ) ) ) ) ) ) ) ) ) | |
| ) ) | Civil Case No. 2:16-cv-00379-SPC-MRM |
| Plaintiffs, ) ) | |
| v. ) ) | |
| THE SCHOOL BOARD OF COLLIER COUNTY, FLORIDA, and KAMELA PATTON, Superintendent of Collier County Public Schools, in her official capacity, ) ) ) ) ) | |
| Defendants. ) _____ ) | |

## PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO THE STATEMENT OF INTEREST OF THE UNITED STATES

Federal statutes and over four decades of caselaw mandate that Defendants provide equal access to educational opportunity to students not fluent in English. Defendants cast aside this obligation, urging that they may deny English Language Learner (ELL) students an education because control of educational policy is traditionally left to states and localities. Defendants' view of the law is at odds with the Equal Educational Opportunities Act of 1974 (EEOA) and Title VI of the Civil Rights Act of 1964 (Title VI) and federal court decisions interpreting those statutes—including controlling law in this circuit. Plaintiffs submit this

1

reply to Defendants' Response to the Statement of Interest of the United States (ECF Nos. 53, 58) to clarify legal standards under the EEOA and Title VI and to correct Defendants' misstatements of the facts in the Amended Complaint.

## **BACKGROUND**

Plaintiffs are parents and guardians of six foreign-born ELL students who, at ages 15, 16 and 17, attempted and were denied enrollment in Defendants' public schools. *See generally* Am. Compl. (ECF No. 30). Plaintiffs, on behalf of themselves and those similarly-situated, alleged that Defendants' policy and practice of barring recently-arrived, foreign-born ELL students from public schools violate the EEOA (20 U.S.C. § 1703); Title VI (42 U.S.C. §§ 2000d-2000d-7); the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the U.S. Constitution (U.S. Const. am. XIV § 1, 42 U.S.C. § 1983); and the Florida Educational Equity Act (Fla. Stat. § 1000.05). Defendants moved to dismiss the Amended Complaint (ECF No. 37). Plaintiffs filed a response to the Partial Motion to Dismiss (ECF No. 39).[1] The United States filed a Statement of Interest "to assist the Court in evaluating Plaintiffs' claims under the [EEOA]. . . and Title VI[.]" (ECF Nos. 38, 52). Defendants filed a response to the Statement of Interest (ECF Nos. 53, 58). With leave of the Court (ECF No. 57), Plaintiffs file this reply, addressing only the EEOA and Title VI claims.

---

[1] As noted in Plaintiffs' Response, Defendants styled their motion as a Motion to Dismiss, but sought only partial dismissal of the EEOA claim. *See* Pls.' Resp. to Defs.' Partial Mot. to Dismiss (ECF No 39) at 2 n.1, 10 n.12.

## ARGUMENT

**I.       The EEOA Does Not Permit the Exclusion of English Language Learners from Public School.**

This case involves wholesale exclusion of certain English Language Learners from public schools and charging them a fee to take English classes in an inferior and inadequate adult education program. This is not a case challenging a specific instructional model chosen by a district. Nor is it a case where students seek placement in a particular grade or type of classes. Plaintiff children allege that they were turned away at the schoolhouse door and barred from any access to public school, its curriculum, and the ability to earn credits toward a standard high school diploma. As the United States' Statement of Interest recognized, these facts support plausible causes of action under the EEOA and Title VI.

Defendants devote pages to a general discussion of the principles of federalism, but fail to acknowledge the basic language of the EEOA.[2] The EEOA requires a School Board "to take appropriate action to overcome language barriers that impede equal participation by its students in its instructional programs." 20 U.S.C. § 1703(f). The former Fifth Circuit held that "appropriate action" under § 1703(f) requires that a school Board's program: 1) be based on sound educational theory, 2) utilize programs and practices "reasonably calculated" to implement that theory effectively, and 3) produce results showing that language barriers are actually being overcome. *Castañeda v. Pickard*, 648 F.2d 989, 1009-10 (5th Cir. June 23, 1981). A violation of § 1703(f) does not require a showing of intentional discrimination. *Id.* at 1007-08.

---

[2] Defendants refer in their Response to the "NEAA," which Plaintiffs assume is meant to reference the EEOA.

Rather than confront the EEOA's statutory mandate and the *Castañeda* test, Defendants raise the specter of "federal encroachment on state and local rights." Defs.' Resp. to U.S. St. of Int. (ECF No. 58) at 3. This is a red herring. Defendants' view that they may exclude ELL students from a free public education through "academic qualification" and "age out" policies[3] would eviscerate the EEOA, a binding federal law. By passing the EEOA, Congress codified the "essential holding" of *Lau v. Nichols*, 414 U.S. 563 (1974) that school boards are "not free to ignore the need of limited English speaking children for language assistance to enable them to participate in the instructional program of the district [.]" *Castañeda*, 648 F.2d at 1008. School boards have a "substantial amount of latitude in choosing the programs and techniques they would use to meet their obligations under the EEOA," but they also must make a "genuine and good faith effort" to overcome students' language barriers. *Id.* at 1009.

As the United States noted in its Statement of Interest, *Lau* itself dealt with state standards that required, *inter alia*, a demonstration of English language proficiency for graduation. *Lau*, 414 U.S. at 566.[4] The Court recognized that imposing English language

---

[3] To the extent Defendants refer to Board Policy 5112.01—which prohibits students *17 or older* from attending high school *beyond* the year in which they turn 17 if they are not on track to graduate by age 19—such a policy was incorrectly applied to bar Plaintiff children from first time enrollment in public school at ages 15, 16, and 17. *See* Am. Compl. (ECF No. 30) ¶¶ 44, 66-97. Plaintiffs allege that Defendants pursued a broader policy, practice, and custom of excluding recently-arrived ELL students aged 15-17 from school. *Id.* ¶ 1; 4; 45.

[4] Defendants cursorily state that *"Lau has been overturned."* Defs.' Resp. to St. of Int. of the U.S. (ECF No. 58) at 10 n.14. This is misleading. To the extent that *Lau* held that a cause of action exists for disparate impact directly under Title VI, that aspect of the holding is no longer good law. However, a school district's failure to take steps to overcome language barriers as described in *Lau* is now codified as a violation of § 1703(f) of the EEOA. *Castañeda*, 648 F.2d at 1008. In addition, *Lau's* holding that discrimination based on

skills as a requirement "before a child can effectively participate in the educational program . . . is to make a mockery of public education." *Id.* If Defendants had unchecked authority to set age and academic qualification policies that resulted in the total exclusion of ELL students from the regular public school program, they could make an end-run around the EEOA.[5]

Defendants extend the meaning of "latitude" beyond any reasonable bounds. Nowhere does this latitude contemplate barring ELL students from the district's instructional program and warehousing them in dead-end Adult English for Speakers of Other Languages (ESOL) classes where they lack access to science, math, social studies, or any other core curricular classes. *Castañeda* and the other seminal EEOA cases all presuppose that the students were at least enrolled in and could access the district's regular instructional programs. In two recent district court cases where Plaintiffs alleged that ELL students were denied the ability to participate in regular high school programs, district courts sustained claims under the EEOA. *See N.Y. by Schneiderman v. Utica City Sch. Dist.*, 177 F. Supp. 3d 739, 743-45, 753 (N.D.N.Y. 2016) (practice of denying 17-20 year old ELL students ability to enroll in public school and sending them to "educational dead-ends" where they could not

---

language ability can constitute national origin discrimination remains good law. *See, e.g., T.R. v. Sch. Dist. of Philadelphia*, No. CV 15-4782, 2016 WL 6994973, at *11 (E.D. Pa. Nov. 30, 2016) (rejecting *Mumid v. Abraham Lincoln High School*, 618 F.3d 789 (8th Cir. 2010) and finding that "language based discrimination can constitute an actionable form of national origin discrimination."); *U.S. v. Maricopa County,* 915 F. Supp. 2d 1073, 1081 (D. Ariz. 2012) (same).

[5] Excluding children from public school also violates Florida's Constitution and statutes, which mandate a uniform system of free, public schools to educate to all children in Florida. *See* Fla. Const. art. IX, § 1(a); Fla. Stat. § 1000.01(4); Pls.' Resp. to Defs.' Partial Mot. to Dismiss (ECF No. 39) at 5-7.

earn standard high school diplomas stated plausible claim under EEOA and Title VI); *Issa v. Sch. Dist. of Lancaster,* No. CV 16-3881, 2016 WL 4493202, at \*6-\*7 (E.D. Pa. Aug. 26, 2016), *appeal docketed* Sept. 2, 2016 (granting preliminary injunction because ELL Plaintiffs were likely to succeed on § 1703(f) claim where they were sent to an alternative school program, which was not based on a sound educational theory and did not produce results showing that language barriers were being overcome).

The EEOA and *Castañeda* make clear that a school board must both permit ELL students to participate in the core instructional program of its schools and receive English language instruction.[6] The *Castañeda* court held that § 1703(f) imposes "not only an obligation to overcome the direct obstacle to learning which the language barrier itself poses, but also a duty to provide limited English speaking ability students with assistance in other areas of the curriculum where their equal participation may be impaired because of deficits incurred during participation in an agency's language remediation program." *Id.*, 648 F.2d at 1011. Defendants appear to argue that, based on this language, they are under no obligation to provide curricular instruction to Plaintiffs because they did not "cause" any educational deficits. Such a reading is a total distortion of *Castañeda* and the EEOA.

The *Castañeda* formulation assumes that school boards provide ELLs with instruction in subjects other than English—which Defendants here do not—and lays out general guidance about how districts can meet their obligation to overcome language barriers to

---

[6] Florida law contemplates this as well. *See* Fla. Stat. § 1003.56(3)(d) (requiring that school districts "[p]rovide limited English proficient students ESOL instruction in English **and** ESOL instruction or home language instruction in the basic subject areas of reading, mathematics, science, social studies, and computer literacy") (emphasis added); Fla. Admin. Code Ann. Rule 6A-6.0902(3)(b) ("ELLs shall be placed in the appropriate [ESOL] course **and** core subject area courses based on their assigned grade level") (emphasis added).

ensure equal participation by ELLs in instructional programs. Under *Castañeda*, school boards are "free to determine the sequence and manner in which limited English speaking students tackle this dual challenge [of learning English and the core academic curriculum] *so long as the schools design programs which are reasonably calculated to enable these students to attain parity of participation in the standard instructional program* within a reasonable length of time after they enter the school system." *Id.* (emphasis added). Central to this flexibility granted school districts is the assumption that they will provide ELL students access to the core curriculum *and* English language instruction. It strains credulity that a program excluding ELL students from free public school and providing them nothing other than a non-credit bearing Adult English class could be reasonably calculated "to attain parity of participation in the standard instructional program." *Id.*

The United States' Statement of Interest accurately describes the Defendants' obligations under *Castañeda*, and Plaintiffs have stated a plausible EEOA claim.

## II.   The United States Correctly Lays Out the Standard for Intentional Discrimination Under Title VI, and Plaintiffs Sufficiently Allege Facts Supporting a Title VI Claim.

Plaintiffs sufficiently pled a claim for intentional discrimination under Title VI, for the reasons explained fully in Plaintiffs' Response in Opposition to Defendants' Partial Motion to Dismiss. *See* ECF No. 39 at 14-20. Defendants' insistence on applying the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) summary judgment standard for Title VII employment discrimination claims is misplaced. This case is at the pleading stage and *McDonnell Douglas* is not the exclusive manner of proving discrimination even at the

summary judgment stage in a Title VII case. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328-29 (11th Cir. 2011).

Contrary to Defendants' characterization, the United States' Statement of Interest does not suggest that intentional discrimination can be proven through discriminatory impact alone. *See* Defs.' Resp. to U.S. St. of Interest (ECF No. 58) at 9. The United States accurately lists the factors that courts analyze to determine whether a facially neutral policy is motivated by discriminatory intent; including, *inter alia*: any outsized impact on a protected class, the historical background of the decision, the specific sequence of events leading up to the decision, and procedural and substantive departures from the norm. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-67 (1977). Plaintiffs have alleged such facts and more; including: the exclusion of several hundred 15-17 year old ELL students from public school, including 369 in the 2015-16 school year alone; the failure to keep any documentation of the denial of enrollment to these children; the failure to assess Plaintiff children's English language abilities and academic levels, in violation of Defendants' own ELL plan and based on a blanket, discriminatory assumption about these students' abilities; Defendants' agent's admission that adoption of a stricter age and academic credit policy was targeted at "new kids enrolling in our schools," and not those already enrolled; the adoption of the stricter policy after an increase in the numbers of unaccompanied immigrant children arriving in Collier County; and preferential treatment of non-ELL students who are deemed not on track to graduate or are not performing at grade level. *See* Pls.' Resp. to Defs.' Partial Mot. to Dismiss (ECF No. 39) at 15.

Defendants' gross misstatements of the facts in the Amended Complaint cannot escape mention, because they reflect the type of discriminatory assumptions that underlie the policies challenged in this lawsuit. Defendants claim that "Plaintiffs came to the District with less than eighth grade educations." Defs.' Resp. to U.S. St. of Int. (ECF No. 58) at 7. In fact, Plaintiff children include those who arrived: 1) at age 16 in the middle of the third year of high school in Haiti; 2) at age 15 in the middle of eighth grade in Haiti; 3) at age 17 after attending tenth grade in Georgia; and 4) at age 17 in the middle of ninth grade in Haiti, in addition to two who completed sixth grade in Guatemala. *See* Am. Compl. (ECF No. 30) ¶¶ 77; 66; 92; 85; 71; 74. Plaintiff children came with a wide range of formal educational experience, and none sought placement in a particular grade—they simply asked to be enrolled in public school.[7]

Defendants broadly assert that Plaintiff children were "wholly unprepared" for the "rigors of a high school curriculum." Defs.' Resp. to U.S. St. of Interest (ECF No. 58) at 7. As noted above, several Plaintiff children were already enrolled in high school in their countries of origin or in another U.S. state. More importantly, however, Plaintiff children were never assessed for academic achievement or English proficiency before being turned away from the schoolhouse door, contrary to Defendants' own ELL plan. *See* Am. Compl. (ECF No. 30) ¶¶ 34-38; 49. Individualized assessment is particularly critical when students have relocated from other countries where grade levels do not necessarily correspond to

---

[7] Defendants ask rhetorically, "what good is likely to come from putting 19 year old boys in a classroom with 14 year old girls?" Defs.' Resp. to U.S. St. of Int. (ECF No. 58) at 5 n.6. This is a curious framing, given that Plaintiffs were ages 15-17 when they sought enrollment. If Defendants were concerned about inappropriately mixing age levels, it is odd that they placed 15-17 year olds with adults as old as the students' parents or grandparents.

those in the United States.[8] Defendants' conclusion that Plaintiff children could not succeed in a high school setting—based on nothing more than their perceived lack of English fluency and their level of formal schooling abroad—was animated by discriminatory assumptions about these students' abilities. *See id.* ¶¶ 49; 136.

As the United States' Statement of Interest recognizes, Plaintiffs' factual allegations support a plausible claim under Title VI.

**<u>CONCLUSION</u>**

For the reasons outlined above, in the Statement of Interest of the United States (ECF Nos. 38, 52), and Plaintiffs' Response to Defendants' Partial Motion to Dismiss (ECF No. 39), Plaintiffs have sufficiently stated claims under the EEOA and Title VI.

Respectfully submitted,

SOUTHERN POVERTY LAW CENTER

By:     /s/ Michelle Lapointe
        Michelle R. Lapointe*
        GA Bar No. 007080
        1989 College Avenue NE
        Atlanta, GA 30317
        T: 404-521-6700
        F: 404-221-5857
        Michelle.Lapointe@splcenter.org
        *Admitted Pro Hac Vice*

        Jessica Zagier Wallace
        Fla. Bar. No. 956171
        4770 Biscayne Blvd., Ste. 760

---

[8] For this reason, Defendants' question of "how would a person with less than an eighth grade education be academically ready for chemistry and pre-calculous [sic] classes?" is inapposite—Defendants knew *nothing* of Plaintiff children's achievement or potential when they turned them away. *See* Defs.' Resp. to U.S. St. of Int. (ECF No. 58) at 5 n.6.

Miami, Florida  33137
T: 786-347-2056
F: 786-237-2949
Jessica.Wallace@splcenter.org

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on December 22, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide service to the following:

James D. Fox
Roetzel & Andress, LPA
850 Park Shore Drive
Trianon Centre – Third Floor
Naples, Florida  34103
T: 239.649.2705
F: 239.261.3659
jfox@ralaw.com
serv.jfox@ralaw.com

Jon Fishbane
District General Counsel
Collier County School District
5775 Osceola Trail
Naples, Florida  34109
T: 239.377.0499
F: 239.377.0501
fishbj@collierschools.com


 /s/ Michelle Lapointe