UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NEHEMY ANTOINE, and MARTA
ALONSO, as next friend on behalf of I.A.;
on behalf of themselves and all others
similarly situated,

      Plaintiffs,

v.                                                                   Case No:   2:16-cv-379-FtM-38MRM

THE SCHOOL BOARD OF COLLIER
COUNTY, FLORIDA and KAMELA
PATTON,

      Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

      Pending before the Court is Plaintiffs' Motion for Preliminary Injunction (Doc. 87) filed

on June 21, 2017; the Defendants' Response (Doc. 118 (redacted); Doc. 119 (unredacted and

sealed)) filed on August 3 and 4, 2017 respectively; the Plaintiffs' Reply (Doc. 123) filed on

August 10, 2017; and a Notice of Errata (Doc. 124) filed on August 15, 2017.  The Court

conducted a hearing on August 17, 2017, during which the parties presented oral argument.  (*See*

Docs. 126; Doc. 127 (redacted); Doc. 129 (unredacted and sealed)).

---

      [1]  Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents
or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned
that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to
other websites, this Court does not endorse, recommend, approve, or guarantee any third parties
or the services or products they provide on their websites.  Likewise, the Court has no
agreements with any of these third parties or their websites.  The Court accepts no responsibility
for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to
work or directs the user to some other site does not affect the opinion of the Court.

Plaintiffs Nehemy Antoine and Marta Alonso, as next friend on behalf of I.A., bring this action on behalf of themselves and others similarly situated against the School Board of Collier County, Florida and Kamela Patton (collectively "Defendants" or "School District"), alleging violations of the following:  (1) the Equal Educational Opportunities Act of 1974; (2) Title VI of the Civil Rights Act of 1964; (3) the Fourteenth Amendment Equal Protection Clause; (4) the Fourteenth Amendment Due Process Clause; and (5) the Florida Educational Equity Act.  (Doc. 76 at 38-52).[2]

Generally, Plaintiffs allege that they are English Language Learner ("ELL") immigrant children who recently arrived in the United States and reside in Collier County, Florida.  (Doc. 76 at 1).[3]  They claim that they were denied equal access to educational opportunities as a result of Defendants' custom, policy, or practice to exclude them from enrolling in the public school program.  (Id. at 2).  Plaintiffs also claim that when they attempted to enroll in the public school program, they were sent to English for Speakers of Other Languages ("Adult ESOL") classes. (Id. at 2).

---

[2]  On August 1, 2017, the following Plaintiffs entered into a Stipulated Dismissal of Claims:  Lesly Methelus, Rosalba Ortiz, Zoila Lorenzo, Marie Ange Joseph, and Waybert Nicolas.  (Doc. 110 at 1-2).  The presiding District Judge dismissed these Plaintiffs from this action on August 2, 2017.  (Doc. 113 at 2).  In addition, original Plaintiffs N.A. and T.J.H. filed an Unopposed Amended Motion to Substitute Parties (Doc. 109), requesting leave to proceed in their own names because they reached the age of majority.  The presiding District Judge granted the relief on August 2, 2017.  (Doc. 114 at 2).  On November 1, 2017, Plaintiff Techeler Junior Hilaire filed a Stipulated Dismissal of Claims (Doc. 132) and, on November 2, 2017, the Court entered an Order (Doc. 133) granting the relief and dismissing Techeler Junior Hilaire.  Thus, the remaining Plaintiffs are Nehemy Antoine (previously Emile Antoine, on behalf of N.A.) and Marta Alonso, as next friend on behalf of I.A.  (Doc. 114 at 2).

[3]  The brief summary of the allegations in this paragraph are provided for background purposes only.  They do not constitute findings of fact or conclusions of law by the Undersigned relating to the Motion for Preliminary Injunction.

For the reasons set out herein, the Court respectfully recommends that the Motion for Preliminary Injunction (Doc. 87) be **DENIED**.

## I.      Standing

As a threshold matter, the School Board asserts that Plaintiffs lack standing on the Equal Educational Opportunities Act ("EEOA"), 20 U.S.C. § 1703(f) claim because they have "aged out" of the regular public school system.  (Doc. 119 at 24-25).  Defendants claim that neither the Florida Constitution nor statewide law requires a student to be educated up to and including the age of 21.  (*Id.*).  Thus, Defendants assert that Plaintiffs have no property right to a traditional classroom education.  (*Id.* at 25).

In their Reply, Plaintiffs contend that they have standing to seek injunctive relief.  (Doc. 123 at 9-10).

The presiding District Judge, the Honorable Sheri Polster Chappell, addressed Defendants' arguments as to standing in the Order on the Motion to Dismiss.  *Methelus v. School Bd. of Collier Cty., Fla.*, 243 F. Supp. 3d 1266, 1283 (M.D. Fla. 2017).  Judge Chappell held that Plaintiffs had standing to pursue their claims.  *Id.*  Here, Defendants failed to argue that material facts surrounding the issue of standing have changed significantly since March 17, 2017, the date the Order was entered.  Thus, based on Judge Chappell's prior Order, the Court finds that Plaintiffs Nehemy Antoine and Marta Alonso, as next friend on behalf of I.A., have standing to proceed with the Motion for Preliminary Injunction.

## II.     Factual Findings[4]

The parties in this matter submitted hundreds of pages of exhibits to support their respective positions.  (Docs. 87-2 – 87-14 and Docs. 119-1 – 119-6).  From these submissions, the Court constructs the following material facts that are not in dispute, unless otherwise specified.

### A.     I.A.

I.A. arrived in Naples, Florida in approximately January 2017, prior to turning seventeen (17) years old.  (Doc. 87-2 at 3).[5]  She lives with her aunt, Marta Alonso.  (Id.).  I.A. is presently a citizen of Guatemala and her first language is Spanish.  (Id. at 2).  When she arrived in the United States she had finished the "tercero básico" grade in Guatemala.  (Id. at 3).

Upon arriving in Collier County, Marta Alonso attempted to enroll I.A. in a Collier County public high school.  (Id.).  The facts as to what occurred in the attempted enrollment process for public high school are in dispute.  (Compare Doc. 87-2 at 5 ("Nobody at the school district offered me any option about where I could attend school."), with Doc. 119-2 at 3, 6 (stating that the Collier County School District's protocol is for the parents and/or guardian to meet with the principal or assistant principal, determine the academic level of the child, determine the English language proficiency of the child, and in I.A.'s case place her in Adult ESOL to become English proficient and obtain a GED)).[6]

---

[4] As indicated below, disputed material facts abound in this case.  The Undersigned has endeavored here to focus on and to make findings based upon those material facts that are not in dispute.  These factual findings are made solely for the purpose of determining the Motion for Preliminary Injunction.

[5] The page numbers cited correspond to the CM/ECF page numbering system.

[6] The term "GED" refers to a General Education Diploma.  (See Doc. 87-5 at 9; Doc. 119-1 at 1).

After I.A. enrolled in the Lorenzo Walker Technical College, she was assigned to a Level 2 English class with other students who appeared to be around the ages of 16 to 19 years old. (Doc. 87-2 at 5-6; Doc. 119-1 at 3).  I.A. is in the process of learning English.  (*Id.* at 2).  I.A. progressed in her reading, but did not progress in listening comprehension.  (*See* Doc. 119-1 at 3).  All of the students in I.A.'s class were from countries other than United States.  (*Id.*).  I.A. states that there are not many activities for her at Lorenzo Walker, and she especially misses a girls' soccer team or a girls' track team.  (*Id.* at 8).  I.A. is not provided a free lunch or free transportation to school.  (*Id.* at 8-9).

As with the facts surrounding her enrollment in school, the facts concerning I.A.'s present educational program are also in dispute.  (*Compare* Doc. 87-2 at 6-7 ("[M]y class is mostly just English.  . . .  I'm not learning any academic subjects at Lorenzo Walker.  Sometimes we talk about adding, subtracting, multiplication, division, and fractions in English" but "I am not learning any new math at Lorenzo Walker.  . . .  The teacher sometimes talks about weather, using the English words for spring, summer, fall and winter, but I am not learning anything in-depth about science.  The only thing I am being taught is English."), *with* Doc. 119-1 at 2, 6 ("Within the English language immersion program students are introduced to multiple academic topics including Math, Science, Language Arts, Social Studies, and Civics.  . . .  As noted previously, as a student advances, more content area topics are introduced, including math, to enable the student to understand ever more clearly the technical vocabularies of those subject areas.")).  It is undisputed that I.A. will not receive high school credit for the classes at Lorenzo Walker.  (Doc. 87-2 at 9).

### B.     Nehemy Antoine

Nehemy Antoine arrived in Naples, Florida around February 2016 when he was 17 years old and, as of June 1, 2017, Nehemy Antoine is now eighteen (18) years old.  (Doc. 87-3 at 2-3). He was born in Haiti with his first language being Haitian Creole, his second language being French, and he is learning Spanish and English.  (*Id.* at 2).  Before coming to the United States, Nehemy was enrolled in the "9<sup>em</sup>" in Haiti.  (*Id.* at 3).

Nehemy and his father, Emile Antoine attempted to enroll Nehemy in Collier County public high school.  (*Id.*).  The facts surrounding this enrollment process are in dispute. (*Compare* Doc. 87-3 at 4 (stating that at Golden Gate High School a staff person gave Nehemy a piece of paper that indicated that he was not eligible to pursue a traditional high school diploma in Collier County Public Schools, including those programs offered through Alternative Programs), *with* Doc. 119-2 at 3 and Doc. 119-3 at 2 ("The claim made by [Nehemy Antoine] that he was informed by a lady in the office of GGHS he could not enroll is simply incorrect.")).

Nehemy went to Lorenzo Walker Technical College and his father enrolled him in classes.  (Doc. 87-3 at 5).  All of the students in his class were from countries other than the United States.  (*Id.*).  Over the past year, Nehemy progressed in English proficiency.  (*See* Doc. 119-1 at 6).  Defendants indicated that they are taking action to enable him to undertake the GED program.  (*See id.* at 6-7).  Nehemy states that he began in an English class and progressed to taking GED practice tests.  (Doc. 87-3 at 5-6).  As with the facts surrounding enrolling in school, the facts concerning Nehemy's education program are also in dispute.  (*Compare* Doc. 87-3 at 7 ("At Lorenzo Walker, we don't have real classes for math, science, social studies or computer science.  At the beginning, there was absolutely nothing – no math at all."), *with* Doc. 119-1 at 2, 6 ("Within the English language immersion program students are introduced to multiple

academic topics including Math, Science, Language Arts, Social Studies, and Civics  . . .  As noted previously, as a student advances, more content area topics are introduced, including math, to enable the student to understand ever more clearly the technical vocabularies of those subject areas.")).  Nehemy does not earn credits towards a high school diploma.  (Doc. 87-3 at 7).  He does not receive a free lunch or free transportation to and from Lorenzo Walker.  (*Id.*).  In addition to his classes at Lorenzo Walker, Nehemy is also enrolled in the Florida Virtual School and takes an Algebra II class, a language class, and geometry class on line.  (*Id.* at 8).

## III.    Preliminary Injunction

### A.    Plaintiffs' Request for Mandatory Preliminary Injunctive Relief Is Subject to a Heightened Burden.

As an initial matter, the Court observes that the injunctive relief Plaintiffs request is not typical.  Typically, a preliminary injunction seeks to maintain the status quo pending a resolution of the case on the merits.  *Haddad v. Arnold*, 784 F. Supp. 2d 1284, 1295 (M.D. Fla. 2010).  In this case, however, Plaintiffs do not seek to maintain the status quo pending a resolution on the merits.  Instead, they seek to force the School District to implement an educational program for the student Plaintiffs that is different from the existing program.  (Doc. 87 at 1).

"When a preliminary injunction is sought to force another party to act, rather than simply to maintain the status quo, it becomes a 'mandatory or affirmative injunction' and the burden on the moving party increases."  *Haddad*, 784 F. Supp. 2d at 1295 (citing *Exhibitors Poster Exch., Inc. v. National Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971)).  A mandatory preliminary injunction is disfavored and should not be granted "except in rare instances in which the facts and law are clearly in favor of the moving party."  *Id.* (internal citations and quotations omitted); *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976); *see also Cable Holdings of Battlefield, Inc. v. Cooke*, 764 F.2d 1466, 1474 (11th Cir. 1985); *Phillips v. Epic Aviation, LLC*,

No. 2:13-CV-410-FTM-29, 2014 WL 1092458, at *2 (M.D. Fla. Mar. 19, 2014).  Thus, a party seeking mandatory relief bears "a heightened burden of demonstrating entitlement to preliminary injunctive relief."  *Haddad*, 784 F. Supp. 2d at 1296 (citations omitted).

Here, the nature of the injunctive relief sought is a mandatory injunction because Plaintiffs seek to force Defendants to act rather than to maintain the status quo.  Specifically, Plaintiffs request a preliminary injunction directing the School District:  (1) to enroll Plaintiffs and permit them to attend regular public school beginning on August 16, 2017; (2) to assess Plaintiffs' language proficiency and allow them to access the benefits of Defendants' ELL Plan; (3) to provide services to compensate for the educational opportunities denied to Plaintiffs; and (4) to cease excluding recently arrived, foreign-born ELLs aged fifteen and older from public school.  (Doc. 87 at 2).  Plainly, Plaintiffs do not seek to maintain the status quo—that is, Plaintiffs do not wish to remain in the program or programs designated by Defendants.  Rather, Plaintiffs request that the Court force the School District to enroll them and others in public high school, afford them testing, *and provide services to compensate them for educational opportunities they were denied*.  (*Id.*).  Because Plaintiffs seek a mandatory or affirmative preliminary injunction, their Motion faces a heightened burden.  *See Haddad*, 784 F. Supp. 2d at 1295.

Before the Court may issue a mandatory preliminary injunction, Plaintiffs here have a *heightened* burden to demonstrate that:  "(1) [there is] a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest."  *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citing *McDonald's Corp. v. Robertson*,

147 F.3d 1301, 1306 (11th Cir. 1998) and *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989)).  In the Eleventh Circuit, "[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites."  *Id.* (internal quotations omitted) (citing *McDonald's Corp.*, 147 F.3d at 1306).  It warrants emphasis that the burden associated with a mandatory or affirmative injunction is further heightened.  *Haddad*, 784 F. Supp. 2d at 1295-96.  In this case, Plaintiffs move for a mandatory preliminary injunction on two claims:  (1) Count I brought under the EEOA, 20 U.S.C. § 1703(f); and (2) Count V brought under the Florida Educational Equity Act ("FEEA"), Fla. Stat. § 1000.05(2).  (Doc. 87 at 1-2).

    **B.**    **Without an Evidentiary Hearing, the Court's Consideration Is Limited to Undisputed Material Facts.**

In addition to the heightened burden that applies to Plaintiffs' request for a mandatory preliminary injunction, the nature of the hearing held on August 17, 2017 impacts the Court's consideration of the underlying record.

By way of background, Judge Chappell originally entered a notice dated July 12, 2017, which scheduled a hearing on the Motion for Preliminary Injunction to occur on August 11, 2017.  (Doc. 95).  By operation of M.D. Fla. R. 4.06, the hearing was limited to oral argument only.  M.D. Fla. R. 4.06(b).[7]  On July 19, 2017, Judge Chappell referred the Motion for

---

[7]  The Notice (Doc. 95) states in relevant part, "NOTICE of hearing on motion re 87 MOTION for Preliminary injunction.  Motion for Preliminary Injunction Hearing set for 8/11/2017 at 09:30 AM."  Local Rule 4.06(b) provides in part:  "All hearings scheduled on applications for a preliminary injunction will be limited in the usual course to argument of counsel unless the Court grants express leave to the contrary in advance of the hearing pursuant to Rule 43(e). Fed. R. Civ. P."  M.D. Fla. R. 4.06.  The Notice did not affirmatively set the Motion for Preliminary Injunction for an evidentiary hearing and, consequently, the parties would have been limited to oral argument only.

Preliminary Injunction to the Undersigned for issuance of a report and recommendation and cancelled the August 11 hearing date. (Doc. 104).

The Undersigned subsequently entered an Order (Doc. 105) that, *inter alia*, reset the hearing on the Motion for Preliminary Injunction to August 17, 2017, and expressly limited the hearing to argument of counsel "because neither party has sought leave to the contrary pursuant to Fed. R. Civ. P. 43." (Doc. 105 at 2). Thereafter, a Notice (Doc. 106) was filed on July 20, 2017, resetting the hearing to August 17, 2017. On that date, the hearing proceeded on oral argument of counsel only. (Doc. 127). At the outset of the hearing, counsel confirmed on the record that none of the parties requested or demanded an evidentiary hearing. (Doc. 127 at 5).[8]

Of course, Fed. R. Civ. P. 65 does not require that an evidentiary hearing be held on every motion for a preliminary injunction. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1311 (11th Cir. 1998). However, "'[w]here the injunction turns on the resolution of bitterly disputed facts, . . . an evidentiary hearing is normally required to decide credibility issues.'" *Id.* at 1311-12 (quoting *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1538 (11th Cir. 1989)). Further, when the parties submit affidavits containing conflicting facts that place "in serious dispute issues central" to the movants' claims, then an evidentiary hearing must be held. *Id.* at 1312. Conversely, "where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing." *Id.* at 1313; *Bruce v. Reese*, 431 F. App'x 805, 806 (11th Cir.

---

[8] At the hearing, the Undersigned stated, "I just want to clarify for purposes of the record that, at this time, no party is maintaining a request or demand for an evidentiary hearing on this matter before the Court receives it for consideration." (Doc. 127 at 5). Plaintiffs' counsel responded, "That is correct from the Plaintiffs' perspective. We are not requesting an evidentiary hearing." (*Id.*). Counsel for the Defendants responded, "[T]he defense will not be requesting an evidentiary hearing." (*Id.*).

2011).  Between these two extremes are cases where "there is little dispute as to raw facts but much as to the inferences to be drawn from them."  *Id.* (internal citations and quotations omitted).  In this last category of cases, the decision whether to hold an evidentiary hearing is held to the sound discretion of the district court.  *Bruce*, 431 F. App'x at 806.  Additionally, whether the parties request a hearing is "of no moment," especially when the case is complex and the critical issues are in dispute.  *All Care Nursing Serv., Inc.*, 887 F.2d at 1539.

Here, the Court afforded counsel multiple opportunities to request an evidentiary hearing – initially in the Order (Doc. 105) setting the hearing and again at the outset of the hearing itself. The parties did not do so.  Yet, as it turns out, bitterly disputed material facts and issues central to Plaintiffs' claims abound.  Under these circumstances, the Court is limited to consideration of the undisputed material facts, and the Court cannot weigh credibility issues or resolve bitterly disputed facts without resorting to an evidentiary hearing.

After exhaustive consideration of the evidence and arguments presented by counsel, the Court finds that the only element of mandatory preliminary injunctive relief that the Court can consider and resolve without the necessity of reconvening an evidentiary hearing to resolve bitterly disputed material facts is the second element – *i.e.*, whether Plaintiffs are and will be irreparably harmed or injured if the injunction does not issue.[9]  Because Plaintiffs must establish

---

[9]  For example, disputed material facts abound as to the first element of preliminary injunctive relief – *i.e.*, substantial likelihood of success on the merits.  Judge Chappell previously set forth in detail the legal standard under the EEOA that Plaintiffs must establish to prevail on the merits in this case.  *Methelus v. Sch. Bd. of Collier Cty., Fla.*, 243 F. Supp. 3d 1266, 1275-76 (M.D. Fla. 2017) (Doc. 62 at 12-15).  As Judge Chappell explained, Plaintiffs must demonstrate as part of their EEOA claim that, *inter alia*, the School Board's educational theory and principles are not sound.  *Id.* at 1276 (citing *Castaneda v. Pickard*, 648 F.2d 989, 1009 (5th Cir. 1981)). Plaintiffs' proffered expert, Mary Rebecca Burns, Ph.D., opined in her Declaration that the present practice of placing Plaintiffs in an Adult Education Program versus regular high school is not an educationally sound practice for a variety of reasons.  (*See* Doc. 87-5 at 4-21). Conversely, Defendants' proffered expert, Edith Arpaia, opined that an Adult ESOL intensive

all four elements, their failure to meet the burden of persuasion as to any one element is fatal.

*Siegel*, 234 F.3d at 1176.  Thus, the Court's analysis begins and ends with consideration of whether Plaintiffs have met their heightened burden to show that irreparable injury will occur unless the mandatory preliminary injunction is issued.  For the reasons set forth in more detail below, the Court finds that Plaintiffs have not met their heightened burden as to that element.

### C.   Plaintiffs Have Not Met Their Heightened Burden to Show Irreparable Injury.

"A showing of irreparable injury is the *sine qua non* of injunctive relief."  *Siegel*, 234 F.3d at 1176 (quotations omitted) (collecting cases).  Even if Plaintiffs here could establish the other elements of mandatory preliminary injunctive relief, including a substantial likelihood of success on the merits, "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper."  *Id.* (collecting cases).  The Eleventh Circuit has emphasized on many occasions that the asserted irreparable injury "'must be neither remote nor speculative, but actual and imminent.'"  *Id.* (quoting *Northeast Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990)).  To demonstrate irreparable injury, a party must establish that the injury cannot be undone through monetary remedies.  *Siegel*, 234 F.3d at 1191 n.4 (citing *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987)).

---

English language immersion program followed by a GED program is an appropriate alternative academically and methodologically to a traditional high school diploma.  (Doc. 119-4 at 5).  Thus, the opinions of the parties' proffered experts are fundamentally and diametrically opposed as to these material facts relating to the soundness of the School Board's educational theory and principles.  The Court need not resolve these or other bitterly disputed facts, however, because there are sufficient undisputed material facts to conclude that Plaintiffs fail the second element of mandatory preliminary injunctive relief – *i.e.*, irreparable injury unless the injunction is issued.

Plaintiffs contend that with the new school year beginning on August 16, 2017, Defendants' refusal to allow the student Plaintiffs to enroll in public school causes irreparable harm.  (Doc. 87 at 22).  Plaintiffs claim that student Plaintiffs' "loss of opportunity to attend public school with their peers, earn credits toward a high school diploma, and benefit from the ELL Plan available in public school, is irreparable."  (*Id.* at 23; Doc. 127 at 57-58).  Further, at the hearing, Plaintiffs' counsel argued that the "denial of education is unquestionably an irreparable harm under [Eleventh] Circuit precedent."  (Doc. 127 at 57).  Counsel argued that student Plaintiffs are getting older and their chance to attend public school and earn credits towards a high school diploma are diminishing.  (*Id.*).  Nehemy Antoine states, "[w]ith each day that passes, the difference between the high school students and me gets larger. . . .  At this point, I have missed over a year of school.  This has delayed my life, my career and my future.  I am working so hard, and I just need access to a real school to give me the chance to achieve my dreams."  (Doc. 87-3 at 8).

On the other hand, Defendants argue that the student Plaintiffs have actually benefited from the advantages of their ELCATE program and suffered no irreparable injury.  (Doc. 119 at 27).[10]  Defendants claim that it would be unwise to move student Plaintiffs because they are progressing towards college or a career.  (*Id.*).  Defendants go further and claim that by placing student Plaintiffs in a grade level or classroom to which they are not prepared or do not have the

---

[10]  Defendants' expert, Yolanda Flores, explained in her Affidavit that she "developed a program called the ELCATE ('English Literacy for Career and Technical Education') Academy ('the Academy').  Defendants implemented the Academy in early 2016 through Adult ESOL at the LWIT and iTech campuses respectively."  (Doc. 119-1 at 2).  The Academy targets students aged 16 to 21 years old who enroll in the Adult ESOL program and provides "English language and literacy immersion" and "[w]ithin the English language immersion program students are introduced to multiple academic topics including Math, Science, Language Arts, Social Studies, and Civics."  (*Id.*).

appropriate prerequisites would actually set them up for failure and cause unnecessary injury.

(Doc. 119 at 28; Doc. 127 at 107-108).

> **1.     The Alleged Injury Is Both Remote and Speculative, Not Actual and Imminent.**

It is undisputed that the student Plaintiffs here were not permitted to enroll in public high schools in Collier County, but were enrolled in Adult ESOL programs.  (Doc. 87-2 at 5; Doc. 87-3 at 4-5).  These programs include English language classes and eventually GED classes that provide the student Plaintiffs the opportunity to obtain GEDs.  (Doc. 87-3 at 5; Doc. 119-1 at 2-3).  Although the parties dispute certain facts concerning the contours of the Adult ESOL programs, it is undisputed that the classes, activities, and interactions with other students in the Adult ESOL programs differ from the classes, activities, and interactions with other students enrolled in public high schools in Collier County.  (Doc. 87-2 at 6-8; Doc. 87-3 at 5-7; Doc. 119-1 at 2-4).  Further, it is undisputed that students in Collier County's public high schools have the opportunity to earn a high school diploma, whereas students in the Adult ESOL program have the opportunity to earn a GED, not a high school diploma.  (Doc. 87-2 at 9; Doc. 87-3 at 7; Doc. 87-5 at 10; Doc. 119-1 at 4-5).  Finally, it is undisputed that Plaintiffs' ultimate goals after obtaining a diploma are to continue their education or find a career.  (Doc. 87-2 at 9; Doc. 87-3 at 8).

Against this backdrop of undisputed facts, the Undersigned finds that Plaintiffs fail to demonstrate an actual injury, especially in view of the heightened burden of persuasion required for a mandatory preliminary injunction—an extraordinary and disfavored remedy.  Plaintiffs' main argument is that the student Plaintiffs are getting older and will not be able to obtain a regular high school diploma if not allowed to enroll immediately in Collier County public high schools.  (Doc. 127 at 57).  The student Plaintiffs claim that they need a high school diploma to

reach their goals *for the future*.  (*See e.g.*, Doc. 87-3 at 8).  However, these arguments only point to perceived injuries – *i.e.*, limiting effects on future educational and employment possibilities – that are both remote and speculative, not actual and imminent.

In this case, all of the student Plaintiffs are presently enrolled in intensive English classes with the goal of becoming proficient in English to the point that they are able to progress to GED classes and ultimately obtain a GED.  In fact, both Plaintiffs have progressed in the intensive English program.  (Doc. 119-1 at 3, 6).  To the extent the student Plaintiffs may have ambitions beyond obtaining a GED, it is undisputed that a GED enables them to attend colleges, universities, or technical colleges, and to pursue other career pathways that lead to employment. (Doc. 119-1 at 5; Doc. 87-5 at 10).  Indeed, Plaintiff's own expert, Mary Rebecca Burns, Ph.D., cites to a study that indicates that a GED "is widely accepted as a satisfactory prerequisite for college admission."  (Doc. 87-5 at 10; Doc. 119-1 at 5).[11]  Moreover, Plaintiffs fail  to articulate any specific harm to the actual named Plaintiffs here.  Dr. Burns states generally, that "Adult Education . . . cannot be considered a viable option under any framework purporting to educate ELLs like the Plaintiffs in this case."  (Doc. 87-5 at 8).  Dr. Burns appears to have interviewed unspecified Plaintiffs here to learn of the differences between a regular public high school

---

[11]  To be fair, according to Dr. Burns, this study also indicates that there is evidence that a "the GED is associated with significantly worse labor market outcomes compared to high school diplomas . . . [and] relatively few GED recipients enroll in and graduate from 4-year colleges." (Doc. 87-5 at 10; Doc. 119-1 at 5).  These facts are contested by the School District's expert, Yolanda Flores, who opines that the GED program is designed to be equivalent to regular high school academic standards and many students with GEDs have gone on to colleges, universities, technical colleges, or pursued employment.  (Doc. 119-1 at 5-6).  Further, the School Board's expert, Edith Arpaia stated that traditional high school programs are aligned with the GED and Adult ESOL Career programs.  (Doc. 119-4 at 3).  But the bottom line is that the type of injury Plaintiffs point to here is both remote and speculative in that as it relates to the student Plaintiffs' ability to pursue higher education and employment in the future after obtaining a GED through their existing educational program.

program and the program student Plaintiffs attend, but she never articulates the actual and imminent injuries that I.A. or Nehemy Antoine suffer.  (*See id.* at 10 ("Plaintiffs describe how, after they were denied high school enrollment, they were either referred to or, on their own, found the Adult ESOL Programs where they enrolled.  Plaintiffs were never afforded an opportunity to attend an "Adult High School"); *id.* at 17 (noting Plaintiffs were "not assigned any homework or given textbooks to take home and study"); *id.* at 18 (noting that Plaintiffs received GED instruction on computers with "no teacher facilitation of social or academic conversations among students"); *id.* at 19 (noting Plaintiffs "never used labs, sports fields, libraries, art studios, etc., in connection with their Adult Education experience")).  It is undisputed that the regular high school program differs from the Adult ESOL, but Plaintiffs failed to articulate how these differences constitute actual injury to either I.A. or Nehemy Antoine under the circumstances. There is no evidence here that the student Plaintiffs:  (1) are not on track to succeed in the Adult ESOL program; (2) will not succeed in obtaining a GED; and (3) with a GED in hand, will not or cannot be admitted to or succeed in college, technical school, a career, or other employment, depending on the specific path Plaintiffs choose.

At base, it is undisputed that the Adult ESOL program at issue provides a pathway for the student Plaintiffs to attain their future goals of pursuing higher education at a college, university, or technical school, or to enter the labor market.  Plaintiffs fail to show – subject to their heightened burden of persuasion – how they or others similarly situated will face actual and imminent injury unless the mandatory preliminary injunction issues.

The principal cases Plaintiffs cite in their Motion on the issue of irreparable injury are distinguishable and unpersuasive.  (*See* Doc. 87 at 22-24).  For example, several of the cases Plaintiffs rely upon are facially distinguishable because the injury at issue in those cases was the

denial or effective denial of any public educational opportunity by the challenged practices or statutes. *See, e.g.*, *Plyler v. Doe*, 457 U.S. 202, 206 (1982) ("The action complained of the exclusion of plaintiff children from the public schools of the [school district]."); *Certain Named and Unnamed Non-Citizen Children and Their Parents v. Texas*, 448 U.S. 1327, 1332-33 (1980) ("Undocumented alien children have not been able to attend Texas public schools since the challenged statue was enacted in 1975."); *Hispanic Interest Coal. of Ala. v. Governor of Ala.*, 691 F.3d 1236, 1247 (11th Cir. 2012) (finding that the challenged state statute "will understandably deter [undocumented children] from enrolling in and attending school because, as unlawfully present aliens, 'these children are subject to deportation,' and removal proceedings can be instituted upon the federal government being informed of their undocumented status"). The student Plaintiffs in the instant case are afforded a public education through the Adult ESOL programs and the opportunity to obtain a GED.

Along those lines, the Eleventh Circuit expressly acknowledged in *Hispanic Interest Coal. of Ala. v. Governor of Ala.* that a challenged statute or practice need not purport to deny education to any child. 691 F.3d at 1245. Instead, courts have a duty to analyze whether the challenged statute or practice operates in such a way that it "significantly interferes" with the exercise of a right to education. *Id.* (quoting *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978)). Plaintiffs here have not met their heightened burden to show that the School Board's practices significantly interfere with any right to education. The undisputed facts remain that Plaintiffs are receiving intensive English-language instruction, that they have the ability to pursue and to obtain a GED, and that a GED empowers them to pursue their future goals.

Moreover, Plaintiffs' reliance on *Ray v. School Dist. of DeSoto Cty.*, 666 F. Supp. 1524 (M.D. Fla. 1987) is also unavailing. In *Ray*, the plaintiffs sought a preliminary injunction to

prevent the school district from segregating and excluding hemophiliac, HIV-positive children from a normal and regular classroom setting. *Id.* at 1528. In granting the preliminary injunction, United States District Judge Elizabeth A. Kovachevich of this Court concluded that "the deprivation being caused to the Ray boys, by excluding them *unnecessarily* from a normal, integrated classroom setting, constitutes irreparable injury to their mental well-being and educational potential." *Id.* at 1535 (emphasis added). The present case is distinguishable because it is undisputed that the student Plaintiffs require intensive English-language instruction. Plaintiffs have not shown, as was the case in *Ray*, that their placement in the Adult ESOL program to receive the English-language instruction they need excludes them *unnecessarily* from a normal, integrated classroom setting or that it causes injury to their mental well-being and educational potential. Thus, *Ray* does not support a finding of actual injury in this case.

Plaintiffs also rely heavily on *Issa v. School Dist. of Lancaster*, 847 F.3d 121 (3d Cir. 2017), which is not controlling for this Court's purposes. In *Issa*, the plaintiffs were school-age refugees over the age of seventeen (17) who faced language barriers. *Id.* at 125. The plaintiffs sought a preliminary injunction compelling the school district to allow them to transfer out of an accelerated high school program to a different high school program that was slower-paced and designed principally to teach language skills to English language learners. *See id.* at 125-128. The plaintiffs complained that they could not understand what was being taught in the content classes of the accelerated program because the classes were too fast-paced and were taught only in English. *Id.* at 129. Notwithstanding their inability to understand their content classes, the students were permitted to advance and even to graduate with a high school diploma without having the ability to speak English. *Id.* In affirming the trial court's grant of the preliminary injunction, the Third Circuit found irreparable harm was likely for the plaintiffs because, *inter*

*alia*, there was sufficient evidence that the accelerated program failed to actually overcome the plaintiffs' language barriers. *Id.* at 142.

The Court finds *Issa* to be distinguishable because the educational program at issue in *Issa* was fundamentally different from the Adult ESOL programs at issue in the case *sub judice*. The plaintiffs in *Issa* were essentially being rushed across the education finishing line and handed a high school diploma without regard to their ability to overcome their language barriers, to speak English, or to understand the content classes they took. *Id.* at 137-138, 142. The specific irreparable injury the *Issa* court highlighted was the likelihood that students would be issued a diploma from the accelerated high school program "'with limited ability, if any, to converse in English—also often a prerequisite to future advancement—and limited understanding of the content of the courses [they] actually took.'" *Id.* at 137-138; *see also id.* at 142. Plaintiffs have not presented any evidence that the Adult ESOL programs at issue in this case have caused or will cause the same type of injury if a mandatory preliminary injunction is not issued. Thus, the Court is not persuaded that the reasoning in *Issa* applies.

It warrants mention that some of the cases Plaintiffs rely upon support the general proposition that injury in the form of a denial of or significant interference with educational rights is "irreparable" when such injury cannot be compensated through an award of money. *See, e.g.*, *Certain Named and Unnamed Non-Citizen Children and Their Parents*, 448 U.S. at 1332-1333; *Hispanic Interest Coal. of Ala.*, 691 F.3d at 1249; *Issa*, 847 F.3d at 142-143; *Ray*, 666 F. Supp. at 1534-1535. But the Court's analysis above focuses on the threshold question of whether Plaintiffs have met their heightened burden to show that an injury exists in the first instance. If such an injury had been shown, it very likely would qualify as irreparable because it

likely could not be compensated by money damages.  *See id.*  But where, as here, no injury has been shown, the Court does not logically reach the issue of irreparability.

> **2.    Plaintiffs' Excessive Delay in Moving for Mandatory Preliminary Injunctive Relief Militates Heavily Against a Finding of Irreparable Harm.**

The very idea of a preliminary injunction is premised on "the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits."  *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016).[12]  "A delay in seeking a preliminary injunction of even only a few months – though not necessarily fatal – militates against a finding of irreparable harm."  *Id.*  Consequently, courts within the Eleventh Circuit and elsewhere have found that "a party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm."  *Id.* (collecting cases).  Further, Plaintiffs here have the additional heightened burden of demonstrating irreparable harm in light of

---

[12]  At the hearing, Plaintiffs pointed out that the *Wreal* case and the legal authorities it relies on are patent or trademark cases that relate to the undermining of brand recognition for a product.  (Doc. 127 at 128-29).  Plaintiffs argue that in the trademark or patent context, any delay in filing for preliminary injunctive relief shows that the harm is not irreparable because the brand confusion already occurred during the interim between the filing of the suit and the filing of the motion.  (*Id.* at 129).  There are, of course, cases outside of the patent and trademark arena that reached the same conclusion as in the *Wreal* case.  *See*, *e.g.*, *Powers v. Secretary, Florida Dep't of Corr.*, 691 F. App'x 581, 584 (11th Cir. 2017) (involving a violation of the Religious Land Use and Institutionalized Person Act, citing *Wreal* for the proposition that a delay in seeking preliminary injunctive relief undercuts the claim of imminent irreparable injury); *Burger v. Hartley,* No. 11-62037-CIV, 2011 WL 6826645, at *2 (S.D. Fla. Dec. 28, 2011) (involving a securities transaction and finding that "[d]elay before seeking a preliminary injunction may standing alone, preclude the granting of preliminary injunctive relief because the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury") (internal citation and quotations omitted); *Badillo v. Playboy Entm't Grp., Inc.*, No. 8:04-CV-591-T-30TBM, 2004 WL 1013372, at *2 (M.D. Fla. Apr. 16, 2004) (citing to delay as one factor to deny a motion for preliminary injunction involving child pornography).  Thus, the Court finds that a delay in filing for preliminary injunctive relief also weighs heavily against a finding of irreparable harm in cases – such as the instant case – that do not involve trademark or patent issues.

Plaintiffs' request for the extraordinary remedy of mandatory preliminary injunctive relief.

*Powers v. Sec'y, Fla. Dep't of Corr.*, 691 F. App'x 581, 583-84 (11th Cir. 2017).

The procedural history of the case clearly demonstrates excessive delay.  Plaintiffs waited over a year after filing this lawsuit to file their Motion for Preliminary Injunction.  Specifically, Plaintiffs filed the original Complaint (Doc. 1) requesting injunctive relief on May 18, 2016, whereas they filed the Motion for Preliminary Injunction (Doc. 87) over a year later on June 21, 2017.  As a consequence, an entire school year went by before Plaintiffs sought mandatory preliminary injunctive relief.  Further, at least one named Plaintiff, Nehemy Antoine, waited a considerable amount of time before filing suit and then seeking a preliminary injunction.  Nehemy Antoine arrived in Naples, Florida around February 2016.  (Doc. 87-3 at 2).  Thus, he waited three (3) months to file suit and over a year before seeking a mandatory preliminary injunction.  This excessive delay caused Nehemy Antoine as well as other similarly situated students to miss the 2016-2017 school year.

Plaintiffs attempt to make several excuses for their delay.

First, Plaintiffs attempt to excuse this delay by claiming that I.A. became a party at the time the Second Amended Complaint was filed on May 3, 2017 and, thus, there was not an appreciable delay by her in seeking mandatory preliminary injunctive relief from the time she joined the suit.  (Doc. 87 at 24 n.10; Doc. 127 at 132).  This argument is not persuasive.  After arriving in Naples, Florida in approximately January 2017, I.A. waited approximately five (5) months to join this action and then another month before seeking a mandatory preliminary injunction.  (Doc. 87-2 at 3).  Further, Plaintiffs' request for preliminary injunctive relief extends beyond the named student Plaintiffs.  Specifically, Plaintiffs request that Defendants "cease excluding recently-arrived, foreign-born ELLs aged fifteen and older from public school."  (Doc.

87 at 2).  I.A. would arguably be included in the expansive scope of the mandatory injunctive relief sought, whether or not she had actually joined this action.  In other words, I.A.'s later arrival in the case did not prevent Plaintiffs from pursuing mandatory preliminary injunctive relief much earlier in the litigation.  Thus, whether I.A. – or for that matter any other similar student – joined this lawsuit is immaterial for the purposes of the mandatory preliminary injunction and certainly does not constitute a valid excuse for Plaintiffs' delay.

Second, Plaintiffs attempt to excuse the delay by claiming that some of the information needed to support the motion came to light through the discovery process.  (Doc. 87 at 24 n.10; Doc. 127 at 132).  However, Plaintiffs fail to explain what specific discovery was needed to warrant such an excessive delay that resulted in the student Plaintiffs missing an entire school year.  Importantly, Plaintiffs could have filed a motion seeking to pursue early and/or expedited discovery on issues relevant to their claim for mandatory preliminary injunctive relief.  Plaintiffs chose not to do so.  Thus, the Court finds that this asserted basis for delay is unpersuasive.

Third, Plaintiffs also attempt to excuse their delay by explaining that Defendants filed a comprehensive Motion to Dismiss that remained pending from September 2016 until March 2017, and judicial efficiency "may have weighed against adjudicating a preliminary injunction motion where a pending motion to dismiss implicated the same dispositive issues," citing *Bagley v. Yale Univ.*, No. 3:13-CV-1890 CSH, 2014 WL 7370021, at *3 (D. Conn. Dec. 29, 2014). (Doc. 87 at 24 n.10; Doc. 127 at 128).  In *Bagley v. Yale Univ.*, the plaintiff brought suit in the District of Connecticut claiming that Yale University violated federal anti-discrimination statutes.  *Bagley*, 2014 WL 7370021, at *1.  In ruling on a motion for preliminary injunction, the court held that the plaintiff failed to make a sufficient showing of irreparable harm, finding the employee's injuries were reparable by reinstatement and money damages.  *Id.* at *5, *13.

22

Although not material to the decision, the court discussed the issue of a delay in filing a motion for preliminary injunction until after the resolution of a motion to dismiss.  *Id.* at *2-3.  The court explained that the delay did not weigh against the plaintiff's claim of irreparable harm, finding that the timing of the filing of the motion for preliminary injunction was a function of the "sensible ordering of the priorities of litigation."  *Id.* at *3.

The Court finds the reasoning in *Bagley* to be unpersuasive here.  In this case, Plaintiffs have repeatedly emphasized that time is of the essence and that, as time passes, their alleged injuries grow.  On the one hand, Plaintiffs urge that the Court must immediately enter a mandatory preliminary injunction to stop the alleged harm to the student Plaintiffs and others.  On the other hand, Plaintiffs ask the Court to ignore or excuse their delay *of more than a year*.  Time is either of the essence, or it is not.  Either the need for the extraordinary and immediate remedy of a mandatory preliminary injunction is necessary to stop the alleged actual and imminent injuries from occurring, or it is not.  Plaintiffs cannot have it both ways.  The Court finds that if the alleged harm were as actual and imminent as Plaintiffs now argue, then Plaintiffs should have sought mandatory preliminary injunctive much, much sooner than they did.  Notably, the Court entered its Order (Doc. 62) resolving the Motion to Dismiss on March 17, 2017, yet Plaintiffs again delayed from March until May 2017 before filing their Motion for Preliminary Injunction.  Such delay even after the District Judge resolved the Motion to Dismiss weighs against Plaintiffs.

Fourth, Plaintiffs attempt to excuse their delay by arguing that they requested an earlier trial term, specifically a 2018 rather than the 2019 trial term the Court ultimately set.  (Doc. 127 at 130-31).  Again, the Court finds this argument unpersuasive.  No matter the date of the trial term or any other case management deadline, none of these case management deadlines and

related considerations precluded Plaintiffs from filing their Motion for Preliminary Injunction earlier.  Moreover, Plaintiffs' counsel acknowledged during the hearing that, in hindsight, Plaintiffs should have moved for a preliminary injunction earlier in the litigation.  (Doc. 127 at 130, 132).

Here, the Court finds that Plaintiffs' excessive delay of more than a year from the point of filing of the original Complaint (Doc. 1) to the filing of the Motion for Preliminary Injunction (Doc. 87) militates heavily against a finding of irreparable injury.

**IV.    Conclusion**

Based upon the foregoing, the Undersigned concludes and recommends that Plaintiffs' request for mandatory preliminary injunctive relief should be denied because Plaintiffs fail to meet their heightened burden of persuasion to show that they will suffer irreparable injury that is actual and imminent if the injunction is not issued.  If the presiding District Judge does not accept this recommendation, then the Undersigned recommends that the matter be referred back to the Undersigned to conduct a full evidentiary hearing for the purpose of resolving the disputed material facts and credibility issues that are central to the other elements of mandatory preliminary injunctive relief.

**IT IS RESPECTFULLY RECOMMENDED:**

1)    That the Motion for Preliminary Injunction (Doc. 87) be **DENIED**.

2)    Alternatively, if the presiding District Judge does not accept this Report and Recommendation, that the matter be referred back to the Undersigned to conduct a full evidentiary hearing for the purpose of resolving the disputed material facts and credibility issues relating to the other elements of mandatory preliminary injunctive relief that are not addressed herein.

24

Respectfully recommended in Chambers in Ft. Myers, Florida on December 6, 2017.


MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE



**<u>NOTICE TO PARTIES</u>**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
Counsel of Record
Unrepresented Parties