UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NEHEMY ANTOINE and MARTA ALONSO,
on behalf of I.A., minor; on behalf of
themselves and all others similarly situated,

      Plaintiffs,

v.                                           Case No: 2:16-cv-379-FtM-38MRM

THE SCHOOL BOARD OF COLLIER
COUNTY, FLORIDA and KAMELA PATTON,

      Defendants.
_____/

## OPINION AND ORDER[1]

Before the Court is United States Magistrate Judge Mac R. McCoy's Report and Recommendation. (Doc. 139). Judge McCoy recommends denying the Motion for Preliminary Injunction (Doc. 87) filed by Plaintiffs Marta Alonso and Nehemy Antoine, as next friend on behalf of I.A. Plaintiffs have filed Rule 72 Objections to the Report and Recommendation (Doc. 147), to which Defendants the School Board of Collier County, Florida and Kamela Patton have responded (Doc. 156). The Report and Recommendation is ripe for review.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

## BACKGROUND

The Report and Recommendation provides the case's procedural history and makes factual findings, both of which the Court adopts. Thus, a detailed recap of that information is unnecessary. For completeness and context, the Court will highlight relevant facts below.

Plaintiffs are foreign-born, teenagers who arrived in the United States in 2016 and 2017 at age seventeen. They live within the Collier County School District, which Defendants administer. For disputed reasons, Plaintiffs (and others similarly situated) were denied enrollment in Defendants' public high school. Plaintiffs instead attended English for Speakers of Other Languages ("Adult ESOL") programs at a local career technical college under the School Board's authority. The Adult ESOL programs include English language and literacy immersion classes and eventually GED classes. Plaintiffs can only earn a GED through the Adult ESOL programs, not a high school diploma. The classes, activities, and interactions with other students in the Adult ESOL programs differ from the classes, activities, and interactions with other students enrolled in Collier County's public high schools. Both Plaintiffs aspire to attend college or pursue professional careers – Antoine wants to be a computer software engineer or an electrician (Doc. 87-3 at ¶ 39) and I.A. wants to be a nurse (Doc. 87-2 at ¶¶ 6, 41).

Plaintiffs believe that Defendants have an unlawful policy and practice of excluding foreign-born children from public school. They thus are suing Defendants for violating, among other laws, the Equal Educational Opportunities Act of 1974, 20 U.S.C. § 1703(f), and Florida Educational Equity Act, Fla. Stat. § 1000.05(2). (Doc. 76). And they move for a preliminary injunction that

> direct[s] Defendants to: 1) enroll Plaintiff Children and permit them to attend regular public school beginning August 16, 2017; 2) assess Plaintiff Children's language proficiency and allow them to access the benefits of the Defendants' ELL Plan; 3) provide services to compensate for the educational opportunities that Plaintiff Children were denied; and 4) cease excluding recently-arrived, foreign-born ELLs aged fifteen and older from public school.

(Doc. 87 at 2).

The Undersigned referred Plaintiffs' motion for preliminary injunction to Judge McCoy for a report and recommendation.[2] Judge McCoy held oral argument on the motion; neither party requested an evidentiary hearing. (Doc. 126; Doc. 127 at 4:24-5:18); *see also* M.D. Fla. R. 4.06 (stating, "[a]ll hearing scheduled on applications for a preliminary injunction will be limited in the usual course to argument of counsel unless the Court grants express leave to the contrary in advance of the hearing pursuant to Rule 43(e), Fed.R.Civ.P."). He then issued the Report and Recommendation finding that Plaintiffs had not satisfied their heightened burden of showing irreparable injury to warrant a mandatory preliminary injunction. (Doc. 139). The Court now reviews the Report and Recommendation.

---

[2] Plaintiffs allude to the length of time this matter has been pending. The Undersigned initially scheduled to hear herself Plaintiffs' motion for preliminary injunction. (Doc. 95). But the parties quibbled over Defendants' deadline to respond to the motion. During their back and forth exchange, the Undersigned was presiding over a multi-defendant criminal retrial and had other criminal trials and motions on deck. The Undersigned thus referred the motion for preliminary injunction and ancillary requests to Judge McCoy. The Undersigned has been the only active district judge in the Fort Myers Division since June 2015, and will likely continue to be so for the near future. If the parties wish to advance this case faster so as not to compete with criminal matters, they may consent to Judge McCoy handling any specific motion and/or this entire case.

**STANDARD OF REVIEW**

In reviewing a report and recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). When a party makes specific objections to a magistrate judge's report, the district court engages in *de novo* review of the issues raised. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). A *de novo* review means the district court "give[s] fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990) (citation omitted).

**DISCUSSION**

After an independent review of the complete record, parties' briefs, and applicable case law, the Court finds the Report and Recommendation to be well reasoned, thorough, and legally sound. The Court thus accepts it. Plaintiffs raise several objections to the Report and Recommendation, none of which warrants rejecting or modifying it. Expansion on Plaintiffs' objections follows.

Preliminary injunctive relief "is an extraordinary and drastic remedy" that courts grant only in limited circumstances. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000); *Powers v. Sec'y, Fla. Dep't of Corr.*, 691 F. App'x 581, 583 (11th Cir. 2017) ("A preliminary injunction is the 'exception rather than the rule'" (citation omitted)). District courts have wide discretion to grant or deny a preliminary injunction. *See United States v. Jefferson Cty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) ("The grant or denial of a preliminary injunction is a matter within the discretion of the district court, reviewable only for abuse of discretion or if contrary to some rule of equity."). To get injunctive relief the

4

movant must clearly show (1) a substantial likelihood of success on the merits; (2) she will suffer an irreparable injury without the injunction; (3) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction would not adversely affect the public interest if issued. See *Hamm v. Comm'r, Ala. Dep't of Corr.*, -- F. App'x -- 2018 WL 1020051, at *3 (11th Cir. Feb. 22, 2018); *see also Powers*, 691 F. App'x at 583 (stating the movant must "clearly establish the burden of persuasion as to each of the four prerequisites" (internal quotations omitted)).

At issue today is only the irreparable injury prong.³ Plaintiffs argue that being denied the chance to earn a high school diploma irreparably harms them and that Judge McCoy's finding otherwise is wrong. (Doc. 147 at 13-21).

A showing of irreparable injury is "the sine qua non of injunctive relief." *Siegel*, 234 F.3d at 1176 (internal quotations omitted). A court need not address the other elements of a preliminary injunction when "no showing of irreparable injury was made." *Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283,

---

³ The Report and Recommendation analyzed only the irreparable injury prong because the other elements turned on resolving disputed facts that needed an evidentiary hearing to decide credibility. (Doc. 139 at 9). But neither party requested an evidentiary hearing, moved for leave to question the opposing side's witnesses, or asserted that live testimony would be needed to decide the motion for preliminary injunction. And no hearing was requested even when, about four weeks before oral argument, Judge McCoy's Order stated "the hearing will be limited to argument of counsel because neither party has sought leave to the contrary pursuant to Fed. R. Civ. P. 43." (Doc. 105 at 3). Judge McCoy also clarified at oral argument that both parties agreed witness testimony was unnecessary. Thus, to the extent Plaintiffs object to Judge McCoy not holding an evidentiary hearing, the Court is not persuaded. *See FTC v. Vylah Tec LLC*, -- F. App'x -- 2018 WL 1211948, at *2 (11th Cir. Mar. 8, 2018) ("To the extent Appellants contend the district court should have required Appellees to present live testimony, they have not provided, nor have we found, any binding authority to that effect." (footnote omitted)). The parties opted to rely on their briefs, supporting documents, and arguments. Plaintiffs cannot now use that choice to contest the Report and Recommendation because they are unhappy with the result.

1285 (11th Cir. 1990); see also *Siegel*, 234 F.3d at 1176 ("[T]he absence of a substantial likelihood of irreparable injury would, standing alone, make[s] preliminary injunctive relief improper" even if the plaintiff shows a likelihood of success on the merits (citations omitted)). "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Ne. Fla. Chapter*, 896 F.2d at 1285. "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Id.* And a movant's alleged irreparable injury "must be neither remote nor speculative, but actual and imminent." *Siegel*, 234 F.3d at 1176-77 (internal quotations and citations omitted).

Plaintiffs maintain they are "getting older" and will miss their window of opportunity to earn a high school diploma if the Court does not direct Defendants to enroll them now in public high school. (Doc. 127 at 57). According to Plaintiffs, a high school diploma will allow them to continue their education or find a career. (Doc. 87-2 at 9; Doc. 87-3 at ¶¶ 43-44). Without that diploma, Plaintiffs argue they are irreparably harmed. The Court disagrees.

The alleged negative impact to Plaintiffs' future education and job opportunities are perceived injuries that are remote and speculative, not actual and imminent. It is undisputed that I.A. is advancing through the English-language immersion part of the Adult ESOL program and, upon becoming proficient in English, she can move to GED classes. Antoine has finished the language immersion and is currently working on her GED. A GED will not prevent Plaintiffs from applying to colleges, universities, or technical colleges and pursue professional careers. (Doc. 119-1 at 5; Doc. 87-5 at ¶ 26). Plaintiffs have presented no evidence that they (1) are not on track to succeed in the Adult ESOL

6

program; (2) will not succeed in obtaining a GED; and (3) with a GED in hand, will not (or cannot) be admitted to college, technical school, a career, or other employment, depending on the specific path Plaintiffs choose. They thus have not shown an actual and imminent injury if the Court does not direct Defendants to enroll them immediately in public school.

Plaintiffs present no binding or persuasive case law to find otherwise. They rely primarily on Supreme Court and Eleventh Circuit decisions that endorsed preliminary injunctions targeting Texas and Alabama laws that prohibited undocumented school-aged, immigrant children from attending public school. *See Plyler v. Doe*, 457 U.S. 202 (1982); *Certain Named and Unnamed Non-Citizen Children and their Parents v. Texas*, 448 U.S. 1327 (1980) (vacating the appellate court's stay, pending appeal, of a preliminary injunction); *Hispanic Interest Coal. of Ala. v. Governor of Ala.*, 691 F.3d 1236 (11th Cir. 2012). Two cases challenged the same Texas law that withheld state funds from school districts for educating children not "legally admitted" to the United States and that allowed the districts to deny such children enrollment in public schools. *Plyler*, 457 U.S. at 205; *Certain Named*, 452 U.S. 937, 937 (1981) (consolidating case with *Plyler v. Doe*, 451 U.S. 968). The Alabama law also targeted children because of their immigration status. It required enrolling students to present their birth certificates so schools could determine if the student was legally or illegally in the United States. *See Hispanic Interest Coal.*, 691 F.3d at 1240-41. If a student was foreign born, his parent or guardian had to tell the school of the child's citizenship or immigration status under federal law. *Id.* at 1241. Failure to do so resulted in the school presuming the student to be unlawfully in

7

the country.  *Id.*  It is against this backdrop the courts made remarks like the following on education:

- The Texas law "imposes a lifetime hardship on a discrete class of children not accountable for their disabling status.  The stigma of illiteracy will mark them for the rest of their lives.  By denying these children a basic education, we deny them the ability to live within the structure of our civic institutions, and foreclose any realistic possibility that they will contribute in even the smallest way to the progress of our Nation."  *Plyler*, 457 U.S. at 223;

- "The harm caused these [undocumented] children by lack of education needs little elucidation.  Not only are the children consigned to ignorance and illiteracy; they are also denied the benefits of association in the classroom with students and teachers of diverse backgrounds."  *Certain Named*, 448 U.S. at 1333; and

- "Given the important role of education in our society, and the injuries that would arise from deterring unlawfully present children from seeking the benefit of education, we conclude that the equities favor enjoining this provision."  *Hispanic Interest Coal.*, 691 F.3d at 1249.

This case differs from *Plyler*, *Certain Named*, and *Hispanic Interest*.  In those cases, Texas law foreclosed undocumented children from attending public schools, while Alabama law left children fearful to enroll because of their immigration status.  For instance, the children in *Certain Named* had not been able to attend any Texas public school for five years.  448 U.S. at 1332.  This is not the situation here.  Plaintiffs are receiving an education, albeit not how they want.  I.A. is in the midst of her English language instruction and working her way to GED classes.  And Antoine is attending GED classes.  For purposes of a preliminary injunction's irreparable injury inquiry, Plaintiffs' instruction aligns with the principle that "education has a fundamental role in maintaining the fabric of our society."  *Plyler*, 457 U.S. at 221.  What is more, Plaintiffs move for a preliminary injunction under their EEOA and FEEA claims, not their Equal Protection claims as in *Plyler*, *Certain Named*, and *Hispanic Interest*.  And that distinction makes a

difference. In short, Plaintiffs are not suffering an injury to warrant granting them the extraordinary and drastic relief of a preliminary injunction.

Plaintiff's reliance on *Ray v. The School Bd. of DeSoto Cty.*, 666 F. Supp. 1524 (M.D. Fla. 1987) fares no better. In *Ray*, the school district denied three school-aged brothers with HIV enrollment in regular public school. It offered them instead indefinite enrollment in a home program or "separate but equal full-time, isolated instruction." 666 F. Supp. at 1528. The brothers sued for civil rights and constitutional violations (not EEOA claims like at issue here) and moved for a preliminary injunction. The court granted the injunction, finding irreparable injury to the brothers' mental well-being and educational potential from being denied access to a traditional, integrated classroom because of their illness. It also found money and prevailing on the merits would not compensate the brothers for their injury. In the end, it stated,

> [t]he reality is that the [brothers] have already been dealt a hand not to be envied by anyone. The boys at their young ages are having to face two potentially life-threatening diseases. This is more than most people face in their entire adult lives. Denial of the opportunity to lead as normal an educational and social life as possible is adding insult to injury. *Unless and until* it can be established that these boys pose a real and valid threat to the school population of DeSoto County, they shall be admitted to the normal and regular classroom settings, to which they are respectively educationally entitled.

*Id.* at 1535.

*Ray* is nothing like this case. It was decided in 1987 during the height of the AIDS epidemic when information on the disease was slight. The brothers faced a life-threatening disease that many thought was highly contagious. In that context, the court

found irreparable harm to their mental state if they were further ostracized from school. For obvious reasons, the brothers' plight in *Ray* is incomparable to Plaintiffs' situation.

Plaintiffs' strongest case is *Issa v. School Dist. of Lancaster*, 847 F.3d 121 (3d Cir. 2017). Not only is this case not binding authority, but it also is distinguishable. In *Issa*, refugees aged eighteen to twenty-one with language barriers moved for a preliminary injunction to compel the school district "to allow them to transfer from Phoenix Academy, an accelerated credit-recovery high school, to McCaskey High School's International School, a program designed principally to teach language skills to English language learners, or ELLs." 847 F.3d at 125. Phoenix was an alternative education program designed for at-risk students over-age for their grade, under-credited, and in danger of not graduating high school before they aged out of public-school eligibility.[4] New-to-the-district students over age seventeen and under-credited – regardless of English proficiency or educational background – were enrolled automatically in Phoenix and could not transfer to McCaskey.

All Phoenix students, including ELLs like the plaintiffs, took an accelerated curriculum that earned them a high school diploma in about half the time of a traditional public high school. ELLs took science, math, and social studies with Phoenix's general population, and not with other ELLs at comparable English-proficiency levels like at McCaskey. The general population included other ELLS at higher proficiency levels and native English speakers. For the plaintiffs who attended Phoenix, they complained that they could not comprehend the content taught because the accelerated curriculum moved

---

[4] Pennsylvania law guarantees a public school education to "[e]very child, being a resident of any school district, between the ages of six (6) to twenty-one (21) years[.]" 24 P.S. § 13-1301.

10

too quickly and they could not understand what their teachers and classmates were saying. Nevertheless, they accrued credits and advanced to higher-grade levels.

When deciding the motion for a preliminary injunction, the Third Circuit found "without preliminary relief, irreparable harm was likely for these plaintiffs, who would have remained in Phoenix's accelerated, non-sheltered program for at least the duration of this litigation." 847 F.3d at 142. It said, "[t]ime is of the essence: Their eligibility to attend public school in Pennsylvania is dwindling. We recognize that a sound educational program has power to 'change the trajectory of a child's life, . . . while even a 'few months' in an unsound program can make a 'world of difference in harm' to a child's educational development.'" *Id.* (citations omitted).

The reasoning in *Issa* does not apply here because the Phoenix education program differs fundamentally from Defendants' Adult ESOL programs. The *Issa* plaintiffs were rushed through their high school without any meaningful regard to their ability to overcome their language barriers, to speak English, or to understand the classes they took. The opposite situation presents itself here. Plaintiffs achieve English language proficiency before they continue to GED classes. And there is no evidence that Plaintiffs, like their counterparts in *Issa*, may earn a GED "with limited ability, if any, to converse in English – also often a prerequisite to future advancement – and limited understanding of the content of the courses [they] actually took." *Id.* at 138 (citation omitted).

One last point on irreparable harm. Plaintiffs' unnecessary delay in moving for preliminary injunctive relief is another factor weighing against irreparable harm. They filed this suit in May 2016 and waited over a year to move for an injunction. An entire school term lapsed during that period. Plaintiffs defend the delay, stating they were waiting for

the Court to decide Defendants' motion to dismiss and they believed the Court would set the trial in 2018.  Neither excuse is persuasive.  If Plaintiffs were suffering an irreparable injury with each passing day they were not in public school, a decision on the pleadings and a trial term in 2018 matters little.  Neither the motion to dismiss nor case management deadlines prevented Plaintiffs from seeking preliminary injunctive relief to address their alleged irreparable harm.  Plaintiffs also maintain that I.A. entered this case only about a month before they filed the preliminary injunction.  But that argument neglects to mention that Antoine has been in this case since the beginning and waited.  (Doc. 30).  Although the delay alone does not warrant a showing of irreparable harm, it strongly cuts against the opposite conclusion.  Allowing an entire school year to lapse before seeking a preliminary injunction is a fact the Court cannot ignore.  In sum, Plaintiffs have not sustained their burden of presenting the requisite proof of an irreparable injury.

Plaintiffs' objections do not end with irreparable injury.  They also object to the Report and Recommendation characterizing their preliminary injunction relief as "mandatory" instead of "prohibitory."  Generally, the purpose of a preliminary injunction is to preserve the status quo until the court reaches a final decision on the merits.  *See Haddad v. Arnold*, 784 F. Supp. 2d 1284, 1295 (M.D. Fla. 2010).  To maintain the status quo, injunctions typically prohibit certain conduct by a defendant.  An injunction that requires the defendant to act affirmatively alters the status quo and is thus mandatory.  And "[m]andatory preliminary relief, which goes well beyond simply maintaining the status quo[,] is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party."  *Powers*, 691 F. App'x at 583 (citation omitted).  In other words, courts should exercise more caution when the preliminary injunction sought is mandatory.

Here, Plaintiffs do not want to freeze the existing situation, *i.e.*, remain in the Adult ESOL programs. Just the opposite. They want the Court to direct Defendants to enroll them in regular public high school, afford them testing, and provide services to compensate them for denied educational opportunities while this case continues. (Doc. 87 at 2). This is the quintessential mandatory preliminary injunction.

Plaintiffs argue, "[t]he distinction between a 'mandatory' and 'prohibitory' preliminary injunction is not nearly as clear as the report suggests." (Doc. 147 at 6). This argument is a nonstarter. Plaintiffs cite two cases from the Seventh and Ninth Circuits in which the courts rejected or criticized the distinction between mandatory and prohibitory injunctions. (Doc. 147 at 6 n.5). Neither case binds this Court. And neither is persuasive because the Eleventh Circuit recently affirmed a district court's denial of a mandatory preliminary injunction. *See Powers*, 691 F. App'x at 583-84. Because Plaintiffs seek a mandatory preliminary injunction, their motion faces a heightened burden.

Finally, Plaintiffs argue Judge McCoy failed to consider the Court's legal standard for an EEOA claim. Even accepting Plaintiffs argument, it goes nowhere. The standard for an EEOA claim concerns whether Plaintiffs showed a substantial likelihood of success on the merits. Neither Judge McCoy nor the Undersigned need to reach any conclusion on that element because Plaintiffs have not shown irreparable harm. The same reasoning rings true for the material facts that Plaintiffs claim are undisputed that Judge McCoy did not find in the Report and Recommendation. (Doc. 147 at 7-13). Even accepting Plaintiffs' material facts, they do not persuade the Court to find an irreparable injury.

In conclusion, the Court accepts the Report and Recommendation in accordance with this Opinion and Order.

Accordingly, it is now

**ORDERED:**

(1) The Report and Recommendation (Doc. 139) is **ACCEPTED and ADOPTED** and the findings are incorporated herein in accordance with this Opinion and Order.

(2) The Motion for Preliminary Injunction (Doc. 87) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 14th day of March 2018.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record