UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARTA ALONSO, as next friend on behalf
of I.A., and NEHEMY ANTOINE, on
behalf of themselves and all others similarly
situated,

      Plaintiffs,

v.                            Case No:   2:16-cv-379-FtM-38MRM

THE SCHOOL BOARD OF COLLIER
COUNTY, FLORIDA and KAMELA
PATTON,

      Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

Pending before the Court is the Motion for Class Certification, filed on January 12, 2018. (Doc. 152).  Plaintiffs Nehemy Antoine and Marta Alonzo, on behalf of I.A., a minor, brought suit against Defendants School Board of Collier County, Florida and Kamela Patton, Superintendent of Collier County Public Schools, in her official capacity.  (Doc. 76).  Plaintiffs move the Court for entry of an Order certifying a class.  On February 22, 2018 and February 26, 2018 respectively, Defendants filed a redacted and an unredacted Response.  (Doc. 162 (redacted)); (Doc. 164 (unredacted and sealed)).  Thereafter, Plaintiffs filed a Reply on March 8, 2018.  (Doc. 165).  The Motion for Class Certification was referred to the Undersigned for a

---

[1]  Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

Report and Recommendation.  For the reasons set forth herein, the Undersigned respectfully recommends that the Motion for Class Certification (Doc. 165) be **GRANTED in part and DENIED in part** as set forth below.

## I.     Facts and Procedural Background

### A.     Overview of Plaintiffs' Claims

Plaintiffs allege generally that they are immigrant children who seek to enroll in Collier County Public Schools to further their education, but are excluded from a free public education due to Defendants' actions.  (Doc. 76 at 2 ¶ 2).  When they attempted to enroll in public school, Plaintiffs claim that in some instances Defendants directed them to noncredit, Adult English for Speakers of Other Languages ("Adult ESOL") classes and, in other instances, Defendants simply turned them away.  (*Id.* at 2 ¶ 3).  Plaintiffs further claim that Defendants maintain a custom, policy, and practice of excluding recently arrived, foreign-born, English Language Learner ("ELL") students aged fifteen (15) years and older from enrolling in Collier County public schools.  (*Id.* at 2-3 ¶ 4).  In addition, Plaintiffs contend that through this custom, policy, and practice, Defendants deny Plaintiffs and putative class members a free public education alongside their peers, the chance to learn core educational content and skills, and access to other activities and programs available to students enrolled in public education.  (*Id.*).

Plaintiffs allege that these practices violate:  the Equal Educational Opportunities Act ("EEOA"), 20 U.S.C. §§ 1703(a), (f) (Count I); Section 601 of Title VI of the Civil Rights Act of 1964 ("Title VI") and 42 U.S.C. § 2000d (Count II); the Equal Protection and Due Process clauses of the Fourteenth Amendment to the U.S. Constitution, amend XIV, § 1 (Counts III-IV);

and the Florida Educational Equity Act ("FEEA"), Fla. Stat. § 1000.05, and implementing

regulations, Fla. Admin. Code R. 6A-19.001 (Count V).  (Doc. 152 at 3; Doc. 76).[2]

### B.    Overview of Florida's Education System

The Florida Constitution guarantees a free public-school education to all children

residing within its borders.  Fla. Const. art. IX § 1(a).  This section provides, "[t]he education of

children is a fundamental value of the people of the State of Florida.  It is, therefore, a paramount

duty of the state to make adequate provision for the education of all children residing within its

borders."  *Id.*  The State of Florida codified this constitutional guarantee:

> As required by s. 1, Art. IX of the State Constitution, the Florida K-20 education
> system shall include the uniform system of free public K-12 schools.  These public
> K-12 schools shall provide 13 consecutive years of instruction, beginning with
> kindergarten, and shall also provide such instruction for students with disabilities,
> gifted students, limited English proficient students, and students in Department of
> Juvenile Justice programs as may be required by law.

Fla. Stat. § 1000.01(4).  School attendance is compulsory for children between the ages of six (6)

and fifteen (15).  Fla. Stat. § 1003.21(1)(a)(1).  The statute further provides:

> A student who attains the age of 16 years during the school year is not subject to
> compulsory school attendance beyond the date upon which he or she attains that
> age if the student files a formal declaration of intent to terminate school enrollment
> with the district school board.  Public school students who have attained the age of
> 16 years and who have not graduated are subject to compulsory school attendance
> until the formal declaration of intent is filed with the district school board.

Fla. Stat. § 1003.21(1)(c).  Thus, unless a student who is sixteen (16) years of age or older

completes a formal declaration of intent to withdraw, school attendance is compulsory.  *Id.*

---

[2]  In Counts II (Title VI), III (Equal Protection), and IV (Due Process), Plaintiffs allege claims
against the School Board of Collier County, Florida only.  (Doc. 76 at 38-47).  Defendants, the
School Board of Collier County and Kamela Patton, jointly responded to the Motion for Class
Certification as to all claims.  (Doc. 164 at 1).  Thus, the Court refers to both Defendants
throughout this Report and Recommendation, even though some of the claims relate to the
School Board of Collier County, Florida only.

C.    School Board Policy 5112.01

The crux of this case involves Defendants' implementation of an amendment to its Policy 5112.01 on August 1, 2013.  (Doc. 76 at 81).  Plaintiffs challenge the application of this Policy to deny them enrollment in regular high school.  (Doc. 152 at 16).  Policy 5112.01 provides in relevant part:

> In order to provide reasonable consistency of maturity levels among students in the regular high school program, no person shall be permitted to attend the regular high school program after attaining the age of nineteen (19).  Those who attain the age of nineteen (19) during a school year may complete that school year.  Persons who are seventeen (17) years old or older and who, by earning eight (8) credits per academic year, cannot meet graduation requirements, including grade point average (GPA), prior to the end of the school year during which they attain the age of nineteen (19), shall not be permitted to attend the regular high school program beyond the end of the academic year in which they attain the age of seventeen (17).  Such persons shall be afforded an opportunity to pursue a high school diploma through the Adult High School or General Educational Development (GED) programs of the District.

(*Id.*).[3]  School administrators are required to notify their employees of the School Board's policies and to operate in accordance with these policies.  (Doc. 153-2 at 9).[4]

From August 2013 until May 2016, to register for high school, children went directly to their local schools.  (Doc. 155-5 at 3).  At the local schools, if someone at the front desk had a question about the application of Policy 5112.01, they would ask the principal of the school.  (Doc. 154-3 at 22).  Local school principals applied Policy 5112.01, and if they had questions, they would ask someone at the School District's office for help.  (Doc. 154-3 at 15, 22).  The

---

[3]  Prior to August 1, 2013, Policy 5112.01 provided that "no person shall be permitted to attend the regular high school program after attaining the age of twenty-one (21)."  (Doc. 76 at 81).  Thus, the August 1, 2013 Policy lowered the applicable age from twenty-one (21) to nineteen (19).  (*Id.*).

[4]  For ease of reference, the Court refers to the CM/ECF page numbers when referencing all of the exhibits.

principals normally made the final decision as to whether a student was eligible to enroll.  (*Id.* at 16).  If a student wanted to challenge the decision, she or he could raise it at the School District level.  (*Id.*).

In May 2016, the School Board shifted enrollment of high school to a centralized location, the Student Relations Department.  (Doc. 155-5 at 4).  The primary reason for this change was "a one-stop shop for parents" so that an entire family with children of varying ages could enroll in one place rather than go from school to school.  (*Id.*).  When a student is seventeen (17) years of age or older, an enrollment specialist gathers the academic records and other pertinent records and then these records are given to Dr. Leslie Ricciardelli.  (*Id.* at 7).  Dr. Ricciardelli is the Executive Director Secondary Programs, Curriculum, and Instruction.  (Doc. 155-1 at 3).  Dr. Ricciardelli makes the final recommendation as to enrollment and then relays this recommendation to the enrollment specialist who communicates it to the parents.  (Doc. 155-5 at 7, 10).  The enrollment specialist cannot disregard Dr. Ricciardelli's recommendation.  (*Id.*).  If the parent or family has questions beyond what the enrollment staff can answer, then the staff gives the parent or family contact information for Dr. Ricciardelli.  (*Id.* at 12-13).  When a family contacts Dr. Ricciardelli, she talks to them and explains her recommendation.  (Doc. 155-1 at 10).

Defendants consider certain factors when determining if a student is able to graduate by the end of the school year in which he or she turns nineteen (19) years of age.  (Doc. 154-3 at 6).  One such factor is the student's English proficiency.  (*Id.*; Doc. 155-1 at 21).  A second factor is whether a student has an interruption or gap in his or her prior education based upon the transcripts the School District receives for that student.  (Doc. 154-3 at 6; Doc. 155-1 at 21).  Dr.

Ricciardelli defines "gap in education" to mean when a student has not been enrolled in school for a significant amount of time.  (Doc. 155-1 at 22).

### D.     The ELCATE Academy

In spring of 2016, the School District began the English Literacy for Career and Technical ("ELCATE") Academy.  (Doc. 155-8 at 5, 6, 8; Doc. 118-6 at 2 ¶ 7).  According to the ELCATE Academy brochure, "[t]he ELCATE Academy was established to meet the needs of individuals, ages 16-21, in need of learning to speak, read and write English with the eventual goal of attaining a high school diploma by passing the GED."  (Doc. 152-5 at 2).  The ELCATE Academy's curriculum focuses on English literacy, social studies, math, and science to prepare students to obtain a high school diploma by passing the GED exam.  (*Id.* at 3).  In addition, students have the opportunity to explore different career paths.  (*Id.*).  Defendants assess the students' English literacy skills through certain standardized tests and then Defendants use the data from these tests to place students in the appropriate courses.  (*Id.*).  The School District created the ELCATE Academy for students with gaps in their education.  (Doc. 153-2 at 20).  The purpose of this program is to allow an alternate pathway for students to obtain a high school diploma that they would not be able to obtain in Collier County's traditional schools.  (*Id.* at 22).  As one option, Dr. Ricciardelli recommends certain students attend the ELCATE Academy.  (Doc. 155-5 at 7-8).

Students enrolled in the ELCATE Academy attend English language emersion classes.  (Doc. 118-1 at 2 ¶ 8).  There are six (6) levels of competency and a student must reach level five (5) before he or she is ready to sit for further testing to obtain a GED, other career-based programs, or employment.  (*Id.* at 2-3 ¶¶ 10, 12, 13).

E.      Plaintiff I.A.

I.A. arrived in Naples, Florida in "approximately January of 2017, shortly after [she] turned 17 years old.".  (Doc. 155-10 at 3 ¶ 7).[5]  She lives with her aunt, Marta Alonso.  (*Id.* at 2 ¶ 8).  I.A. is presently a citizen of Guatemala and her first language is Spanish.  (*Id.* at 2 ¶ 4). When she arrived in the United States, she had finished the "tercero básico" grade in Guatemala, which I.A. believes is the equivalent of the ninth (9th) grade in the United States.  (*Id.* at 3 ¶ 7).

Upon arriving in Collier County, Marta Alonso attempted to enroll I.A. in a Collier County public high school.  (*Id.* at 2 ¶ 10).  She brought her birth certificate and transcript from Guatemala.  (*Id.* at 2 ¶ 11).  Dr. Ricciardelli was aware of I.A.'s transcript review and noted a concern by the Student Relations Department that I.A. was over 17 years of age with a transcript showing completion of the ninth (9th) grade in Guatemala.  (Doc. 155-1 at 16).

After a review of I.A.'s transcript, Dr. Ricciardelli considered whether to enroll I.A. in the tenth (10th) grade or place her in the eleventh (11th) grade and find ways to assist her to catch up.  (*Id.*).  Dr. Ricciardelli found that I.A. had missed three full quarters of coursework for the year and she would have been far behind in English II, biology, geometry, social studies, and the like.  (*Id.*at 17).  Further, Dr. Ricciardelli was concerned:  (1) that I.A. would have to take the standardized exams in English II, biology, and geometry in April; (2) that she would not have been ready for these standardized tests; and (3) that this path would set I.A. up for failure.  (*Id.*). Dr. Ricciardelli did not find a way to enable I.A. to succeed in her courses so that she could graduate by the age of nineteen (19).  (*Id.*).  Dr. Ricciardelli decided that the best course was to

---

[5]  The parties dispute I.A.'s age, but that factual dispute does not directly affect the issues relating to class certification.  (*See* Doc. 152 at 13 n.6; Doc. 164 at 3).

enroll I.A. in intensive English language emersion program of the kind that Adult ESOL offered and then I.A. would be able to enter the GED program to prepare her for college.  (*Id.*).

At some point, the School District contacted Ms. Alonso to tell her that I.A. did not qualify to enroll in regular public high school.  (Doc. 155-10 at 4 ¶¶ 16, 17).  I.A. stated that "no one gave me or my aunt the chance to challenge or appeal the decision not to enroll me in public school.  I was never told that I could challenge this decision, or how to challenge it."  (*Id*. at 6 ¶ 20).

Ms. Alonzo took I.A. to Lorenzo Walker Technical College to enroll.  (*Id.* at 4 ¶ 21).  I.A. took an English placement text and was assigned to a Level 2 English class with other students who appeared to be around the ages of 16 to 19 years old.  (*Id.* at 5 ¶¶ 23, 24).

### F.    Plaintiff Nehemy Antoine

Nehemy Antoine arrived in Naples, Florida around February 2016 when he was 17 years old and, as of June 1, 2017, Nehemy Antoine was eighteen (18) years old.  (Doc. 155-9 at 2-3 ¶¶ 2, 9).  He was born in Haiti with his first language being Haitian Creole, his second language being French, and he is learning Spanish and English.  (*Id.* at 2 ¶ 4).  Before coming to the United States, Nehemy was enrolled in the "9em" in Haiti.  (*Id.* at 3 ¶ 9).

Nehemy and his father, Emile Antoine attempted to enroll Nehemy in Collier County public high school, but learned he was not eligible to pursue a regular high school diploma.  (*Id.* at 3 ¶¶ 10, 14).  No one at the School District gave Nehemy the chance to challenge or appeal the decision not to enroll him in public school or told him the procedure to follow to challenge or appeal the decision.  (*Id.* at 4 ¶ 17).

Nehemy went to Lorenzo Walker Technical College and his father enrolled him in classes.  (*Id.* at 5 ¶ 20).  All of the students in his class were from countries other than the United

States.  (*Id.*).  Over the past year, Nehemy progressed in English proficiency.  (*Id.* at 6 ¶ 25).

Defendants indicated that they are taking action to enable him to undertake the GED program.

(*See id.* at 6-7).  Nehemy states that he began in an English class and progressed to taking GED

practice tests.  (*Id.* at 6 ¶ 26, 27).  Nehemy does not earn credits towards a high school diploma.

(*Id.* at 7 ¶ 32).  In addition to his classes at Lorenzo Walker, Nehemy was also enrolled in the

Florida Virtual School and takes an Algebra II class, a language class, and geometry class online.

(*Id.* at 8 ¶ 38).

## II.     Discussion

The United States Supreme Court has noted that class actions are "an exception to the

usual rule that litigation is conducted by and on behalf of the individual named parties only."

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348, (2011) (quotation and citation omitted).  To

justify a departure from that rule, a class representative must be a part of the class and possess

the same interests and suffer the same injuries as the class members.  *Id.*

Federal Rule of Civil Procedure 23 sets forth the requirements for class actions.  Under

the Rule, all putative classes "must meet each of the requirements specified in Federal Rule of

Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)."

*Calderone v. Scott*, 838 F.3d 1101, 1104 (11th Cir. 2016) (citation omitted).  "Rule 23(a)

requires every putative class to satisfy the prerequisites of numerosity, commonality, typicality,

and adequacy of representation."  *Id.*

Additionally, Rule 23(b) specifies the types of class actions that may be maintained if

Rule 23(a) is satisfied.  *Id.*  Here, Plaintiffs move pursuant to Rule 23(b)(2), which additionally

requires that "the party opposing the class has acted or refused to act on grounds that apply

generally to the class, so that final injunctive relief or corresponding declaratory relief is

appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Undersigned addresses the requirements of Rule 23(a) and Rule 23(b)(2) separately below.

### A.      Rule 23(a)

The requirements of Rule 23(a) ensure that named plaintiffs are appropriate representatives of the class they wish to litigate. *Dukes*, 564 U.S. at 349. "The Rule's four requirements – numerosity, commonality, typicality, and adequate representation – 'effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *Id.* (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). The question of whether to certify a class rests in the sound discretion of the district court. *Rosario-Guerrro v. Orange Blossom Harvesting*, 265 F.R.D. 619, 624 (M.D. Fla. 2010) (citing *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1189 (11th Cir. 2009)).

Nevertheless, the party moving for class certification has the burden to establish all implicit and explicit requirements of Rule 23. *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014); *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). Indeed, Rule 23 does not establish a mere pleading standard. *Dukes*, 564 U.S. at 350. Instead, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.* at 351.

Furthermore, the Supreme Court has recognized that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* at 350-51 (citing *Falcon*, 457 U.S. at 156)). "The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 351 (citing *Falcon*, 457 U.S. at 157). Accordingly, the Court must conduct a

"rigorous" analysis of the Rule 23(a) prerequisites that may overlap with the merits of a plaintiff's underlying claim. *Id.*

> The specific requirements of Rule 23(a) include:
>
> (1)     the class is so numerous that joinder of all members is impracticable;
> (2)     there are questions of law or fact common to the class;
> (3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four prerequisites are "'designed to limit class claims to those fairly encompassed by the named plaintiffs' individual claims.'" *Valley Drug Co.*, 350 F.3d at 1188 (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000)). If the moving party fails to establish any one of these four factors, then a party is precluded from class certification. *Id.* Once all of the requirements of Rule 23(a) are met, then the party must satisfy one of the requirements of Rule 23(b). *Id.*

The Undersigned addresses each of the requirements of Rule 23(a) in turn below in addition to the threshold questions of standing, the class definition, and ascertainability.

### 1.     Standing

As a threshold matter, a court must determine that at least one named class representative has Article III standing to raise each class claim. *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 577 (M.D. Fla. 2006) (citing *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)). For an individual plaintiff to establish standing under Article III, a plaintiff must demonstrate three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). First, a plaintiff must have suffered an injury in fact that is actual or imminent and not conjectural or hypothetical. *Id.* (quotations and citations). Second, there must be a causal connection between the injury and the conduct complained of to the extent that it must be fairly

traceable to a defendant.  *Id.*  Third, the injury must be likely to be redressed by a favorable

decision.  *Id.*  Further, "[t]o have standing to represent a class, a party must not only satisfy the

individual standing prerequisites, but must also be part of the class and possess the same interest

and suffer the same injury as the class members."  *Mills v. Foremost Ins. Co.*, 511 F.3d 1300,

1307 (11th Cir. 2008) (quotations and citations omitted).  Moreover, a named plaintiff must

establish that he or she has standing and suffered and injury as to each claim and each claim must

be analyzed separately.  *Id.* (citation omitted).

Plaintiffs contend that they have suffered a concrete injury – *i.e.*, the denial of enrollment

in high school – that was the direct result of Defendants' practice of excluding recently arrived,

foreign-born ELLs under Policy 5112.01.  (Doc. 152 at 18).  Plaintiffs also assert that this injury

can be redressed by an injunction against this practice.  (*Id.*).  Furthermore, Plaintiffs add that

this Court already determined that Plaintiffs have standing to bring their claims and cite to this

Court's prior Order that Plaintiffs' "claims for equitable relief have not been trumped by an

intervening circumstance" such as obtaining a high school diploma.  (*Id.* at 19 (quoting *Methelus

v. Sch. Bd. of Collier Cty., Fla.*, 243 F. Supp. 3d 1266, 1283 (M.D. Fla. 2017)).

Defendants argue that Plaintiffs are ineligible to enroll in "regular high school" and,

therefore, lack standing.  (Doc. 164 at 6).  Defendants assert three reasons why Plaintiffs' lack

standing:  (1) Plaintiffs have aged out of the regular high school programs as evinced by I.A.

being 18 years old and Nehemy being 19 years old; (2) Plaintiffs' "academic records do not

demonstrate that they have at least an eighth-grade education or the equivalent to be eligible for

"regular high school;" and (3) Plaintiffs will suffer no harm or injury by not being enrolled in

"regular high school."  (*Id.* at 7).

The presiding District Judge, the Honorable Sheri Polster Chappell addressed Defendants' arguments as to standing in the Order on the Motion to Dismiss.  *Methelus*, 243 F. Supp. 3d at 1283.  Judge Chappell held that Plaintiffs had standing because "their claims for equitable relief have not been trumped by an intervening circumstance" such as Plaintiffs having earned a high school diploma.  *Id.*  Here, Defendants fail to argue that material facts surrounding the issue of standing have changed significantly since March 17, 2017, the date the above Order was entered.  Moreover, Plaintiffs allege that they suffered a concrete injury by being denied enrollment in regular high school and, thus, have standing as to each claim here.

Defendants also argue that the December 6, 2017 Report and Recommendation finds that Plaintiffs have not suffered harm.  (Doc. 139; Doc. 164 at 16).  The Report and Recommendation addressed the pending Motion for Preliminary Injunction.  (Doc. 87; Doc. 139).  In the context of requesting a preliminary injunction, the Court found that Plaintiffs had not met their burden as to the four prerequisites for a preliminary injunction, including a showing of irreparable injury. (Doc. 139 at 12-20).  That finding related to the issues raised in the Motion for Preliminary Injunction only and does not apply here.

Accordingly, the Undersigned finds that Plaintiffs have standing to proceed with the Motion for Class Certification.

### 2.    Class Definition and Ascertainability

Another threshold consideration is that Plaintiffs must demonstrate that the proposed class is adequately defined and clearly ascertainable.  *Bussey*, 562 F. App'x at 787.[6]  "An

---

[6]  Plaintiffs assert that the ascertainability requirement does not apply in a Rule 23(b)(2) context or, alternatively, if it does apply Plaintiffs have satisfied this requirement.  (Doc. 152 at 33-35). Plaintiffs claim that the ascertainability requirement applies in Rule 23(b)(3) class actions that seek damages as a remedy and not in cases, such as the instant case, where Plaintiffs seek injunctive relief.  (*Id.*).  Courts in the Eleventh Circuit have not squarely addressed the issue of

identifiable class exists if its members can be ascertained by reference to objective criteria" and

the objective criteria is administratively feasible. *Id.* (quotation omitted). "Administrative

feasibility means that identifying class members is a manageable process that does not require

much, if any, individual inquiry." *Id.* (quotations omitted). A court should deny class

certification when the class definition is "overly broad, amorphous, and vague, or where the

number of individualized determinations required to determine class membership becomes too

administratively difficult." *Kirts v. Green Bullion Fin. Servs., LLC*, No. 10-20312-CIV, 2010

WL 3184382, at *6 (S.D. Fla. Aug. 3, 2010). After a plaintiff satisfies this threshold issue, then

the district court must conduct a rigorous analysis of the Rule 23 prerequisites. *Bussey*, 562 F.

App'x at 787 (citations omitted).

> Here, Plaintiffs seek to certify a class defined as follows:
>
> All foreign-born, English Language Learner (ELL) children ages fifteen to twenty-one whose last completed schooling (not including adult education courses) was at a non-U.S. school, and who, after August 1, 2013, while residing in Collier County, sought or will seek to enroll in the Collier County public school system serving grades K-12, and were or will be denied enrollment by the Defendants.

(Doc. 152 at 2).[7] Plaintiffs assert that the putative class is defined using the following objective

criteria: (1) birth in a foreign country; (2) resident of Collier County; (3) age of the student; (4)

---

ascertainability in Rule 23(b)(2) cases, but other circuits that have addressed this issue find that the ascertainability requirement does not apply. *See, e.g.*, *Braggs v. Dunn*, 317 F.R.D. 634, 671 (M.D. Ala. 2016). The Court need not reach this issue here because the Court finds that Plaintiffs have sufficiently demonstrated that the class is adequately defined and clearly ascertainable.

[7] Plaintiffs state that the definition of the proposed class in the Motion for Class Certification is slightly different than the definition proposed in the Second Amended Complaint. (Doc. 152 at 13). Plaintiffs explain that the class definition differs in the following four ways: (1) Plaintiffs replaced the descriptor "recently-arrived" with the descriptor "whose last completed schooling (not including adult education courses) was at a non-U.S. school;" (2) Plaintiffs clarified that the public school system from which class members are being excluded is the "public school system serving grades K-12;" (3) Plaintiffs amended the starting date to August 1, 2013, the date the amendment to Policy 5112.01 went into effect; and (4) Plaintiffs added an upper age limit to

last completed schooling was outside of the United States; (5) sought or will seek to enroll in a regular high school program; and (6) was or will be denied enrollment into a regular high school program.  (*Id.* at 35).  Plaintiffs also assert that the determination of whether a student is an ELL is also an objective criteria and can be determined by whether the student is enrolled in Adult ESOL or the ELCATE Academy because these programs are designed for ELLs.  (*Id.*).

Defendants argue that the class is impermissibly overbroad for several reasons.  (Doc. 164 at 14).  To begin, Defendants contend that the class, if so defined, would include persons who already graduated from an equivalent high school, have little or no education at all, or have disciplinary or even criminal impediments to being enrolled in a regular high school.  (*Id.* at 14-15).  Defendants argue that any such individuals would not be suitable for regular high school and should not be included within any class.  (*Id.*).  The Undersigned finds these arguments unpersuasive.  Based upon the Court's prior rulings in this case, an individual who has obtained a high school diploma arguably constitutes an intervening circumstance such that the individual would not have standing to pursue a claim.  *Methelus*, 243 F. Supp. 3d at 1283.  Thus, such an individual would not be a class member.  *Id.*  Moreover, Defendants do not adequately explain why individuals falling into this category could not be ascertained by administratively feasible means.

Next, Defendants argue that there is not a common basis for refusal to enroll the Named Plaintiffs and putative class members in regular high school and, thus, there is "no single ground common to them all."  (Doc. 164 at 14-15).  The Undersigned finds this argument is more

include twenty-one (21) years of age.  (*Id.* at 15-17).  The Court adopts the class definition as set forth in the Motion for Class Certification.  *(Id.* at 2).

appropriately addressed in the context of Fed. R. Civ. P. 23(a)'s commonality and typicality

requirements.  *See* Parts II.A.4 - 5 *infra*.[8]

Defendants also argue that the proposed class is not adequately defined or clearly

ascertainable as to the terms "sought to enroll" and "denied enrollment."  (Doc. 164 at 8-9).

---

[8]  Defendants generally cite to cases outside the Eleventh Circuit for the proposition that a class definition that includes all past, present, and future individuals is too broad.  (Doc. 164 at 15). The Court finds these cases to be distinguishable and unpersuasive.

In *Barcelo v. Brown*, for example, the plaintiffs sought class certification for a class consisting of "past, present and future residents of the Island of Vieques, Puerto Rico, who have suffered, are suffering and will continue to suffer economic, physical, environmental and other injuries to their lives, liberty, property, health and wellbeing, due to the policies, practices, acts and omissions of the Defendants." 78 F.R.D. 531, 533 (D.P.R. 1978).  The district court held that this class definition "is an entirely too broad and ill-defined class within the framework of this litigation." *Id.* at 534.  The *Barcelo* case is distinguishable from the instant case because the proposed class in *Barcelo* broadly encompassed various type of injuries based upon various policies, practices, acts, and omissions. *Id.*  Here, the Court finds that the proposed class definition is sufficiently defined and tailored and does not suffer from the same overbreadth as in *Barcelo*.

In *Edwards v. Schlesinger*, moreover, the plaintiffs sought relief from the Air Force and Naval Academies, alleging unconstitutional failure to consider women for appointment to the academies. 377 F. Supp. 1091, 1092 (D.D.C.), *rev'd sub nom. Waldie v. Schlesinger*, 509 F.2d 508 (D.C. Cir. 1974).  The district court denied the plaintiffs' motion to certify class and motion for partial summary judgment, but granted summary judgment in favor of the defendants. *Id.* at 1091.  The Court of Appeals reversed the district court's grant of summary judgment to the defendants and remanded the case for a full trial on the merits. *Waldie v. Schlesinger*, 509 F.2d 508, 511 (D.C. Cir. 1974).  Defendants cite to the district court's opinion that found that the class was ill-defined "particularly with respect to those 'future' members of the class." *Edwards*, 377 F. Supp. at 1093.  *Edwards* is inapposite because the primary issues addressed in that case related to summary judgment, not class certification. *Id.* at 1094-96.  In addition, the Court finds that because the trial court's decision in *Edwards* was reversed and remanded, it has little or no persuasive value.

Similarly, the class definitions at issue in the other cases Defendants rely upon suffered from deficiencies that do not exist here because the proposed class definition in this case is more narrow and better defined. *See Vietnam Veterans Against the War v. Benecke*, 63 F.R.D. 675, 680 (W.D. Mo. 1974) (holding that a class definition of "all persons of political or social persuasion different than government officials and officers of the Kansas City, Missouri Police Department" is so vague and imprecise that it is incapable of adequate definition under Rule 23); *Hagen v. City of Winnemucca*, 108 F.R.D. 61, 63 (D. Nev. 1985) (holding that a class definition insufficient that includes a class that "would then consist of all persons whose constitutional rights have been violated by the City policies regarding prostitution in the period four years before the complaint was filed").

According to Defendants, the terms "sought to enroll" in "regular high school" calls into question whether the class includes students who never took any steps to enroll, took some steps but did not complete enrollment, or those who decided that "regular high school" was not best for them. (*Id.*). Defendants argue that individualized inquiry is necessary to determine whether each student "sought" to be enrolled in regular high school. (*Id.* at 9).

The Undersigned is not persuaded by these arguments either. Using a common-sense reading of the terms "sought enrollment" and "denied enrollment," it is clear that Plaintiffs seek to define the class as students who attempted or will attempt to enroll in Collier County's K-12 public school program, were not or will not be permitted to enroll, and who fit the other criteria set forth in the proposed class definition. The Undersigned finds that these criteria for identifying putative class members should be a manageable process that does not require much, if any, individual inquiry. Further, the Undersigned finds no basis on which to conclude that the class definition is overly broad, amorphous, or vague, or that the number of individualized determinations required to determine class membership is too administratively difficult. *See Kirts*, 2010 WL 3184382, at *6.

Defendants also argue that with respect to the EEOA claim, "the question of whether appropriate measures were taken in each case would require trying the case on the merits." (Doc. 164 at 9). The Undersigned finds that the issue of whether appropriate measures were taken within the context of the EEOA claim does not impact the sufficiency or feasibility of the proposed class definition.

Lastly, Defendants argue that the proposed class definition is a "fail-safe" class definition. (*Id.* at 10). Defendants claim that "[i]f federal law is only violated when someone affirmatively seeking enrollment in regular high school is denied that enrollment, then the class

definition is circular.  In other words, denial of those seeking enrollment is really the class of those 'whose rights were violated.'"  (*Id.* at 9-10).

"A fail-safe class is one whose definition incorporates the elements of a successful legal claim, such that determining whether an individual or entity is a member of the class 'front-ends a merits determination on [the defendant's] liability.'"  *JWD Auto., Inc. v. DJM Advisory Grp. LLC*, 218 F. Supp. 3d 1335, 1342 (M.D. Fla. 2016) (citations omitted).  The Undersigned finds that the class definition here is not circular and the proposed definition does not on its face include the elements of a successful legal claim.  Thus, the Undersigned finds that the proposed class is not an impermissible "fail-safe" class.

Accordingly, the Undersigned finds that the class definition is adequately defined and clearly ascertainable.  *See Bussey*, 562 F. App'x at 787.  The Undersigned now turns to a rigorous analysis of the Rule 23 prerequisites.  *See id.*

### 3.       Rule 23(a)(1) Numerosity

To certify a class, Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The plaintiff bears the burden of making some showing, albeit a "generally low hurdle," of "affording the district court the means to make a supported factual finding that the class actually certified meets the numerosity requirement."  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009); *Schojan v. Papa Johns Int'l, Inc.*, 303 F.R.D. 659, 664 (M.D. Fla. 2014).  Although the mere allegation of numerosity is insufficient, the plaintiff need not show a precise number of members for the putative class and, further, the rule imposes a "generally low hurdle."  *Vega*, 564 F.3d at 1267.  In dicta, the Eleventh Circuit has held, "while there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other

18

factors.'" *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (citation omitted).

Plaintiffs assert that the "proposed class is sufficiently numerous that joinder is impracticable." (Doc. 152 at 19).  According to Plaintiffs – who cite to the compilations of Leah Whitlow, a Big Data Fellow for the Southern Poverty Law Center – the proposed class will contain a minimum of 200 individuals.  (*Id.* at 20 (citing Doc. 153-3 at 16)).[9]  Plaintiffs assert that even "[m]aking the conservative assumption that one quarter of the 15-21 year olds enrolled in Adult ESOL previously sought and were denied enrollment in K-12 public school, the class still consists of at least 140 people." (Doc. 152 at 20).  Plaintiffs further assert that a total of 1,614 foreign-born students ages 15-21, who last completed schooling outside of the United States, were enrolled in Adult ESOL program in Collier County from 2013-14 through 2016-17. (*Id.* (citing Doc. 153- 3 at 9-16)).  Plaintiffs contend that a significant fraction of these students are likely class members, even discounting those who are now over twenty-one (21) years of age, did not first seek enrollment in public school, or are counted more than once for having enrolled in Adult ESOL for more than one year.  (Doc. 152 at 20).  Plaintiffs further point to the fact that Defendants found a sufficient need to establish the ELCATE Academy – within the Adult ESOL

---

[9]  Although not specifically directed to a numerosity argument, Defendants argue that Plaintiffs' statistician was not previously disclosed to Defendants as an expert in this case.  (Doc. 164 at 6). Defendants "move[] to strike the alleged statistical compilations along with the conclusions and arguments Plaintiffs make therefrom.  In any event, Plaintiffs' statistical analysis is speculative and should be ignored in light of the actual record kept by the Defendant provided above."  (*Id.*). Here, Ms. Whitlow sorted and summarized Defendants' data in a more readable format, including tables and graphs.  (*See generally* Doc. 153-3).  Ms. Whitlow does not offer any opinion concerning the data.  (*Id.*).  The Court finds that for the purposes of the Motion for Class Certification, Ms. Whitlow is not an expert that was required to be disclosed pursuant Fed. R. Civ. P. 26.  *See Sanchez-Knutson v. Ford Motor Co.*, No. 14-61344-CIV, 2016 WL 3944061, at *3 (S.D. Fla. July 11, 2016).  Thus, the Court will not strike Ms. Whitlow's declaration or attachments thereto.

program – to address the educational needs of students aged 16-21 who are in need of learning English and cannot finish regular high school within an established time frame due to gaps in their education.  (*Id.*; Doc. 152-5 at 2; Doc. 153-2 at 20).

For its part, Defendants do not specifically address or challenge numerosity.  (*See generally* Doc. 164).  Even though Defendants do not challenge numerosity, a court has the responsibility "of conducting its own inquiry as to whether the requirements of Rule 23 have been satisfied in a particular case."  *Valley Drug Co.*, 350 F.3d at 1188.  The data presented by Plaintiffs through Ms. Whitlow demonstrates that, at a minimum, a class of 140 class members is more than sufficient under Eleventh Circuit precedent to make a finding of numerosity.  *See Cox*, 784 F.2d at 1553.  Based upon this record evidence, the Undersigned finds that the numerosity requirement is amply satisfied.

### 4.    Rule 23(a)(2) Commonality

Next, Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality refers to the characteristics of the class as a whole, unlike typicality, which refers to the individual characteristics of plaintiffs in relation to the class.  *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001) (citing *Prado-Steiman*, 221 F.3d at 1279).  Commonality requires that there be some factual or legal theory that is susceptible to classwide proof.  *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009).  It also requires that "there be at least one issue whose resolution will affect all or a significant number of the putative class members."  *Williams*, 568 F.3d at 1355 (citation and quotation omitted).  Commonality may be satisfied "even with some factual variations among class members."  *Schojan*, 303 F.R.D. at 665.

Nevertheless, in the watershed case of *Wal-Mart Stores, Inc. v. Dukes*, the United States Supreme Court clarified the commonality requirement under Fed. R. Civ. P. 23 by specifically rejecting the use of generalized questions to establish commonality. 564 U.S. at 349. In *Dukes*, female employees of a retail store chain brought a class action under Title VII against their employer alleging sex discrimination. *Id.* at 343. The district court certified the class, and the Ninth Circuit Court of Appeals substantially affirmed. *Id.* at 338. The Supreme Court, however, reversed, holding that certification of the class was not consistent with Fed. R. Civ. P. 23(a). *Id.* at 367.

The Supreme Court stated that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Dukes*, 564 U.S. at 348-49. Noting that any "competently crafted class action complaint literally raises common questions," the Supreme Court focused its inquiry as follows:

> This does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways—by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution – *which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke*.

*Id.* at 350 (emphasis added). Importantly, the Supreme Court held that: "[w]hat matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the

litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at 351 (citation and internal quotation marks omitted).

Against this backdrop, the Undersigned considers whether a class may be certified as to each claim raised by Plaintiffs.  As explained more fully below, the Undersigned logically groups the claims based upon the showing needed to prove each claim, and whether the Court must delve into why Defendants denied a particular student enrollment in regular high school. Thus, the Undersigned first addresses the EEOA claim under 20 U.S.C. § 1703(f) (Count I) and the Due Process claim (Count IV).  Thereafter, the Undersigned turns to the remaining claims.

> a.       **Count I, EEOA Claim, 20 U.S.C. § 1703(f)**[10]

Plaintiffs assert that for the EEOA § 1703(f) claim, "a central question capable of classwide resolution is whether the District's exclusion of class members from K-12 public school is unlawful because it denied ELLs access to the standard instructional program."  (Doc. 152 at 22-23).  This common question, as framed, is insufficient to establish commonality under Fed. R. Civ. P. 23(a)(2).

As set forth in the Court's prior Order on the Motion to Dismiss, the elements under a § 1703(f) claim are as follows:

> An individual alleging a § 1703(f) violation must satisfy four elements:  (1) defendant is an educational agency; (2) plaintiff faces language barriers that impede his equal participation in defendant's instructional programs; (3) defendant failed to take appropriate action to overcome those barriers; and (4) plaintiff was denied equal educational opportunity on account of his national origin.

---

[10]  Plaintiffs bring claims under 20 U.S.C. §§ 1703(a) and 1703(f).  The Court discusses each of these sections separately *infra*.

*Methelus v. Sch. Bd. of Collier Cty., Fla.*, 243 F. Supp. 3d 1266, 1275 (M.D. Fla. 2017) (citing

*Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 132 (3d Cir. 2017) (citations and footnote

omitted)).

### First and Second Elements of § 1703(f) Claim

Here, there is little dispute that the School District is an educational agency.  Moreover,

there can be little dispute that the Named Plaintiffs and putative class members face language

barriers that impede their equal participation in the School District's educational program.

Further, the Undersigned finds that both of these elements are capable of classwide resolution.

Elements three and four are more problematic, however.

### Third Element of § 1703(f) Claim and the Castaneda Test

To satisfy the third element, the Fifth Circuit articulated the following three-part test in

*Castaneda v. Pickard*, 648 F.2d 989 (5th Cir. 1981):

> First, courts must "examine carefully the evidence the record contains concerning
> the soundness of the educational theory or principles upon which the challenged
> program is based."  Second, courts must decide whether the programs and practices
> "actually used" by the school system are "reasonably calculated to implement
> effectively the educational theory adopted by the school."  Third, if an otherwise
> sound and effectively implemented program fails to "produce results" indicating
> that language barriers are "actually being overcome," it may "no longer constitute
> appropriate action."

*Methelus*, 243 F. Supp. 3d at 1276 (internal citations omitted) (quoting *Castaneda*, 648 F.2d at

1010, 1012-12, 1015).  Further, schools are free to determine the "sequence and manner in which

limited English speaking students tackle this dual challenge so long as the schools design

programs which are reasonably calculated to enable these students to attain parity of

participation in the standard instructional program within a reasonable length of time after they

enter the school system."  *Castaneda*, 648 F.2d at 1011.

Here, the Undersigned finds that the legal and factual issues raised by the first two parts of the *Castaneda* test are capable of classwide resolution.  As to the first part, the soundness of the educational theory or principles upon which Defendant's Policy 5112.01 as applied to ELLs and the Adult ESOL and ELCATE programs is based is a determination that will apply equally to all members of the class.  Either the educational theory and principles on which Defendants base their policy and practice are sufficiently sound, or they are not.  The answer to that common question will be the same for each member of the class who was denied enrollment in public school pursuant to Defendant's policy and practice.

As to the second part of the *Castaneda* test, the question of whether the programs and practices actually used by Defendants here are reasonably calculated to implement the educational theory adopted by the school will likewise be answered the same way for the entire class.  Importantly, this analysis focuses on the components of the programs and practices at issue and how those programs and practices serve to implement the Defendants' educational theory.  There is no obvious need to resort to any individualized inquiry or to resolve individualized questions specific to each class member in order to evaluate Defendant's implementation of its educational theory.  Thus, the Undersigned finds that the first two parts of the *Castaneda* test are amenable to class treatment under a commonality analysis.

However, the third and final part of the *Castaneda* test does not fare as well under a rigorous analysis for commonality.  To satisfy the third part of the *Castaneda* test, Plaintiffs and the class must show that the Defendants' programs fail to produce results indicating that language barriers are actually being overcome and, thus, the programs do not constitute appropriate action.  648 F.2d at 1010.  As the court in *Castaneda* explained, "we do not believe Congress intended that under [§] 1703(f) a school would be free to persist in a policy which,

although it may have been 'appropriate' when adopted, in the sense that there were sound expectations for success and bona fide efforts to make the program work, has, in practice, proved a failure."  *Id.*

Plaintiffs have not addressed how they intend to satisfy their burden of proof on this issue.  The Undersigned finds that the third part of the *Castaneda* test is likely to necessitate highly individualized inquiries into each and every Adult ESOL and ELCATE participant's progress in those programs and their relative success or failure in overcoming language barriers. Even if Plaintiffs attempt to prove by some valid statistical methodology that the Adult ESOL and ELCATE programs are failing to produce results for the ELL participants as a group, Defendants would likely (and logically) seek to refute that proof with evidence concerning the individual facts and circumstances of each and every class member's individual experience to explain why that particular class member failed to overcome his or her language barrier.  In other words, it seems impossible to answer the question of whether the Adult ESOL and ELCATE programs are producing results indicating that language barriers are actually being overcome without delving into the highly individualized facts of each and every class member's performance in the programs and the individualized reasons for his or her relative success or failure in overcoming language barriers.

Even in a typical high school setting where language barriers are not factor, students succeed or fail academically for reasons specific to them and their unique circumstances – *i.e.*, their individual learning ability, interest level, effort, ambition, family support, economic demands, personal distractions, outside interests, behavioral issues, social influences, personal priorities, attendance record, motivation, etc. – that have nothing to do with the soundness or effective implementation of their educational program.  There is no reason to believe that the

children and young adults in the putative class here would be any different.  Because an assessment of the contested programs' ability to produce results indicating that language barriers are actually being overcome is likely to devolve into highly individualized inquiries concerning whether individual class members are obtaining results and, if not, the reasons why, the Undersigned finds that Plaintiffs cannot satisfy the commonality requirement of Fed. R. Civ. P. 23(a)(2).

*Fourth Element of § 1703(f) Claim*

To satisfy the fourth element, Plaintiffs must prove that Defendants denied them equal educational opportunity on account of their national origin.  *Issa*, 847 F.3d at 138. Conspicuously missing from this element of § 1703(f) is the word "discrimination" or the requirement to demonstrate discrimination of any kind whether intentional or not.  *Id.* at 139. Therefore, § 1703(f) "prohibits the mere failure by an educational agency to take appropriate action to overcome students' language barriers, 'regardless of whether such a failure is motivated by an intent to discriminate against those students.'"  *Id.* (citing *Castaneda*, 648 F.2d at 1011). Thus, the language "on account of" requires a nexus between the alleged lost educational opportunity and an EEOA protected characteristic such as race, color, sex, or national origin.  *Id.* at 140.  Stated differently, "the denial of the equal educational opportunity—in § 1703(f)'s case, the language barrier that is not being overcome—must stem from race, color, sex, or national origin, rather than from, for example, a cognitive disability covered by a different remedial scheme."  *Id.*

The Undersigned finds that the legal and factual issues to be determined as to the fourth element of the EEOA claim are capable of classwide resolution.  The answer to the question of whether Defendants' Policy 5112.01 denied equal educational opportunity to the putative class

members on account of their national origin will apply to the entire class.  Importantly, the class definition includes only foreign-born ELLs who claim that their placement in the Adult ESOL or ELCATE programs do not support an effective educational theory.  Any dissimilarities within the proposed class, such as an individual class member's native language or specific national origin, will not impede the common answer to the common question.

*Conclusion*

Accordingly, the Undersigned finds that Plaintiffs have not satisfied the Fed. R. Civ. P. 23(a)(2) prerequisites as to Plaintiffs' EEOA claim, 20 U.S.C. § 1703(f).  Plaintiffs did not establish that a common question of law or fact is common to the class as a whole regarding the third part of the *Castaneda* test under the third element of the § 1703(f) claim – *i.e.*, whether an otherwise sound and effectively implemented program fails to produce results indicating that language barriers are actually being overcome.  Thus, the Undersigned finds that Plaintiffs have not satisfied the commonality requirement of Fed. R. Civ. P. 23(a)(2).

### b.      Count IV, Due Process Claim

Plaintiffs assert that for the Due Process claim, the common question is "whether the class members are denied adequate notice and an opportunity to be heard following a denial of enrollment under Policy 5112.01."  (Doc. 152 at 23).  For their part, Defendants do not appear to address the propriety of class certification as to this claim.

The Fourteenth Amendment in part prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "To state a procedural due process claim, Plaintiffs must show a deprivation of a constitutionally protected liberty or property interest."  *Methelus*, 243 F. Supp. 3d at 1280.  Florida gives students a statutory and state constitutional right to a public education and,

27

thus, treats the right to education as a property interest protected by the Fourteenth Amendment.  *Id.*  Arguably, therefore, Defendants may not arbitrarily deprive Plaintiffs and putative class members of their education without a minimum amount of due process, which includes notice and an opportunity to be heard, appropriate to the nature of the case. *Id.*

In the Second Amended Complaint, Plaintiffs allege that Defendants' "lack of any procedures following denial of enrollment is constitutionally inadequate.  Defendant denied Plaintiff Children, and all others similarly situated, the right to attend public school without any procedures, including notice, an opportunity to be heard, or an avenue to challenge an adverse determination." (Doc. 76 at 46-47 ¶ 174).  Plaintiffs further allege that Defendants deny "Plaintiff Children, and similarly situated students, notice and an opportunity to be heard regarding their denial of public school enrollment and related educational opportunities."  (*Id.* at 47 ¶ 175).  Plaintiffs also contend that Defendants "acted pursuant to a custom, policy, and practice in depriving Plaintiff Children, and all others similarly situated, of a public education without notice or opportunity to be heard." (*Id.* at 47 ¶ 176).

Defendants have not explained whether they have any such procedure.  According to Defendants, Dr. Ricciardelli makes the final recommendation as to enrollment and then relays this recommendation to the enrollment specialist who communicates it to the parents.  (Doc. 155-5 at 7, 10).  The enrollment specialist cannot disregard Dr. Ricciardelli's recommendation.  (*Id.*). If the parent or family has questions beyond what the enrollment staff can answer, then the staff gives the parent or family contact information for Dr. Ricciardelli.  (*Id.* at 12-13)  When a family contacts Dr. Ricciardelli, she talks to them and explains her recommendation.  (Doc. 155-

1 at 10).  This evidence suggests that no appeal procedure existed because although Ricciardelli would explain her recommendation if a parent or family had questions, her recommendation was deemed "final" with no further opportunity for dissatisfied parents or family to appeal.

The Undersigned finds that the Due Process claim, as it is framed in Count IV of the operative Complaint, is capable of classwide resolution under the commonality element of Fed. R. Civ. P. 23(a)(2).  Plaintiffs claim that the School District lacked *any* procedures to contest the denial of enrollment in public high school.  Further, I.A. and Nehemy claim that they were not given an opportunity to challenge or appeal the decision not to enroll in regular public high school.  (Doc. 155-10 at 6 ¶ 20; Doc. 155-9 at 4 ¶ 17).  In other words, Plaintiffs' theory of liability under Count IV of the operative Complaint rests on the alleged *total absence* of any procedure to contest the denial of enrollment in public high school.  The question of whether Defendants have any such procedure is one that applies equally to all putative class members.  Moreover, the answer to that question also applies equally to all putative class members.  Additionally, the question of whether the putative class members have a property right to enrollment in public school also applies equally to every putative class member and will be answered the same way for every putative class member.  Further, if Plaintiffs succeed in proving that the Defendants lacked any procedure to appeal a denial of enrollment, then the question of whether class members were denied adequate notice and an opportunity to be heard following a denial of enrollment will likewise apply equally to the entire class and will be answered the same for all putative class members.[11]

---

[11]  If Plaintiffs later attempt to change their theory of liability in Count IV to attempt to challenge the sufficiency of any existing procedure(s) or the sufficiency of the notice they received and their opportunity to be heard, then any class certified under Count IV would likely need to be *de-*

Accordingly, the Undersigned finds that Plaintiffs have satisfied the Fed. R. Civ. P. 23(a)(2) prerequisite of commonality as to Plaintiffs' procedural Due Process claim under the Fourteenth Amendment to the U.S. Constitution.

### c.   Remaining Claims

The Undersigned groups the remaining claims together because all of these claims involve the issue of why Defendants denied enrollment to Plaintiffs and putative class members in regular high school.  The Undersigned addresses the elements of each of the remaining claims in turn and then addresses whether common questions and answers apply to the putative class members.

*Count I, EEOA, 20 U.S.C. § 1703(a)*

Plaintiffs allege that Defendants' practices violate two (2) sections of the EEOA, 20 U.S.C. §§ 1703(a) and (f).  (Doc. 152 at 3).  The Court addressed § 1703(f) above at length and now turns to § 1703(a).  Pursuant to 20 U.S.C. § 1703(a), "[n]o State shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by – (a) the deliberate segregation by an educational agency of students on the basis of race, color, or national origin among or within schools."  Thus, this section requires intentional and deliberate acts of discrimination.  *See Castaneda*, 648 F.2d at 1001.[12]

---

*certified* because individualized issues as to, *inter alia*, what each class member was or was not told about the availability of Defendants' procedures, whether each class member availed himself or herself of those procedures, and the result of those procedures in each individual case would require highly individualized inquiries and defeat commonality.

[12]  As to the EEOA claims in general, Plaintiffs posit only one central common question, "whether the District's exclusion of class members from K-12 public school is unlawful because it denies ELLs access to the standard instructional program," citing *Castaneda*, 648 F.2d at 1011. (Doc. 152 at 22-23).  This question arguably applies to 20 U.S.C. § 1703(f) and does not appear directed to § 1703(a).  However, Plaintiffs also state that "[i]f the exclusion of one class member from public school is unlawful under the EEOA, then the exclusion of all class members is

*Counts II and III, Title VI and Equal Protection Claims*

Courts consider Title VI claims and Equal Protection claims under the same analytical framework.  *Methelus*, 243 F. Supp. 3d at 1280.  Thus, the Undersigned considers these claims together.  As to these claims, Plaintiffs assert that at least one central question is capable of classwide resolution:  "The questions of whether Policy 5112.01 has a disproportionate adverse impact or may be traced to a discriminatory purpose will generate common answers for all class members."  (Doc. 152 at 23).

Under the Equal Protection clause, the Fourteenth Amendment prohibits states from denying "any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  Title VI of the Civil Rights Act provides:  "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  "To state a claim for discrimination under this statute, a plaintiff must plausibly allege that the (1) defendant discriminated based on national origin; (2) discrimination was intentional; and (3) discrimination was a substantial or motivating factor for the defendant's actions."  *Methelus*, 243 F. Supp. 3d at 1277.  Thus, these claims require a showing of intentional discrimination and that discrimination was a motivating factor for Defendants' actions.  *See id.*

*Count V, FEEA Claim*

Plaintiffs assert that a common question under the FEEA is whether Policy 5112.01's criteria for admission in a K-12 public school has the effect of restricting access

_____

unlawful."  (Doc. 152 at 23).  The Undersigned construes this statement as a common question directed to the § 1703(a) claim.

by persons of a particular national origin from the K-12 public school system in Collier County.  (Doc. 152 at 23).  The purpose of the FEEA is to prohibit discrimination based on, *inter alia,* national origin against any student in the state public school system.  *C.P. v. Leon Cty. Sch. Bd.*, No. 4:03 CV 65 RH/WCS, 2005 WL 2133699, at *4 (N.D. Fla. Aug. 27, 2005).  The FEEA provides in relevant part:

> (2)(a) Discrimination on the basis of race, ethnicity, national origin, gender, disability, or marital status against a student or an employee in the state system of public K-20 education is prohibited.  No person in this state shall, on the basis of race, ethnicity, national origin, gender, disability, or marital status, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any public K-20 education program or activity, or in any employment conditions or practices, conducted by a public educational institution that receives or benefits from federal or state financial assistance.

> (b) The criteria for admission to a program or course shall not have the effect of restricting access by persons of a particular race, ethnicity, national origin, gender, disability, or marital status.

> (c) All public K-20 education classes shall be available to all students without regard to race, ethnicity, national origin, gender, disability, or marital status; however, this is not intended to eliminate the provision of programs designed to meet the needs of students with limited proficiency in English, gifted students, or students with disabilities or programs tailored to students with specialized talents or skills.

Fla. Stat. §§ 1000.05 (2)(a)-(c).  To establish a violation of the FEEA, Plaintiffs must show that Defendants' discriminated against Named Plaintiffs and the putative class members.

*Commonality Analysis as to the Remaining Claims*

All of the above claims include an element of proof as to discrimination.  Thus, the crux of these claims asks why Defendants denied Plaintiffs and putative class members enrollment in regular high school.

Defendants argue that the School District employs a number of factors to determine whether students are eligible to attend regular high school.  (Doc. 164 at 13).  In this regard,

Defendants cite to Christopher Smith's declaration.  *Id.*  As a Coordinator of School Counseling for grades 9-12 in Collier County, Christopher Smith states that he reviews:  (1) transcripts of students from foreign countries; (2) manuals and course credit evaluations; (3) school system structures; (4) progression; and (5) promotion relative to multiple countries worldwide.  (Doc. 164-6 at 1 ¶ 2).  He reviews them in conjunction with Dr. Ricciardelli.  (*Id.*).  Mr. Smith also meets with translators to review and compare original and translated versions of the school transcript to understand a student's academic work in relation to a particular country's standards and requirements.  (*Id.* at 2 ¶ 4).  Mr. Smith reviews transcripts of students from other countries to determine the number of credits they have earned for courses taken and completed and then compares them to the standards required in Florida.  (*Id.*).  Mr. Smith also spends additional time with paperwork from students who are seventeen (17) years of age or older to verify that they are able to complete high school in accordance with the maximum age requirements set forth in Policy 5112.01.  (*Id.* at 3 ¶ 5).  Thus, Mr. Smith as well as other employees of the School District carefully scrutinize the transcripts and paperwork from students seeking to enroll in high school to attempt to determine the students' best placement.  (*Id.* at 2 ¶ 4).

In this case, Named Plaintiffs' academic backgrounds and other educational factors differ from each other.  For example, I.A. finished the "tercero básico" grade in Guatemala, missed approximately three full quarters of coursework for the year, and tested into a Level 2 English class.  (Doc. 155-10 at 3 ¶ 7; Doc. 155-1 at 17; Doc. 155-10 at 5 ¶¶ 23, 24).  Nehemy, on the other hand, came from Haiti, was enrolled in grade "9em" in Haiti, progressed in English in the past year to allow him to take GED practice tests, and attends the Florida Virtual School.  (Doc. 155-9 at 2 ¶ 4; *Id.* at 3 ¶ 9; *Id.* at 6 ¶¶ 25, 26, 27; *Id.* at 8 ¶ 38).  To place both I.A. and Nehemy,

Defendants reviewed each student's individualized characteristics, including age, educational history, English ability, and other factors to determine their placement.

Here, the legal and factual issues for the claims under EEOA 20 U.S.C. § 1703(a) (Count I), Title VI (Count II), Equal Protection (Count III), and FEEA (Count V) are not capable of classwide resolution because Plaintiffs have not met their burden of showing that the commonality requirement of Fed. R. Civ. P. 23(a)(2) is satisfied as to these claims.

Even though Plaintiffs argue that Policy 5112.01 applies to Plaintiffs and putative class members equally, the class-certification record shows that Defendants actually review the qualifications of each student individually to determine whether he or she is eligible for placement in regular high school. Prior to May 2016, the principals of each school had discretion to determine whether a student was eligible to attend that school. After May 2016, the School District employees have discretion to determine whether a student meets the eligibility requirements to attend regular high school. Each individual student's academic qualifications, including their (1) educational grade level; (2) ability to speak, read, and write English; and (3) educational gaps, as well as other factors, were utilized to determine a student's enrollment. Under these circumstances, where enrollment grants or denials are being made following highly individualized assessments of each putative class member's individual characteristics and the exercise of discretion by different decisionmakers, proving discriminatory intent or disproportionate adverse impact (as well as proving the defenses to those claims) would require highly individualized proof. *See Dukes*, 564 U.S. at 350.

Stated differently, Plaintiffs fail to provide the glue necessary to hold the putative class claims together under the commonality analysis for Plaintiffs' EEOA 20 U.S.C. § 1703(a)

(Count I), Title VI (Count II), Equal Protection (Count III), and FEEA claims (Count V).  *See id. at 352*.  Thus, Plaintiffs fail to establish the prerequisite of commonality as to these claims.

### 5.      Rule 23(a)(3) Typicality

Rule 23(a) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  *Fed. R. Civ. P. 23(a)(3)*.  "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3).  . . .  [T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large."  *Cooper*, 390 F.3d at 713 (quoting *Prado-Steiman*, 221 F.3d at 1279).  Traditionally, commonality refers to the group characteristics of the class as a whole, whereas typicality refers to the individual characteristics of plaintiffs in relation to the class.  *Id.*  All putative class members are not required to share identical claims, and factual differences among the claims of the putative class do no defeat certification.  *Id.* (citation omitted).  Nonetheless, Plaintiffs' claims must share the same "essential characteristics as the claims of the class at large."  *Id.* (citations omitted).

"The claim of a class representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory."  *Williams*, 568 F.3d at 1357 (citing *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)).  "Thus, typicality is often met when, in proving her case, the representative plaintiff establishes the elements needed to prove the class members' case."  *Colomar v. Mercy Hosp., Inc.*, 242 F.R.D. 671, 677 (S.D. Fla. 2007).  To determine typicality, the Undersigned again separates the Due Process and § 1703(f) claims and then turns to the remaining claims.

Plaintiffs generally assert that the claims of I.A. and Nehemy are typical of the putative class members' claims.  (Doc. 152 at 26).  Plaintiffs state that Named Plaintiffs' claims, like class members' claims, "challenge the District's practice, pursuant to Policy 5112.01, of denying enrollment to substantial numbers of foreign-born ELLs whose previous schooling was outside the United States."  (*Id.*).  Further, Plaintiff's contend that Named Plaintiffs, like class members, "challenge the absence of adequate procedures for appealing a denial of enrollment pursuant to Policy 5112.01."  (*Id.*).  Likewise, Named Plaintiffs' and class members' claims arise under the EEOA, Title VI, the Equal Protection clause, the Due Process clause, and the FEEA.  (*Id.*).

Defendants, on the other hand, assert that typicality is "not present, if the class representative's claim is subject to unique defenses."  (Doc. 164 at 16).  Defendants also state that "[a]ccording to the Report and Recommendation, Plaintiffs themselves have not been harmed," and "Plaintiffs' unique educational issues will undoubtedly preoccupy the litigation on the merits."  (*Id.*).

### a.      Count I, EEOA 20 U.S.C. § 1703(f) Claim

Here, Defendants allegedly denied enrollment in regular high school to both Named Plaintiffs and putative class members.  The focus of the § 1703(f) claim is not on why Defendants denied the Named Plaintiffs and putative class members enrollment in a regular high school.  The focus is on whether the particular programs in which Defendants enrolled Named Plaintiffs and the putative class members – *i.e.*, the Adult ESOL and the ELCATE Academy – constitute standard instructional programs.  (Doc. 152 at 22-23).

The Court set forth the elements of the § 1703(f) claim, including the *Castaneda* test applicable to the third element of the claim, in detail in the commonality section above.  *See* Discussion Part II.A.4.a *supra*.  As with commonality, the problematic elements under a rigorous

36

typicality analysis are the third and fourth elements of the § 1703(f) claim—namely, whether Defendants failed to take appropriate action to overcome language barriers and whether Defendants denied equal educational opportunity on account of national origin.  *Methelus*, 243 F. Supp. 3d at 1275.

I.A.'s and Nehemy's claims are not typical of the class under the third element of the § 1703(f) claim and the Fifth Circuit's *Castaneda* test because in proving their individual cases, Plaintiffs will not establish the elements needed to prove the class members' cases.  Specifically, Plaintiffs must show under *Castaneda* that even if the ELCATE Academy and/or the Adult ESOL program are sound and effective, these programs fail to produce results indicating that language barriers are actually being overcome.  *See Methelus*, 243 F. Supp. 3d at 1276. Plaintiffs do not address how they intend to prove this element on a classwide basis by proving their own claims.  Even if Plaintiffs succeed in proving that the Adult ESOL and ELCATE programs failed to produce results for them and failed to help them actually overcome their language barriers, they will not necessarily prove that other students participating in the programs were unable to overcome their specific language barriers for the same reasons.  There may be other reasons Defendants cite to explain why other class members failed to obtain results from the programs.  Those other reasons – which would be highly individualized, specific to each individual class member, and require a case-by-case determination – will certainly give rise to unique defenses to liability under § 1703(f) to each class member's individual claim. Defendants are entitled to assert those unique defenses, which would destroy typicality. Accordingly, the Undersigned finds that Named Plaintiffs' claims are not typical of the class at large.

As for the fourth element of the § 1703(f) claim, the Undersigned finds that I.A's. and Nehemy's claims are typical of the class.  If I.A. and Nehemy establish a nexus between their national origin and the actions of the School District in allegedly not affording an effective educational opportunity, then I.A. and Nehemy will establish this element for the putative class. Any dissimilarities in national origin of putative class members will not impede typicality.

Accordingly, the Undersigned finds that Plaintiffs have not demonstrated typicality as to the § 1703(f) claim (Count I) because this claim is subject to individualized proof and unique defenses.

### b.  Count IV, Due Process

In the Due Process claim, Named Plaintiffs focus on whether Defendants provide a process for appealing Defendants' decision, and not on why any single decision to deny enrollment may have been improper or illegal.  (Doc. 155-10 at 6 ¶ 20; Doc. 155-9 at 4 ¶ 17). Named Plaintiffs assert that Defendants did not afford them notice and the opportunity to challenge or appeal the decision not to allow them to enroll in regular high school.  (*Id.*).  Named Plaintiffs also contend that the School District lacked a custom, policy, and practice of affording students notice and an opportunity to be heard regarding the student's denial of public school enrollment.  (Doc. 76 at 46-47 ¶¶ 174-76).  If Named Plaintiffs prove that Due Process requires Defendants to provide notice and an opportunity to be heard, then this proof will resolve the claim for the putative class members as well.

Thus, the Undersigned finds that Plaintiffs have satisfied the prerequisite for typicality as to the Due Process claim (Count IV).[13]

---

[13]  As indicated *supra* at foonote 10, if Plaintiff's theory of liability under Count IV changes, the class would likely need to be decertified under both the commonality and typicality elements of Fed. R. Civ. P. 23(a).  Although the Named Plaintiffs here contend that they were not told of any

### c.  Remaining Claims

Plaintiffs fail to establish the typicality requirement for the EEOA claim under 20 U.S.C. § 1703(a) (Count I), the Title VI claim (Count II), the Equal Protection claim (Count III), and the FEEA claim (Count V).  To prove each of these claims, Named Plaintiffs must prove discrimination by Defendants in making the decision not to enroll Named Plaintiffs and putative class members in regular high school.  *See* 20 U.S.C. § 1703(a); *Methelus*, 243 F. Supp. 3d at 1277, 1280; U.S. Const. amend. XIV, § 1; Fla. Stat. § 1000.05(2).  To prove discrimination, Named Plaintiffs must demonstrate that there are intentional and/or deliberate acts of discrimination and these acts led to Defendants not enrolling I.A. and Nehemy in regular high school.

The reasons why Defendants denied each Named Plaintiff and each individual class member enrollment in regular high school require consideration of the age of the individual, the education of the individual, any gap in education of the individual, the English language ability of the individual, as well as other factors.  (Doc. 164-6 at 2 ¶ 4; Doc. 164-4 at 3 ¶ 5).  The Named Plaintiffs illustrate this.  As stated above and bears repeating here, I.A. finished the "tercero básico" grade in Guatemala, missed approximately three full quarters of coursework for the year, and tested into a Level 2 English class.  (Doc. 155-10 at 3 ¶ 7; Doc. 155-1 at 17; Doc. 155-10 at 5 ¶¶ 23, 24).  Nehemy, on the other hand, came from Haiti, was enrolled in grade

---

procedure to appeal Defendant's decision to deny them regular high school enrollment (Doc. 155-9 at 4 ¶ 17; Doc. 155-10 at 6 ¶ 20), such claims would not be typical of class members who, for example, (1) were told of any such procedure but voluntarily chose not to pursue it or (2) were told of any such procedure, pursued it, but still claim the procedure violated due process. In other words, by proving that they were not told of any procedure to appeal, the Named Plaintiffs would not necessarily prove the due process claims of other class members who may have been told and either chose not to pursue it or chose to pursue it and have other complaints about the process.

"9em" in Haiti, progressed in English in the past year to allow him to take GED practice tests, and attends the Florida Virtual School.  (Doc. 155-9 at 2 ¶ 4; *Id.* at 3 ¶ 9; *Id.* at 6 ¶¶ 25, 26, 27; Doc. 155-9 at 8 ¶ 38).  To place I.A. and Nehemy, Defendants conducted an individualized review of I.A.'s and Nehemy's age, educational history, English ability, and other factors.  In defending against the claims of discrimination, Defendants will rely on the factors considered for each Named Plaintiff and each and every member of the putative class.  (Doc. 162 at 10-14).  As Defendants argue in their opposition brief, "[t]he reasons for the particular educational placement decision are as unique as are the students themselves."  (*Id.* at 11).  "Appropriate educational decisions require individualized determinations."  (*Id.* at 12).

Although Named Plaintiffs are not required to share factually identical claims, they nonetheless must share the same essential characteristics as the claims of the class at large. *Cooper*, 390 F.3d at 713.  Here, Plaintiffs have not met their burden to show that their remaining discrimination claims are typical of the claims of the putative class members because each Named Plaintiff and each putative class member will potentially be subject to unique defenses based on their individual characteristics.  Accordingly, the Undersigned finds that Plaintiffs have not met their burden to establish typicality for the claims under 20 U.S.C. § 1703(a) (Count I), Title VI (Count II), the Equal Protection clause (Count III), and the FEEA (Count V).

### 6.    Rule 23(a)(4) Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement applies equally to the class representatives and counsel.  *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003).  The adequacy of representation requirement encompasses two separate inquiries:  (1) whether there are substantial conflicts of interest between the named

representatives of the class and the class members; and (2) whether the representatives will adequately prosecute the action.  *Valley Drug Co.*, 350 F.3d at 1189.  If substantial conflicts exist between the class representatives and the putative class members, then class certification is inappropriate.  *Id.*  Minor conflicts alone will not defeat a party's claim for class certification, the conflict must be fundamental.  *Id.*  The Court turns to each element for adequacy of representation beginning with whether substantial conflicts of interest exist and then addresses whether Named Plaintiffs will adequately represent the class.

Plaintiffs assert that they will fairly and adequately represent the class.  (Doc. 152 at 28). Plaintiffs claim that their interests align with those of the class members and present no danger of a substantial conflict of interest.  (*Id.*).  Plaintiffs also claim that they "are foreign-born ELLs who are being denied a regular public school education in Collier County, and they seek to enjoin Defendants' practice of denying enrollment to similarly-situated individuals pursuant to Policy 5112.01." (*Id.*).  Defendants do not address the issue of whether Plaintiffs or their counsel have substantial conflicts of interests with putative class members.  (*See generally* Doc. 164 at 16-19).

Here, the Undersigned finds no basis to conclude that Named Plaintiffs have substantial conflicts of interests with putative class members.  Plaintiffs are foreign-born ELLS who Defendants denied enrollment in regular high school in Collier County and seek to enjoin Defendants' practice of denying enrollment to similarly-situated individuals under Policy 5112.01.  No apparent conflict exists.  In addition, the Undersigned finds no basis on which to conclude that there are substantial conflicts of interest between Plaintiffs' counsel, the Named Plaintiffs, and putative class members.  Accordingly, Plaintiffs have met their burden for the first element of adequacy of representation.

Next, Plaintiffs must show that the representatives will adequately prosecute the action. *Valley Drug Co.*, 350 F.3d at 1189. The Court first addresses whether proposed class counsel will adequately protect the interests of the class and then turns to the contested issue of whether I.A. and Nehemy will adequately represent the putative class.

Pursuant to Rule 23(g)(4), class counsel must fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(4). When appointing class counsel, a court must consider the following: "i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). Further, a court may consider any other matter that is pertinent to counsel's ability to represent the interests of the class fairly and adequately. Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs' counsel assert that they are from the Southern Poverty Law Center ("SPLC"), a non-profit civil rights firm that provides services in this case on a *pro bono* basis. (Doc. 152 at 31). Plaintiffs' counsel claim that SPLC has extensive experience in prosecuting federal civil rights actions, including serving as class counsel and representing immigrant plaintiffs. (*Id.*). Specifically, attorney Michelle Lapointe has over nine (9) years of federal civil rights litigation experience on behalf of immigrants and supervises attorneys Gillian Gillers and Viviana Bonilla López in this case. (*Id.*). Further, counsel have identified and investigated potential claims in this case, have and will contribute substantial resources to this case, and will vigorously litigate this action. (*Id.* at 31-32). For their part, Defendants did not specifically address the issue of the adequacy of counsel.

The Undersigned finds that Plaintiffs' counsel have demonstrated that they have diligently worked to identify and investigate potential claims, that they have attorneys with experience in handling complex litigation containing immigrant issues, that they are knowledgeable of the applicable law, and that they have the resources needed to commit to representing the class. Accordingly, the Undersigned finds that Plaintiffs' counsel will fairly and adequately represent the putative class. Next, the Court addresses the issue of whether I.A. and Nehemy will adequately represent the putative class.

I.A. and Nehemy assert that they will adequately prosecute this case on behalf of the class. (Doc. 152 at 29). In support of this assertion, I.A. and Nehemy claim that they have appeared for depositions, responded to written discovery requests, appeared for a court hearing, and will provide additional discovery as needed. (*Id.*). I.A., her guardian and next friend Marta Alonzo, and Nehemy claim to understand that they represent the interests of the other class members. (*Id.*).

Defendants argue that Nehemy Antoine is not an adequate class representative. Defendants argue that Nehemy does not understand his role in the lawsuit, does not understand the meaning of a complaint, does not know the meaning of the term "class action," does not spend much time with his attorneys, does not search for documents in response to a request for production, does not know the meaning of the term "injunction," does not know whether he seeks money damages, does not know any of the claimed violations in this case, cannot name the other Plaintiff in this case, does not know the name of Defendants, and does not know the status of the litigation. (Doc. 164 at 18). Defendants also contend that I.A. knows even less than Nehemy. (*Id.*). Defendants claim that I.A. only knew she wanted a normal education and otherwise "demonstrated a paucity of knowledge about the lawsuit." (*Id.*). Defendants argue

that Plaintiffs have not produced sufficient evidence that they can represent the interests of the proposed class.  (*Id.* at 19).

"To satisfy the adequacy requirement, the named plaintiff and her counsel must demonstrate that they will adequately protect the interests of the putative class."  *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 517 (S.D. Fla. 2013) (citing *Valley Drug Co.*, 350 F. 3d at 1187).  However, it is well-settled that it is not necessary for the named class representatives to be "'knowledgeable, intelligent or have a firm understanding of the legal or factual basis on which the case rests in order to maintain a class action.'"  *Id.*

In their affidavits, I.A. and Nehemy clearly understand that they attempted to enroll in regular high school, but were told that they were not eligible to enroll.  (Doc. 155-9 at 3 ¶¶ 10, 14; Doc. 155-10 at 2 ¶10; Doc. 155-10 at 4 ¶¶ 16, 17).  They both enrolled in Adult ESOL classes.  (Doc. 155-9 at 5 ¶ 20; Doc. 155-10 at 5-6 ¶ 22).  Nehemy and I.A. want to obtain regular high school diplomas.  (Doc. 155-9 at 5 ¶ 19; Doc. 155-10 at 9 ¶ 37).  Further, I.A. and Nehemy appeared for their depositions and provided affidavits in this case.  (Doc. 155-9; Doc. 155-10; Doc. 164-9; Doc. 164-10).  Thus, even if I.A. and Nehemy do not have a firm understanding of the legal or factual basis of this lawsuit, they do understand that they were denied access to attend regular high school, they continue to wish to attend regular high school, and they play active roles in this litigation.  Accordingly, the Undersigned finds that I.A. and Nehemy, along with their counsel, will adequately prosecute this case on behalf of the class.

The Undersigned finds that there are no substantial conflicts of interest between Plaintiffs and the class members or that Plaintiffs and their counsel will fail to adequately prosecute this action.  *See Valley Drug Co.*, 350 F.3d at 1189.  Accordingly, the Undersigned finds Plaintiffs met the adequacy of representation requirement.  *See* Fed. R. Civ. P. 23(a)(4).

**B.      Fed. R. Civ. P. 23(b)(2)**

Once parties meet all of the requirements of Rule 23(a), then they must satisfy one of the

requirements of Rule 23(b).  *Valley Drug Co*., 350 F.3d at 1188.  Here, Plaintiffs seek

certification under Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) permits class treatment when "the

party opposing the class has acted or refused to act on grounds that apply generally to the class,

so that final injunctive relief or corresponding declaratory relief is appropriate respecting the

class as a whole."  Fed. R. Civ. P. 23(b)(2).  "The key to the (b)(2) class is 'the indivisible nature

of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can

be enjoined or declared unlawful only as to all of the class members or as to none of them."

*Dukes*, 564 U.S. at 360 (citation omitted).  Stated differently, Rule 23(b)(2) applies only when a

single injunction or declaratory judgment provides relief to each class member.  *Id.*  Conversely,

Rule 23(b)(2) does not authorize class certification when each individual class member would be

entitled to a different injunction or declaratory judgment against the defendant.  *Id.*

In their Second Amended Complaint, Plaintiffs' detail the litany of declaratory and

injunctive relief they seek.  (Doc. 76 at 49-52).

Against this backdrop, the Court considers whether a class may be certified under Rule

23(b)(2) as to each claim raised by Plaintiffs.  The Court again logically groups the claims – as it

did under the Rule 23(a) analysis – by separately addressing the EEOA § 1703(f) (Count I) and

Due Process (Count IV) claims and then turning to the remaining claims under the EEOA §

1703(a) (Count I), Title VI (Count II), Equal Protection (Count III), and FEEA (Count V).

**1.      Count I, EEOA 20 U.S.C. § 1703(f) Claim**

Regarding the § 1703(f) claim, for brevity the Court will not repeat the elements set forth

at length in the Rule 23(a)(2) commonality discussion above.  Discussion Part II.A.4.a *supra*.

Suffice it to say that the contested third element – whether Defendants failed to take appropriate action to overcome the language barriers to allow equal participation in instructional programs – does not satisfy the Fed. R. Civ. P. 23(b)(2) requirements.  Under the *Castaneda* test, to determine whether the ELCATE Academy and/or Adult ESOL programs produce results indicating that language barriers are actually being overcome requires individualized inquiry into the progress of each student.  Some students may have obtained results (or varying degrees of results as illustrated by the Named Plaintiffs' differences), and others may not have obtained any results for a variety of reasons.  All of that remains to be demonstrated on the merits.  In light of this, however, it appears that a single injunction or declaratory judgment relating to the § 1703(f) could not be crafted to provide relief to each and every class member.

Plaintiffs, for their part, have not explained how a single injunction or declaratory judgment could be crafted to provide classwide relief.  Arguably, different injunctions or declaratory judgments tailored to each individual class member would be required to address each individual class members' situation.  This is bolstered by the specific language Plaintiffs use in the Second Amended Complaint to describe generally the injunctive relief they seek relating to the EEOA claim.  (*See* Doc. 76 at 51).  Plaintiffs ask for "injunctive relief in the form of:  (1) Requiring Defendants to take affirmative steps to enroll Plaintiff Children, and similarly situated students, in an age-appropriate, public school setting." (*Id.*).  Determining what "affirmative steps" will be needed for any particular class member, determining age-appropriateness for any particular class member, and determining what specific public school setting is appropriate for any particular class member would all require individual inquiries and individually crafted relief.  For that reason, Plaintiffs have not shown that certification pursuant to Fed. R. Civ. P. 23(b)(2) is appropriate.

Accordingly, the Undersigned finds that Plaintiffs fail to establish the Fed. R. Civ. P. 23(b)(2) requirements for class certification as to this claim.

### 2.    Count IV, Due Process Claim

For many of the same reasons that the Undersigned finds that the Due Process claim satisfies the Fed. R. Civ. P. 23(a) prerequisites, so too does it satisfy the Fed. R. Civ. P. 23(b)(2) requirements.

In addressing the Due Process claim, Plaintiffs must show that Defendants deprived them of a constitutionally protected liberty or property interest without notice and an opportunity to be heard. *Methelus*, 243, F. Supp. 3d at 1280. The issues of whether Plaintiffs and putative class members have a property interest or were afforded notice and an opportunity to challenge or appeal the decision not to enroll them in regular high school are matters that can be enjoined or declared unlawful as to all of the class members or as to none of them. *See Dukes*, 564 U.S. at 360.

Thus, the Undersigned finds that Plaintiffs have satisfied the Fed. R. Civ. P. 23(b)(2) requirements for class certification as to the Due Process claim.

### 3.    Remaining Claims

For many of the same reasons that the Undersigned finds that the EEOA claim under 20 U.S.C. § 1703(a) (Count I), the Title VI claim (Count II), the Equal Protection claim (Count II), and the FEEA claim (Count V) do not satisfy some of the Fed. R. Civ. P. 23(a) prerequisites, so too the Undersigned finds that these claims do not satisfy the Fed. R. Civ. P. 23(b)(2) requirements. To prove each of these claims, Plaintiffs must demonstrate that Defendants discriminated against Named Plaintiffs and putative class members in making the decision not to enroll them in regular high school. *See* 20 U.S.C. § 1703(a); *Methelus*, 243 F. Supp. 3d at 1277,

1280; U.S. Const. amend. XIV, § 1; Fla. Stat. § 1000.05(2).  The reasons why Defendants denied enrollment to Named Plaintiffs and putative class members requires individualized inquiry into the educational background of each student, gaps in education, and English proficiency, as well as other factors such as age.  Thus, Plaintiffs have not shown that Defendants acted or refused to act on grounds that apply generally to the class.  *See* Fed. R. Civ. P. 23(b)(2).  Further, Plaintiffs have not demonstrated that a single injunction or declaratory remedy is appropriate for the entire class.  Due to the differences in educational experiences, even if Plaintiffs prevail, the placement of Plaintiffs and putative class members into a public educational system arguably will require an individualized assessment for each student and will not lend itself to a single injunction or declaratory relief.  Thus, the Undersigned finds that Plaintiffs fail to establish the Fed. R. Civ. P. 23(b)(2) requirements for class certification as to these claims.

## CONCLUSION

In sum, the Undersigned finds that Plaintiffs demonstrate that the requirements of Rule 23(a) and 23(b)(2) are met for the Due Process claim (Count IV).  Thus, class certification is appropriate as to this claim.  Otherwise, the Court finds that none of the remaining claims (Counts I-III and V) are appropriate for class treatment for the reasons explained above.  Thus, class certification should be granted as to Count IV and denied as to all other claims.

Accordingly, it is **RESPECTFULLY RECOMMENDED** that:

1) The Motion for Class Certification be **GRANTED in part and DENIED in part** as follows:

    a) The Motion for Class Certification be **GRANTED** as to the Due Process claim (Count IV);

    b) The Motion for Class Certification be **DENIED** as to all other claims asserted.

Respectfully **RECOMMENDED** in Chambers in Ft. Myers, Florida on August 8, 2018, 2018.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE


## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.


Copies furnished to:

Counsel of Record
Unrepresented Parties