UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARTA ALONSO and NEHEMY
ANTOINE, as next friend on behalf of
I.A., on behalf of themselves and all
others similarly situated,

       Plaintiffs,

v.                                 Case No: 2:16-cv-379-FtM-38MRM

THE SCHOOL BOARD OF COLLIER
COUNTY, FLORIDA and KAMELA
PATTON,

       Defendants.
_____/

## AMENDED[1] OPINION AND ORDER[2]

Before the Court is United States Magistrate Judge Mac R. McCoy's Report and Recommendation ("R&R"). (Doc. 183). Judge McCoy recommends granting in part and denying in part the Motion for Class Certification filed by Plaintiffs Nehemy Antoine and Marta Alonzo, on behalf of I.A., a minor. Plaintiffs object to the R&R (Doc. 185), and Defendants School Board of Collier County, Florida and Kamela Patton have responded

---

[1] The Court amends its previous Opinion and Order (Doc. 198) to correct only a typographical error in the second paragraph of the ordered clause.

[2] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

to the objections (Doc. 193). For the following reasons, the Court accepts and adopts the R&R.

## BACKGROUND

The Report and Recommendation makes factual findings and recounts this case's procedural history, both of which the Court adopts. A detailed review of that information is unnecessary. For completeness and context, however, the Court will highlight relevant facts below.

Plaintiffs are foreign-born, teenagers who want to attend public high school in Collier County. They allegedly cannot do so because of Defendants' policy and practice that denies school enrollment to foreign-born English Language Learner ("ELL") students ages fifteen and older. (Doc. 76 at ¶ 47). The challenged policy, called "Policy 5112.01," governs the maximum age a student may participate in the regular high school program. It says, in relevant part, that

> to provide reasonable consistency of maturity levels among students in the regular high school program, no person shall be permitted to attend the regular high school program after attaining the age of nineteen (19). Those who attain the age of nineteen (19) during a school year may complete that school year. Persons who are seventeen (17) years old or older and who, by earning eight (8) credits per academic year, cannot meet graduation requirements, including grade point average (GPA), prior to the end of the school year during which they attain the age of nineteen (19), shall not be permitted to attend the regular high school program beyond the end of the academic year in which they attain the age of seventeen (17). Such persons shall be afforded an opportunity to pursue a high school diploma through the Adult High School or General Educational Development (GED) programs of the District.

(Doc. 152-4 at 2). Policy 5112.01 took effect in August 2013. (*Id.*).

Since May 2016, students enroll in a Collier County public school at a central location. (Doc. 154-3 at 16; Doc. 155-5 at 3-4). For students seventeen years old and over, Dr. Leslie Ricciardelli, the Executive Director Secondary Programs, Curriculum, and Instruction, examines their transcripts and recommends they attend either regular high school, the English Literacy for Career and Technical ("ELCATE") program, or another program. (Doc. 155-1 at 6-7; Doc. 155-5 at 7-8).

Pertinent here, the ELCATE Academy allows students who are between sixteen and twenty-one years old to earn a GED, enroll in the Adult English Speakers of Other Languages ("Adult ESOL") program, and have gaps in their education. (Doc. 118-1 at ¶ 7; Doc. 153-2 at 20-22; Doc. 155-5 at 2). According to the ELCATE Academy's brochure, the "curriculum is focused on English Literacy, social studies, math, and science in preparation to attain a high school diploma by passing the GED exam." (Doc. 152-5 at 3). The ELCATE Academy has six levels of competencies from beginning to advanced, and a student must show that s/he has mastered at least level five before trying for a GED, other career-based programs, or employment. (Doc. 118-1 at ¶¶ 10-11).

As stated, Plaintiffs and others like them have been denied enrollment in a public high school. They want a free public education alongside their peers, the chance to learn core educational content and skills, and to participate in extracurricular activities. And they are suing Defendants to achieve this result. (Doc. 76). Plaintiffs assert that Defendants' policy and practice, namely Policy 5112.01, violates these laws:

- Count I: Equal Educational Opportunities Act of 1974 ("EEOA"), 20 U.S.C. §§ 1703(a) and (f);

- Count II: Section 601 of Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d;

- Count III: Equal Protection clause of the Fourteenth Amendment to the United States Constitution, U.S. Const., amend XIV, § 1;

- Count IV: Due Process clause of the Fourteenth Amendment to the United States Constitution, *id.*; and

- Count V: Florida Educational Equity Act ("FEEA"), Fla. Stat. § 1000.05.

(Doc. 76).

Besides compensatory damages, Plaintiffs seek a declaration that Defendants' acts and omissions violate the rights of Plaintiffs and class members under these laws. (*Id.* at 50, 52). They also seek injunctive relief requiring Defendants to, among other things, (1) "take affirmative steps to enroll Plaintiff Children, and similarly situated students, in an age-appropriate, public school setting"; (2) "communicate to all class members . . . that they can enroll in school and can make up any days of school that they missed as a result of Defendants' unlawful policy and practice of denying them enrollment"; and (3) "provide compensatory education to Plaintiff Children to remedy the harms caused by Defendants' unlawful policy and practice of denying them enrollment." (*Id.* at 51-52).

At issue now is Plaintiffs' request to certify a class defined as follows:

> All foreign-born, English Language Learner (ELL) children ages fifteen to twenty-one whose last completed schooling (not including adult education courses) was at a non-U.S. school, and who, after August 1, 2013, while residing in Collier County, sought or will seek to enroll in the Collier County public school system serving grades K-12, and were or will be denied enrollment by the Defendants.

(Doc. 152 at 2). They argue all requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(2) are satisfied.

4

The undersigned referred Plaintiffs' Motion for Class Certification to Judge McCoy for a report and recommendation. The R&R recommends certifying only Plaintiffs' due process claim (Count IV). (Doc. 183). No party objects to this recommendation or the R&R's findings on Plaintiffs' standing and proposed class definition. Plaintiffs object, however, to the R&R denying class certification for the remaining counts. (Doc. 185).

## STANDARD OF REVIEW

In reviewing a report and recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). When a party makes specific objections to a magistrate judge's report, the district court engages in *de novo* review of the issues raised. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). A *de novo* review means the district court "give[s] fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990) (citation omitted). Also, a magistrate judge's conclusions of law are reviewed *de novo*, even in the absence of an objection. *See Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

## CLASS ACTION LEGAL STANDARDS

Federal Rule of Civil Procedure 23 outlines the requirements for class actions. Under Rule 23(a), the party seeking class certification must prove that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed R. Civ. P. 23(a).

5

A proposed class must also satisfy at least one part of Rule 23(b). Plaintiffs here are seeking to proceed under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotations omitted); *see also Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016) (stating "the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation"). "A district court that has doubts about whether 'the requirements of Rule 23 have been met should refuse certification until they have been met.'" *Brown*, 817 F.3d at 1233-34 (citations omitted).

The party seeking class certification has a burden of proof – not a burden of pleading – to show a proposed class satisfies Rule 23. *See Wal-Mart*, 564 U.S. at 351 ("Rule 23 does not set forth a mere pleading standard."). "[T]he entire point of a burden of proof is that, if doubts remain about whether the standard is satisfied, the party with the burden of proof loses." *Brown*, 817 F.3d at 1234 (internal quotations omitted). It follows that courts conduct a "rigorous analysis" to decide whether movants carry their burden of proof. *Wal-Mart*, 564 U.S. at 350-51. This analysis may "overlap with the merits of the plaintiff's underlying claim." *Id.* at 351. Courts consider the merits, however, "only to the extent they are relevant to determining whether the Rule 23 prerequisites for class

certification are satisfied." *Brown*, 817 F.3d at 1234 (internal quotations and citation omitted).

Against these principles, the Court will address Plaintiffs' objections to the R&R.

## DISCUSSION

The R&R examines each count under Rule 23(a)'s four requirements – numerosity, commonality, typicality, and adequate representation.[3] It finds that Counts I, II, III, and V do not satisfy the commonality and typicality requirements. Although these findings alone call for denying class certification, the R&R addresses the same counts under Rule 23(b)(2). And it finds that a single injunctive or declaratory judgment on these counts is not proper for the entire class. The Court will review the R&R's findings, starting with Rule 23(b)(2).

The Court can certify Counts I, II, III, and V for class certification under Rule 23(b)(2) only if Defendants acted on grounds that apply generally to the class so injunctive or declaratory relief is proper for the entire group. Fed. R. Civ. P. 23(b)(2). Regarding this requirement, the Supreme Court has explained:

> [t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful as to all of the class members or as to none of them . . . In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant.

---

[3] No party objects to the R&R's findings on Plaintiffs' standing, proposed class definition, and due process claim (Count IV). Upon a *de novo* review of the record, parties' filings, and applicable law, the Court agrees with, accepts, and adopts these findings as well reasoned and legally sound.

7

*Wal-Mart*, 564 U.S. at 360 (internal quotations omitted) (emphasis original); *see also Braggs v. Dunn*, 317 F.R.D. 634, 668 (M.D. Ala. 2016) (stating "Rule 23(b)(2) focuses on the nature of defendants' acts and omissions and the suitability of class-wide relief, and does not require that the class-wide relief benefit each class member in precisely the same way"). Again, Plaintiffs bear the burden under Rule 23(b)(2).

Under the facts presented here, Rule 23(b)(2) class certification is not proper. The Court cannot fashion a single injunctive or declaratory judgment that gives relief to each class member. Plaintiffs' claims, and the injunctive relief demanded, will instead need individualized inquires as to each class member. Such inquiries defeat the point (and spirit) of class certification. That said, the Court will address Counts I, II, III, and V in more detail below.

### A. Count I – § 1703(f) of the EEOA

The EEOA prohibits a State from denying equal educational opportunities to individuals based on their national origin. 20 U.S.C. § 1703. Such a denial occurs when an educational agency does not "take appropriate action to overcome language barriers that impede equal participation by its students in its instructional programs." *Id.* § 1703(f).

Consistent with the foregoing, Count I alleges that Defendants did not take appropriate action to overcome language barriers that impede the equal participation of Plaintiffs and other similarly situated students in Defendants' programs.[4] (Doc. 76 at 38-40). According to Plaintiffs, this claim satisfies Rule 23(b)(2) because Defendants have

---

[4] Count I claims that Defendants violated two subsections of the EEOA – § 1703(a) and (f). The Court will address § 1703(f) in this section and § 1703(a) in the next.

injured all class members in the same way by not enrolling recently-arrived, foreign-born ELLs in public schools under Policy 5112.01. (*Id.* at ¶ 138). Plaintiffs thus conclude class-wide remedies will give relief to each member. (Doc. 152 at 33).

The Court disagrees with Plaintiffs' conclusion. To understand why, the Court starts at the beginning. A plaintiff alleging a § 1703(f) violation must satisfy four elements: (1) defendant is an educational agency; (2) he faces language barriers that impede his equal participation in defendant's instructional programs; (3) defendant failed to take appropriate action to overcome those barriers; and (4) he was denied equal educational opportunity because of their national origin. *See Methelus v. Sch. Bd. of Collier Cty., Fla.*, 243 F. Supp. 3d 1266, 1275 (M.D. Fla. 2017) (citing *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 132 (3d Cir. 2017)). The third element is problematic here.

The third element focuses on whether a school district took "appropriate action" to overcome language barriers. The Fifth Circuit's decision in *Castaneda v. Pickard*, 648 F.2d 989 (5th Cir. 1981) is the seminal case on this element.[5] The Fifth Circuit created a three-part "mode of analysis" for courts to use when deciding whether a school's "language remediation efforts" are appropriate. *Id.* at 1009. "First, the *court* must examine carefully the evidence the record contains concerning the soundness of the educational theory or principles upon which the challenged program is based." *Id.* (emphasis added). "The *court's* second inquiry would be whether the programs and practices actually used by a school system are reasonably calculated to implement effectively the educational theory adopted by the school." *Id.* at 1010 (emphasis added).

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

9

Third, "[i]f a school's program, although premised on a legitimate educational theory and implemented through the use of adequate techniques, fails . . . to produce results indicating that the language barriers confronting students are actually being overcome, that program may, at that point, no longer constitute appropriate action as far as that school is concerned." *Id.* *Castaneda*'s three-prong test is conjunctive, meaning "[a]ll three prongs must be met for an educational agency's program to satisfy § 1703(f)'s 'appropriate action' element." *Issa*, 847 F.3d at 134 n.7.

The crux of the R&R is that § 1703(f) is not suited for Rule 23(b)(2) class certification because no common relief can be given. The R&R finds so because the Court will need to make individualized inquiries into each class members' progress to decide whether Defendants' programs are overcoming language barriers. (Doc. 183 at 46). Plaintiffs object to this finding.

Plaintiffs contend that Defendants have equally harmed them and class members, namely not enrolling them in public high school, under Policy 5112.01. (Doc. 185 at 20). Consequently, Plaintiffs say injunctive or declaratory relief will help all class members. They also criticize the R&R for focusing on all three of *Castaneda*'s prongs. They posit, for the first time, that Defendants' failure to fulfill any of the prongs, standing alone, triggers a violation § 1703(f). And because Plaintiffs say they will win on either the first or second prong, the R&R did not need to consider the third prong, which is fatal to class certification. (*Id.* at 20-21). In order words, Plaintiffs contend the third prong is irrelevant. Finally, they argue the R&R's analysis on the third prong erroneously focuses on students' individualized progress in overcoming language barriers. What matters, according to Plaintiffs, is whether challenged program as a whole overcomes the barriers. (*Id.* at 21).

Plaintiffs' objections miss the mark. They want this Court to ignore *Castaneda*'s three-prong conjunctive test to find that a single declaratory or injunctive relief can work for the entire class. But the *Castaneda* mode of analysis binds this Court – all three prongs. The Court cannot choose which prongs to consider to certify Plaintiffs' desired class. And Plaintiffs cite no case law in which a court has certified a class action with less. Also, under Plaintiffs' logic, the order of *Castaneda*'s prongs matters. Plaintiffs' argument would be turned on its head if the Court examined the third element first.

Ignoring *Castaneda*'s third prong is also problematic at this procedural stage. The Court is not deciding the merits of Plaintiffs' § 1703(f) claim (nor does it have any evidence before it to do so). Although Plaintiffs may argue they can win under *Castaneda*'s first or second prongs, that position is better suited for a summary judgment motion or trial – not class certification. The Court is hard-pressed to find the magistrate judge in the R&R was mistaken to examine all three prongs.

Boiled down, the Court cannot examine whether Defendants' programs overcome language barriers without considering – at least to some extent – the individual students' progress. The proposed class members are different. They will succeed or fail academically for reasons unique to them and outside the soundness or effective implementation of Defendants' programs. As the R&R recognized, the unique individual circumstances include "their individual learning ability, interest level, effort, ambition, family support, economic demands, personal distractions, outside interests, behavioral issues, social influences, personal priorities, attendance record, and motivation." (Doc. 183 at 25-26). What is more, students enter the ELCATE Academy at different levels of competencies and move through the program at varying speeds. Because students

achieve different results (including Plaintiffs), the reasons for class members' success or failure is relevant to examining Defendants' program as a whole. *See, e.g.*, *Issa*, 847 F.3d at 137 (considering plaintiffs' testimony that "they couldn't understand what their teachers and classmates were saying in their content classes at Phoenix" to find that plaintiffs showed a likelihood of success on the matters on Castaneda's prong three). To ignore the class members' individuality to force common relief is counter-intuitive and goes against the essence of § 1703(f).

Also, the differences between class members matters given Plaintiffs' requested relief. For example, Plaintiffs ask for "injunctive relief in the form of: (1) Requiring Defendants to take affirmative steps to enroll Plaintiff Children, and similarly situated students, in an age-appropriate, public school setting." (Doc. 76 at 51). To decide the affirmative steps a class member needs and his/her age-appropriate school setting will require individual inquires and individually crafted relief. (Doc. 183 at 46). A one-size fits all solution is not possible. And Plaintiffs do not explain how a single injunction or declaratory judgment could be crafted to provide the same.

In conclusion, assessing whether Defendants' programs produce results showing they overcome language barriers will require individualized inquiries on whether each class members are obtaining results and, if not, why. And the vast differences between individual students means tailored injunctions will be needed to address their specific situation. Accordingly, because Plaintiffs have not carried their burden to satisfy Rule 23(b)(2), the Court overrules their objections and denies class certification as to § 1703(f).

**B. Counts I, II, III, and V – § 1703(a), Title VI, Equal Protection Clause, and FEEA**

The Court next addresses Rule 23(b)(2) for the other claims: § 1703(a) of the EEOA, Title VI, Equal Protection, and FEEA. Because the R&R grouped these counts together so too will the Court.

To prevail on these claims, the R&R explained that Plaintiffs must show Defendants unlawfully discriminated against them and class members by not enrolling them in regular high school. From there, the R&R said that Defendants' reasons for denying enrollment will need individualized inquiries into each student's education background, English proficiency, and other factors like age. (Doc. 183 at 47). Because of the individualized inquires, the R&R finds that Plaintiffs cannot show that Defendants acted or refused to act on grounds that apply generally to the class so injunctive or declaratory relief is appropriate for the entire class. (*Id.* at 48).

Plaintiffs object to this finding. Focusing first on the claims under § 1703(a), Title VI, and Equal Protection clause, Plaintiffs argue the R&R rests on a "flawed legal conclusion on [Rule 23(a)'s] commonality." (Doc. 185 at 21). It is their position that "if the Court finds that Board Policy 5112.01 has had a disparate impact on foreign-born ELLs that may be traced to a discriminatory purpose, declaratory and injunctive relief will apply to the class as a whole, irrespective of factual variations in the class members' backgrounds." (*Id.*). But Plaintiffs offer nothing to support this conclusory argument. Without more explanation, the Court will not reject the R&R's sound analysis on these claims.

Plaintiffs' objection to the FEEA claim fares no better. Plaintiffs say if the Court finds that Policy 5112.01 had a disparate impact on their and class members' national

origin, a single injunction against Defendants applying the Policy will allow class members to enroll in public school. (*Id.*). Even accepting Plaintiffs' disparate impact theory on the FEEA claim, their objection glosses over a glaring defect. That defect is Defendants will have to make individualized assessments on where to place Plaintiffs and class members in public school because of their different educational experiences and ages. Indeed, as Plaintiffs themselves admit, class members will need to be assessed per Defendants' ELL Plan and offered an individualized ELL student plan. That assessment will include the student's English language skills and academic level.[6] (Doc. 76 at ¶¶ 36-38). No matter how Plaintiffs couch the discrimination theory, they cannot overcome that a single injunction or declaratory relief is unachievable with the differences between the Plaintiffs and class members.

In conclusion, the Court denies class certification on Counts I, II, III, and V because Plaintiffs have not satisfied Rule 23(b)(2)'s requirements. And because the Court can deny class certification on this basis alone, it need not address Plaintiffs' objections on Rule 23(a).[7]

Accordingly, it is now

**ORDERED:**

(1) United States Magistrate Judge Mac R. McCoy's Report and Recommendation

(Doc. 183) is **ACCEPTED and ADOPTED** and the findings incorporated herein.

---

[6] Under Defendants' ELL Plan, they "assess an ELL students' academic level using testing and previous school records, and, in the absence of such records, using interviews of the student and parents and other assessment tools." (Doc. 76 at ¶¶ 36-38).

[7] Because the R&R provides common reasons to deny class certification under Rule 23(a) and (b)(2) for each count, and because Plaintiffs' objections on both rules overlap, the Court's findings on Rule 23(b)(2) likely also apply to Rule 23(a).

(2) Plaintiffs' Motion for Class Certification (Doc. 152) is **GRANTED in part and DENIED in part**. The motion is granted on the due process claim (Count IV) and denied on all other claims.

**DONE** and **ORDERED** in Fort Myers, Florida this 17th day of October 2018.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record